1   OFFICE OF THE MONTEREY COUNTY COUNSEL
    CHARLES J. MCKEE (SBN 152458), COUNTY COUNSEL
2   LEROY W. BLANKENSHIP (SBN 065233), ASSISTANT COUNTY COUNSEL
    EFREN N. IGLESIA (SBN 71309), SENIOR DEPUTY COUNTY COUNSEL
3   168 W. ALISAL, 3RD FLOOR
    SALINAS, CA 93901-2680
4   Telephone: (831) 755-5045
    Facsimile: (831) 755-5283
5
    NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
6   STEPHEN N. ROBERTS (SBN 062538)
    50 CALIFORNIA STREET, 34TH FLOOR
7   SAN FRANCISCO, CALIFORNIA 94111-4799
    Telephone: (415) 398-3600
8   Facsimile: (415) 398-2438
    Email: montereycase@nossaman.com
9
    NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
10  JOHN J. FLYNN III (SBN 076419)
    18101 VON KARMAN AVENUE
11  IRVINE, CA 92612-0177
    Telephone: (949) 833-7800
12  Facsimile: (949) 833-7878
    Email: montereycase@nossaman.com
13  Attorneys for Defendants

14

15                  UNITED STATES DISTRICT COURT

16                 NORTHERN DISTRICT OF CALIFORNIA

17                       SAN JOSE DIVISION

18
    In re: County of Monterey Initiative Matter      )   NO: C 06-01407 JW
19                                                    )   NO: C 06-02202 JW
           and                                        )
20                                                    )
    In re: Monterey Referendum                        )   **MEMORANDUM OF POINTS AND**
21                                                    )   **AUTHORITIES IN SUPPORT OF**
                                                      )   **SUMMARY JUDGMENT IN REFERENDUM**
22                                                    )   **CASES AND IN SUPPORT OF DISMISSAL**
                                                      )   **IN THE MELENDEZ INITIATIVE CASE**
23                                                    )
                                                      )   Date:   February 27, 2007
24                                                    )   Time:   9:00 a.m.
                                                      )   Place:  Courtroom 8
25   _____        )   Judge:  Honorable James Ware

26

27

28
    211519_2.DOC                                           Case No. C 06-02202 JW
─────────────────────────────────────────────────────────────────────
    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT IN REFERENDUM
       CASES AND IN SUPPORT OF DISMISSAL IN THE MELENDEZ INITIATIVE CASE

# TABLE OF CONTENTS

**(Page)**

I    INTRODUCTORY STATEMENT ................................................................2

    A.    Status Of Both The Initiative And Referendum Cases ........................................2

    B.    The Referendum Cases ...............................................................................2

    C.    The Initiative Cases.....................................................................................4

II.   THE COUNTY DEFENDANTS' SUMMARY JUDGMENT MOTION SHOULD BE
    GRANTED WITH RESPECT TO THE REFERENDUM CASES ...............................5

    A.    Facts Necessary For Summary Judgment ........................................................5

        1.    History Of The Underlying Project And Relationship To The
            Referendum................................................................................5

        2.    FVRA Litigation ........................................................................7

    B.    Section 203 Of The FVRA Must Be Broadly Construed To Require
        Translation Of A Referendum Petition Into Spanish In Monterey County ....................8

    C.    The Effect Of The En Banc Panel's Decision In Padilla V. Lever......................9

    D.    The Referendum Petition And Associated Forms Are "Provided" By The
        State Or Its Subdivision ..............................................................................10

    E.    Referendum Petitions, Forms And Associated Documents Constitute
        "Materials Or Information Relating To The Electoral Process."...........................13

    F.    The Legislative History Of Section 203 Supports These Conclusions............................15

    G.    Deference Should Be Accorded To The United States Attorney General's
        Interpretation Of Section 203........................................................................16

    H.    Conclusion With Respect To The Referendum Summary Judgment Motion ................17

III.  THE *MELENDEZ* CASE SHOULD BE DISMISSED AS MOOT ...........................................17

    A.    Factual And Procedural Background...............................................................18

    B.    The Proper Disposition Of The Case Is To Dismiss It As Moot ....................20

    C.    Remanding To State Court Would Not Be Appropriate And Would Be An
        Idle Act, Because Plaintiffs Cannot Make The Showing Required For
        Injunctive Relief.........................................................................................20

    D.    Conclusion With Respect To Initiative Cases ................................................23

211519_2.DOC

# TABLE OF AUTHORITIES

**(Page)**

**Cases**

*Allard v. De Lorean,*
 884 F.2d 464 (9th Cir. 1989) ...........................................................................20

*Allen v. State Bd. Of Elections*
 393 U.S. 544 (1969).........................................................................................9

*Billig v. Voges*
 223 Cal.App.3d 962 (1990) ...........................................................................13

*Delgado v. Smith*
 861 F.2d 1489 (11th Cir. 1988); ..............................................................14, 15

*Intel Corp. v. Hamidi*
 30 Cal.4th 1342, 1352 (2003) .......................................................................22

*Lockyer v. United States Forest Service*
 2006 U.S. Dist..............................................................................................20

*Lopez v. Monterey County*
 525 U.S. 266 (1999).......................................................................................13

*Melendez v. Board of Supervisors of the County of Monterey*
 N.D. of Cal., San Jose Division, Case No. C 06-01730 JW ........................ passim

*Montero v. Meyer*
 861 F.2d 603 (10th Cir. 1988) .......................................................................14

*Morcote v. Oracle Corp*
 2005 U.S. Dist. LEXIS 31898, *13  (N.D. Cal. 2005) ................................20

*Myers v. Patterson*
 196 Cal.App.3d 130, (1987) .........................................................................12

*Northwest Environmental Defense Center v. Gordon*
 849 F.2d 1241, (9th Cir. 1988) .....................................................................20

*O'Connell v. Superior Court*
 141 Cal.App.4th 1452 (2006) .......................................................................21

*Padilla v. Lever*
 463 F.3d 1046 (9th Cir. 2006) .................................................................. passim

*Pleasant Grove v. United States*
 479 U.S. 462 (1987).......................................................................................16

# TABLE OF AUTHORITIES

**(Page)**

Powell v. McCormack
  395 U.S. 486, 496, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969)...................................20

*Stanley v. University of S. Cal.*
  13 F.3d 1313 (9th Cir. 1993).................................................................................21

*United States Parole Comm'n v. Geraghty*
  445 U.S. 388, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980).......................................20

*United States v. Daas*
  198 F.3d 1167 (9th Cir. 1999)...............................................................................13

*United States v. Saint Paul*
  1993 U.S. Dist. LEXIS 13454 (C.D. Cal. 1993).....................................................21

*United States v. Sheffield Bd. Of Comm'rs*
  435 U.S. 110 (1978)..............................................................................................16

*White v. E-Loan, Inc.*
  409 F.Supp.2d 1183 (N.D. Cal. 2006)..............................................................13, 16

*Zaldivar v. City of Los Angeles*
  780 F.2d 823 (9th Cir. 1986)............................................................................11, 14

**Statutes**

28 C.F.R. § 55 ............................................................................................8, 14, 17

42 U.S.C. § 1973aa-1a(c)..................................................................................passim

Cal. Elec. Code § 9144 ...............................................................................11, 12, 16

Cal. Elec. Code § 9146 ...........................................................................................11

Cal. Elec. Code § 9147(a) .......................................................................................13

Cal. Elec. Code §§ 9140 ..........................................................................................11

Cal. Elec. Code §§ 9141 , 9144 ...............................................................................11

Elections Code §§ 9118(c) and 9111 .......................................................................18

**Other Authorities**

*Merriam Webster's Collegiate Dictionary,*
  at 458 (10th ed. 1996).............................................................................................13

Sen. Rep. No. 94-295 (1975) ...................................................................................15

# TABLE OF AUTHORITIES

**(Page)**

**Regulations**

Pub. Res. Code 21000 .................................................................................................................5

1    **I.    INTRODUCTORY STATEMENT**

2        **A.    Status of Both the Initiative and Referendum Cases**

3        This brings before the Court four consolidated cases, two dealing with an initiative petition and

4    two dealing with a referendum petition. At the time the Court consolidated these cases and set them for

5    hearing on cross motions for summary judgment, all four were ready to be addressed on the merits. The

6    two cases dealing with the referendum are in the same posture, and the briefing on the merits follows in

7    Part II. In fact, the parties have agreed to simplify and reduce the number of briefs, and therefore this

8    brief replaces the prior one submitted with respect to the referendum.

9        With respect to the initiative cases, matters have simplified themselves somewhat as a result of

10   two events, although there is still a decision for the Court to make as to the disposition of one of them.

11   There are two underlying initiative cases: the *Madrigal* case, a case initiated in this Court in which the

12   plaintiffs sought to enjoin the County from placing the initiative on the ballot; and the *Melendez* case, in

13   which the plaintiffs, who were advocates for the initiative, sought to force the County to place the

14   initiative on the ballot. *Melendez* had been initiated in state court and removed to this Court.

15       One of the two events is that, subsequent to setting the briefing schedule, the *Madrigal* plaintiffs

16   determined to dismiss that case. A stipulation to such dismissal was accepted by the Court, and

17   dismissal was ordered on February 6. As a result, there will no longer be plaintiffs seeking to stop the

18   initiative election. The second event is that the County Board of Supervisors, in view of the changes in

19   the law resulting from the Ninth Circuit's *en banc* decision in *Padilla v. Lever,* 463 F.3d 1046, 1048 (9th

20   Cir. 2006) *(en banc),* determined to place the initiative on the ballot in June. This second event moots

21   the *Melendez* case because that is the relief the plaintiffs sought. However, the parties to the *Melendez*

22   case, as explained below, have been unable to agree to the disposition of the *Melendez* case that flows

23   from that mootness, and therefore submit that issue to the Court for consideration.

24       **B.    The Referendum Cases**

25       The Monterey County Board of Supervisors (the "Board") has a Hobson's Choice between the

26   demands of both sets of plaintiffs in the referendum cases. In the *Rangel* case Sabas Rangel and Maria

27   Buell (collectively "Rangel") sued the Board for violating § 203 of the Federal Voting Rights Act of

28

1964 (42 U.S.C. § 1973aa-1a(c))  as amended ("FVRA"), by allowing the Referendum petition at issue

here ("Petition") to be placed on the ballot despite being circulated in English only. In contrast, in the

*Rancho San Juan* case, Rancho San Juan Opposition Coalition ("RSJOC"), Citizens for Responsible

Government, and Julie Engell (collectively "RSJOC," unless otherwise specified) sued the Board for

having removed the same Petition from the ballot after the Board determined that its circulation violated

FVRA.

When the Board concluded that the Petition violated FVRA, and removed it from the June 2006

ballot, it followed the plain language of FVRA, the regulations promulgated thereunder by the

Department of Justice ("DOJ"), the then applicable Ninth Circuit's decision relating to petitions in

*Padilla v. Lever*, 429 F.3d 910 (9th Cir. 2005) ("*Padilla*"), and the decision of this Court in the *In re*

*Monterey County Initiative Matter* No. C 06-1407 JW (N.D. Cal. 2006) which had held that initiative

petitions were subject to FVRA.  In taking its action, the County was motivated by a concern that the

rights of the Spanish-speaking residents of Monterey County were being harmed by the petition

proponents, a fact highlighted for the Board not only by those court decisions but also the *Rangel*

plaintiffs' filing of one of the instant lawsuits.

With respect to petitions such as recall or referendum, § 203 of FVRA raises two basic

questions:  (i) whether the petition constitutes materials or information relating to the electoral process

under § 203 and (ii) whether the petition is of the type of material or information provided by the State

or a political subdivision. *Padilla v. Lever,* 463 F.3d 1046, 1048 (9th Cir. 2006) (*en banc*).  As will be

demonstrated clearly in this brief, the referendum procedure in California falls squarely within both of

these tests, such that § 203 does apply to the circulation of referendum petitions.  While the Ninth

Circuit's change of heart with respect to recall petitions in the *Padilla en banc* decision make this a

closer decision than it was under the original *Padilla* opinion, the County still believes that section 203

requires translation of referendum petitions, for the reasons expressed in the *en banc* opinion in finding

that recall petitions need not be translated.  This is true because referendum petitions, as opposed to

recall petitions, are a much stronger case for translation in that every element is an element supplied by

the government, a fact the Ninth Circuit did not find present with respect to recall petitions.  Although

1  the Ninth Circuit could have addressed other types of petitions such as initiatives and referenda, the *en*

2  *banc* panel did not reach any decision as to these other types of election procedures.  Nevertheless, the

3  *en banc* panel's reasoning with respect to why it did not find recall petitions subject to FVRA is helpful,

4  and leads to the conclusion that referendum petitions, in contrast, are subject to it.  Summary Judgment

5  in the County's favor should be granted as set forth more fully in Part II of this brief.

6        **C.**    **The Initiative Cases**

7        To the County's eye, initiatives fall somewhere between recall petitions and referendum petitions

8  if one is trying to decide whether FVRA requires translation.  Unlike recall petitions, where in the Ninth

9  Circuit's view the government did not supply the substantive portions, and unlike referendum petitions,

10  where the government supplies all the substantive parts, initiative petitions are partly supplied by the

11  petition circulators (the text) and partly by the government (the summary and analysis).  Thus it is a

12  difficult decision to know on which side of the line they fall.  In view of the ambiguity, and in view of

13  the fact that there was already an election contemplated in June relating to the County's general plan, he

14  Board of Supervisors of the County determined to go ahead and place the initiative petition on the ballot

15  for next June, which was an open election date because of another measure on that ballot.

16        The *Madrigal* case has been dismissed.  The fact of the initiative now being on the ballot moots

17  the *Melendez* case and *Melendez* should be dismissed.  That is because the plaintiffs in *Melendez* have

18  received the relief for which they prayed: the election will take place on the initiative measure without

19  the need for them to translate it for the petition signers.  However, rather than a straightforward

20  dismissal, the County understands the *Melendez* plaintiffs feel that the case should be remanded to state

21  court for a judgment that an injunction should issue ordering the election.  But there is no point to

22  remanding a moot case and there is no need for an injunction since there is no threatened harm.

23  Dismissal is the proper result for this moot case as will be explained in more detail in Part III of this

24  brief.

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT IN REFERENDUM
CASES AND IN SUPPORT OF DISMISSAL IN THE MELENDEZ INITIATIVE CASE

1   **II.    THE COUNTY DEFENDANTS' SUMMARY JUDGMENT MOTION SHOULD BE**

2   **GRANTED WITH RESPECT TO THE REFERENDUM CASES**

3       **A.    Facts Necessary for Summary Judgment**

4          This being a summary judgment motion, it is necessary to determine that there are no factual

5   issues in dispute.  In this case that is simple, because there is only one factual question:  whether the

6   Petition was circulated in English only, or instead in English and Spanish.  There is no dispute.  The

7   Parties stipulated in the Joint Case Management Statement and Proposed Order, filed October 13, 2006,

8   that the petition was circulated in English only .  Req. Jud. Not., Ex. A, p. 1 ["Petitions for the

9   Referendum Against Resolution No. 05-305 were circulated to voters of Monterey County only in

10  English."].  The actual petition is at Ex. D.

11                **1.    History of the Underlying Project and Relationship to the Referendum.**

12         Some background facts are helpful for context, however.  The County of Monterey (the

13  "County") and the Board have been involved for years in litigation with, on the one hand developer

14  HYH and, on the other hand, citizen groups opposed to development in the Rancho San Juan area, such

15  as Landwatch Monterey County ("Landwatch") and RSJOC, one of the plaintiffs here.  *See Declaration*

16  *of Alana Knaster in Opposition to Motion for Preliminary Injunction* ("Knaster Dec."), ¶ 3.[1]  In the first

17  such piece of litigation HYH sued the County on, among other things, constitutional "takings" grounds.

18  Landwatch and RSJOC have also sued the County in two lawsuits for a Writ of Mandate in the Superior

19  Court, on numerous grounds related to the same project, including but not limited to alleged violations

20  of the California Environmental Quality Act ("CEQA"), Pub. Res. Code 21000, *et seq.*  HYH is the real

21  party in interest in that litigation.  *Knaster Dec.*, ¶ 5, Exs. D, E.

22         After a trial of HYH's original action, the Superior Court of Monterey ordered the County, on

23  February 26, 2001, to adopt a specific plan, an EIR, and zoning for the Rancho San Juan Area of

24  Development Concentration.  Although the Court's Order did not specifically require the County to

25

26  _____

27  [1]    Since these facts are by way of background, we have referred to the evidence previously

28  submitted in connection with the motion for preliminary injunction, without burdening the court record with additional documents.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT IN REFERENDUM
CASES AND IN SUPPORT OF DISMISSAL IN THE MELENDEZ INITIATIVE CASE

1    approve HYH's project, such zoning and plan changes were necessary prerequisites to permitting HYH

2    to develop the property it owned in that area. *Id.* at ¶ 4, Exs. B, C.

3        Pursuant to a stipulation with HYH reached after mediation, in order to avoid years of further

4    litigation with HYH over its right to proceed with the Butterfly Village project, the County agreed not

5    only to process the plan and zoning changes expeditiously to comply with the court's judgment, but also

6    to process the Project concurrently. Shortly thereafter the County became defendants in no less than

7    five additional lawsuits concerning the development, including the above-referenced CEQA action by

8    Landwatch and RSJOC, currently pending in Monterey County Superior Court. *Id.* at ¶ 5, Exs. D, E.

9        On December 14, 2004, the County adopted certain amendments to the General Plan, and

10   adopted a Specific plan and zoning which would have placed it in compliance with the state court's

11   order and judgment, and which provided for approximately 2,600 acres of development in the Rancho

12   San Juan area. Shortly thereafter Landwatch and RSJOC sponsored a referendum to defeat the

13   amendments to the General Plan, which passed in the November 2005 election. *Id.* at ¶ 6. The passage

14   of that referendum thereby repealed the amendments effected by the County to place it in compliance

15   with the state court's order.

16       In light of that repeal, and in order to try to place itself in compliance with the state court's order

17   and to avoid a potentially huge damages claim against the County by HYH, the Board of Supervisors

18   (the "Board") again attempted to amend the relevant General plan provisions, this time in a much more

19   scaled-down manner. *Id.* at ¶ 7. On November 7, 2005, the Board passed Resolution No. 05-305 (the

20   "Resolution") adopting revised amendments to the general and area plans for the Rancho San Juan area.

21   *Id.*, Exs. F, G. The revised development would now amount to approximately 671 acres. *Id.* This is

22   probably the minimum necessary for the County to comply with the 2001 state court order and avoid

23   damages claims from HYH.

24       Shortly thereafter, RSJOC sponsored the referendum at issue in this case (the "Referendum") to

25   repeal the Resolution, and this Referendum qualified for the June 2006 ballot. It was ordered placed on

26   that ballot by the Board on January 24, 2006. *Id.* at ¶ 8. It can be seen from the context, that the matter

27   before the voters is not a simple one. As opposed to a recall petition, where the matter at hand might be

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT IN REFERENDUM
CASES AND IN SUPPORT OF DISMISSAL IN THE MELENDEZ INITIATIVE CASE

1    explained to a limited English voter, there is no way that a complex petition as this could be understood

2    by that individual without translation.

3                **2.**      **FVRA Litigation.**

4          In the meantime events occurred which caused the Board to reconsider its decision to put the

5    Referendum on the ballot. The application of the FVRA to initiative and referendum petition circulation

6    had been raised by two lawsuits filed against the County. *See* Declaration of Leroy Blankenship in

7    Opposition to Motion for Preliminary Injunction ("Blankenship Dec."), ¶¶ 4, 5. The first of those

8    actions was the *In re Monterey County Initiative Matter*, wherein plaintiffs Rosario Madrigal, along with

9    plaintiffs herein Rangel and Buell, sued the County for allowing an initiative petition to be placed on the

10    ballot after it had been circulated in English only. Blankenship Dec., ¶ 4. On March 23, 2006, this

11    Court ruled that the initiative petition had indeed violated the FVRA. *Id.* Additionally, on March 27,

12    2006, in one of the cases now related herein, Rangel sued the County for allowing the referendum

13    Petition on the same ballot, because this Petition had similarly been circulated only in English. *Id.* at

14    ¶ 5. In light of the controlling law, including this Court's ruling in the prior matter, the County

15    concluded that it ran the risk of being held in violation of the FVRA with respect to the referendum

16    Petition as well. Accordingly, on March 28, 2006, the Board ordered the Petition removed from the

17    ballot. Blankenship Dec., ¶ 6. On April 3, 2006, RSJOC sued the County in state court in the *RSJOC*

18    case, which lawsuit the County subsequently removed to this Court on April 4, 2006, and which was

19    subsequently ordered related by this Court to the *Rangel* case. *Id.* at ¶ 7.

20          On August 15, 2006, this Court denied the RSJOC plaintiffs' motion for a preliminary

21    injunction, pending the outcome of the *Padilla en banc* panel decision. That decision was issued on

22    September 19, 2006. *Padilla v. Lever*, 463 F.3d 1046 (9th Cir. 2006) *(en banc)*.

23          Passage of the Petition repealing the Resolution, and hence the changes to the amendments to the

24    general and area plans, would potentially place the County again in violation of the state court order

25    mandating the adoption of a specific plan that will permit the development in the Rancho San Juan area,

26    and possibly in contempt of the state court. Accordingly, on March 13, 2006, the County had moved in

27    the state court action with HYH, in the form of a Motion for Judgment on the Pleadings, for declaratory

28

211519_2.DOC               -7-               Case No. C 06-02202 JW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT IN REFERENDUM
CASES AND IN SUPPORT OF DISMISSAL IN THE MELENDEZ INITIATIVE CASE

1  relief as to whether the Referendum, if it passed, would take precedence over the state court order, or

2  whether the state court order is the higher authority and the Referendum must yield to it. *Knaster Dec.*,

3  ¶ 9 Ex. H. After the Board removed the Referendum from the June ballot on March 28, 2006, the

4  County and HYH stipulated to stay that declaratory relief proceeding until the validity of the

5  Referendum was determined, resolution of the declaratory relief issue no longer being immediately

6  necessary. *Id.* at ¶ 9, Ex. I.

7       **B.      Section 203 Of The FVRA Must Be Broadly Construed To Require Translation Of
                  A Referendum Petition Into Spanish In Monterey County.**

8

9       The sole legal issue in this case involves the application of § 203 of the Federal Voting Rights

10 Act ("FVRA"). That statute states:

11              Whenever any State or political subdivision subject to the prohibition of
                subsection (b) of this section provides any registration or voting notices,

12              form, instructions, assistance, or other materials or information relating to
                the electoral process, including ballots, it shall provide them in the

13              language of the applicable minority group as well as in the English
                language.

14

15 42 U.S.C. § 1973aa-1a(c).

16      Under the applicable federal regulations, the County is "subject to the prohibition of subsection

17 (b)." 28 C.F.R. § 55, App. (2005) (identifying the County as being subject to the multilingual

18 requirements of § 203, and in particular the Spanish heritage requirements). The obligations thereby

19 imposed on counties such as Monterey are further expounded in the regulations as follows:

20              The requirements of ... 203 (c) apply with regard to the provision of "any
                registration or voting notices, forms, instructions, assistance or other

21              materials or information relating to the electoral process, including
                ballots." ... Accordingly, the quoted language should be broadly

22              construed to apply to all stages of the electoral process, from voter
                registration through activities related to conducting elections, including

23              the issuance, at any time during the year, of notifications, announcements,
                or other informational materials concerning the opportunity to register, the

24              deadline for voter registration, the time, places and subject matters of
                elections, and the absentee voting process.

25

26 28 C.F.R. § 55.15. Pursuant to these provisions, voting materials should be conveyed in Spanish, in

27 addition to English, so that all the electorate may participate effectively in the process.

28

211519_2.DOC                                        -8-                          Case No. C 06-02202 JW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT IN REFERENDUM
CASES AND IN SUPPORT OF DISMISSAL IN THE MELENDEZ INITIATIVE CASE

1  Supreme Court precedent mandates that this Court broadly construe the FVRA. *See Allen v.*

2  *State Bd. Of Elections*, 393 U.S. 544, 565-66 (1969) (stating that FVRA gives a broad interpretation to

3  the right to vote and recognizing that voting includes "all action necessary to make a vote effective"). In

4  enacting the bilingual election requirements, Congress made an explicit finding that "language

5  minorities had been effectively excluded from participation in the electoral process," necessitating

6  remedial action "to enforce the guarantees of the 14th and 15th amendments." 42 U.S.C. § 1973aa-1a(a).

7  This authority requires a broad view of the applicability of the FVRA to state elections. Applying the

8  FVRA's bilingual mandates to referendum petitions will further Congress' goal of ensuring broad

9  participation in the electoral process.

10  With respect to petitions such as recall or referendum, § 203 raises two basic questions:

11  (i) whether the petition constitutes "registration or voting notices, forms, instructions, assistance, or

12  other materials or information relating to the electoral process, including ballots" under § 203 and

13  (ii) whether the petition is of the type of material or information provided by the State or a political

14  subdivision. *Padilla v. Lever (en banc* decision*)*, 463 F.3d 1046, 1050. This brief will deal with both

15  issues in depth. However, first it will discuss the effect of the *en banc* panel's decision on both issues.

16  **C.    The Effect Of The *En Banc* Panel's Decision In *Padilla v. Lever*.**

17  As explained, there is a two part test to determine whether § 203 applies. While acknowledging

18  a need to determine whether the recall petition constituted "registration or voting notices, form,

19  instructions, assistance, or other materials or information relating to the electoral process, including

20  ballots" if a violation is to be found, the *en banc* panel did not reach that issue. It decided only the

21  question of whether materials were "provided" by the State or its subdivision, its negative decision on

22  that issue obviating the need to deal with the other. *Id.* at p. 1050, footnote 3.

23  As to whether the materials were provided by the State or its subdivision, the panel concluded

24  recall petitions were not. *Id.* Its primary reasoning as to why that was not the case is provided in the

25  following two paragraphs:

26  It is true that California regulates recall petitions in some detail.
The petitions must follow a format provided by the Secretary of State, and

27  must use a minimum type size. (Citation omitted.) The petition also must
include a copy of the Notice of Intention, the statement of grounds for

28

recall, and the answer of the targeted officer if the officer submitted one. (Citation omitted.) But these regulations do not mean that the petitions are *provided* by the State or subdivision. The form is regulated by the State, but the proponents fill out the petition, supply the grounds of recall, and have the petitions printed at their own expense. The fact that, under [California law], the Secretary of State "provides" the format does not mean that the State "provides" the petitions themselves within the meaning of the Voting Rights Act.

The plaintiffs argue that, because the election officials are charged under state law with ascertaining whether "the proposed form and *wording* of the petition meets the requirements of this chapter[,] (citation omitted), they are dictating the content of the petitions to the degree that the petitions may be said to be "provided" by the County. But there is nothing in the chapter governing elections that specifies the actual wording that proponents must use, for example, in stating their grounds for recall. Nor does the record contain any hint that the elections officials determine the contents of the petition; they merely make sure that the petitions are in the form specified by statute. It is not reasonable to hold that this regulatory process transforms petitions privately initiated, drafted, and circulated by the proponents into petitions "provided" by the County for purposes of the Voting Rights Act. *Id.* at 1051 (emphasis in original).

As will be seen in the following section, the very reasons cited by the Court of Appeals to find recall petitions not to be subject to FVRA support its application to referendum petitions. To begin, referendum petitions are subject to the same rigid regulatory scheme which the *en banc* panel found of relevance, but not sufficient to say that the materials were provided by the government. However, referendum petitions, as opposed to recall petitions, meet that threshold because the bulk of the petition, the County ordinance or resolution, is provided by the County, whereas almost nothing of the materials is provided by the petition circulators.

**D.    The Referendum Petition And Associated Forms Are "Provided" By The State Or Its Subdivision.**

Referendum petitions are supplied by the State or its subdivision within the meaning of FVRA because the principal component of the petition, the local ordinance or resolution, is drafted by the subdivision, the County, and every other element of the petition process is either dictated by or closely regulated by law.

In California's referendum process, ordinances may be subject to a referendum petition within 30 days of the ordinance being adopted. Cal. Elec. Code §§ 9141 , 9144. The petition must be duly signed

1    by only 10% of the voters in the County in the last gubernatorial election. *Id.*, § 9144. When presented

2    to the Board, a vote must be taken as to whether to appeal the ordinance or not. *Id.* If not entirely

3    repealed, the ordinance is then placed on the ballot for a majority vote.

4         Under the California electoral system the County provided the Petition so as to require its

5    translation under FVRA. To begin, there is elaborate government involvement in all aspects of the

6    process. The government plays an integral role in regulating, approving, monitoring, and, ultimately, in

7    administering referendum elections. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 833 (9th Cir. 1986)

8    ("That the state or a political subdivision has mandated by law that certain preliminary steps be taken by

9    the would-be voter, the candidate for office, or the proponents of an issue does not in any sense absolve

10   the governmental entity of its responsibility under the Voting Rights Act"). Indeed, this heightened

11   level of control that extends to the beginning of every referendum process is enshrined in the numerous

12   statutory requirements governing conduct, well before the point where petition signatures are certified.

13   *See* Cal. Elec. Code §§ 9140 *et seq.*; *see also Id.* at § 9146 (the provisions of the elections code relating

14   to the form[2] of petitions, the duties of county elections officials, and the manner of holding elections in

15   *initiative* matters also govern the procedures in *referendum* matters).

16        That the government has an integral part is further evidenced by the large role it plays in

17   ensuring that a referendum petition conforms to statutory requirements. In addition to the above-

18   referenced code sections specifying the form and content of the referendum petition, the Code imposes

19   highly specific requirements as to the information required of petition signers. *Id.* at § 9020

20   (incorporated into the referendum petition process by sections 9101 and 9146). It imposes time limits

21   on when the petition may be filed in order to halt effectiveness of the relevant ordinance. *Id.* at § 9141,

22   9144 (ordinances become effective 30 days after passage unless a referendum petition protesting its

23   adoption becomes effective). The local elections officer, in this case the Registrar of Voters, is required

24

25

26   [2]    The state mandates the specific format that county referendum petition proponents are required
     to use. *See* Cal. Elec. Code § 9147(a) ("The heading of the proposed referendum shall be in
27   substantially the following form: 'Referendum Against an Ordinance Provided by the Board of
     Supervisors'"). The Code also requires that a copy of the title and text of the ordinance being referended
28   be attached to the petition. *Id.*, § 9147(b).

by the Code to examine and verify the number of valid signatures on the petition, and is provided with detailed direction on how to do so. *Id.* at § 9113-9115. The political subdivision may have to reject the petition if it does not comply with the Code. *See, e.g. Myers v. Patterson*, 196 Cal.App.3d 130, 136 (1987) (regarding initiative petition).

From the 30,000 foot level, most of the same things were true of recall petitions, as the *en banc* panel in *Padilla* noted in concluding that recall petitions were not governed by FVRA. That court went on to say why FVRA did not apply:

> But **there is nothing in the chapter governing elections that specifies the actual wording that proponents must use**, for example, in stating their grounds for recall. Nor does the record contain any hint that the elections officials determine the contents of the petition; they merely make sure that the petitions are in the form specified by statute. *Padilla* at 1051 (emphasis added).

Therein lies the primary difference between recall and referendum petitions. In the latter, the government does determine the content of the petitions: it actually supplies the text that is before the signers of the petitions and ultimately the voters. The Resolution, which is the entire object of the Petition, was drafted and adopted by the County in the first place. Since the Resolution is the primary part of the Petition, the Petition too is functionally provided by the government. Further, consider that the effect of the Petition may be that upon reconsideration the Board eliminates the ordinance. If that happens, the law will have been changed by the 10% who signed the petition, not the 50% majority who voted one way or another on the ordinance itself. The petition signers then become the part of the electorate that is making decisions about the ordinance, not the actual voters. This is completely unlike recall where there is assurance of an election.

Finally, when and if a referendum petition qualifies for the ballot, the Registrar is required to forward the measure to the County Counsel for preparation of an impartial analysis of the measure and its effect on existing law, and if necessary the county auditor may be required for a similar analysis of the fiscal effect of the ordinance. *Id.* at § 9160. No such role exists with respect to recall elections, where there is a person, not a law, involved.

In sum, the government provides the central item to the entire process—the Resolution itself. As to the remainder of the Petition, the statutes govern exactly what the Petition must say and it is up to the government to see that there is compliance. About the only acts involved in the referendum petition process that the state does not either perform or dictate are the copying and circulation of the petition; but, as noted above, even those activities the state carefully regulates. For example, if they are circulated dishonestly, the government may have a role in correcting that problem. *See Billig v. Voges*, 223 Cal.App.3d 962 (1990). It is difficult to imagine greater state involvement in an election-related process.

### E. Referendum Petitions, Forms And Associated Documents Constitute "Materials Or Information Relating To The Electoral Process."

*Padilla* provided no guidance with respect to the second criterion, whether the referendum petition constitutes any of "registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots...." FVRA § 203 (42 U.S.C. § 1973aa-1a(c)). But it is a simple task to observe that a referendum petition clearly meets this second test.

The plain meaning of a statute controls absent a clearly expressed legislative intention to the contrary. *See Lopez v. Monterey County*, 525 U.S. 266, 278 (1999) (interpreting § 5 of FVRA by examining the "face of the Act itself"); *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999) (courts will look no further than the plain meaning of the statute unless application leads to unreasonable or impractical results); *see, also White v. E-Loan, Inc.*, 409 F.Supp.2d 1183, 1186 (N.D. Cal. 2006) ("It is only appropriate for this Court to consider [] legislative history arguments if the statutory text is ambiguous").

A "form" is a "printed or typed document with blank spaces for insertion of required or requested specific information." *See Merriam Webster's Collegiate Dictionary*, at 458 (10th ed. 1996). Referendum petition documents easily fit that description. *See, e.g.,* Cal. Elec. Code § 9147(a) ("The heading of a proposed referendum measure shall be in substantially the following *form*: 'Referendum Against an Ordinance Provided by the Board of Supervisors'") (emphasis added).

1    Additionally, the statutes require that referendum proponents attach a copy of the ordinance to be

2    referended to the above-referenced form. *See Id.*, § 9147(b).  There can be no serious dispute that the

3    ordinance being referended constitutes "other materials or information relating to the electoral process."

4    It is the very reason for the election.

5    The County anticipates all of RSJOC's arguments on this point hinge on its contention that

6    circulation of the petition has nothing to do with the "election," for the simple reason that it occurs

7    before the balloting. *RSJOC's MPA*, at 11-12.  While that was arguably the view of other circuits in two

8    cases upon which RSJOC may rely (*Delgado v. Smith*, 861 F.2d 1489 (11th Cir. 1988); *Montero v.*

9    *Meyer*, 861 F.2d 603 (10th Cir. 1988)), other precedent and authority is contrary.  The United States

10   Attorney General rejects this view, explicitly finding that *petitions* are included.  *See* 28 C.F.R. § 55.19

11   (a) (discussed below).  Most important the Ninth Circuit has summarily rejected that argument: "[t]he

12   Act does not exempt information or material, compelled by statute, which is preliminary to voting, but

13   essential if an election is to occur." *Zaldivar v. City of Los Angeles, supra*, 780 F.2d at 833, n. 11

14   (reversing District Court's finding that plaintiffs' Voting Rights Act claim was frivolous under Rule 11).

15   Nothing is more essential to an election referendum occurring than qualifying that referendum for the

16   ballot in the first place.  And that qualification cannot occur if the form prescribed by statute is not

17   circulated, and the ordinance to be repealed is not attached.  Axiomatically, the form and the ordinance

18   constitute "information or materials related to an election."

19   RSJOC may argue that the only materials covered by § 203 are those documents that are

20   provided to voters at the polling booth, namely ballots.  Such an interpretation violates all rules of

21   statutory construction: it would render the phrase "including ballots" superfluous; it would also render

22   the phrase "other materials or information relating to the electoral process" both superfluous *and*

23   redundant.  Because of section 203's broad remedial scope, the statute must be construed to include

24   materials other than simply the ballots themselves.  If Congress had intended such an interpretation, it

25   could have easily restricted the act's application to just balloting.  Instead it chose the broader term

26   "relating to the electoral process," which includes all precursor steps, and which clearly includes

27   materials such as petitions that are circulated to the voters.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT IN REFERENDUM
CASES AND IN SUPPORT OF DISMISSAL IN THE MELENDEZ INITIATIVE CASE

1

**F.     The Legislative History Of Section 203 Supports These Conclusions.**

2

The legislative history of the FVRA mandates a broad interpretation.  For example, in its report

3

on the bilingual amendment, the Senate specifically expressed concern that language minorities exerted

4

little influence or control over the election or appointment of local officials due to language barriers.

5

Sen. Rep. No. 94-295 (1975) (Req. Jud. Not., Ex. B, p. 14).  It strains reason to suggest that persons who

6

initiate or sign referendum petitions are not participating in the "electoral process" or are not exercising

7

some "control over [an] election."

8

On this point, we anticipate RSJOC will argue that Congress has implicitly acquiesced in an

9

interpretation of the act that considers the electoral process to be limited to the act of balloting, because

10

when it reauthorized the act in 2006 it allegedly acquiesced in the *Montero v. Meyer*, 861 F.2d 603 (10th

11

Cir. 1988), two decisions from other circuits that held that § 203 did not apply to initiative petitions

12

under the entirely different statutory frameworks existing in Florida and Colorado, respectively.   Such

13

acquiescence is supposedly based on the fact that Congress did not amend the act to overrule those

14

decisions.

15

The argument is mistaken.  First, those cases involved the initiative process, not the referendum

16

process.  Their precedential value is dubious here, let alone their use leading to an assumption that

17

Congress meant to acquiesce in those interpretations and apply it to referendum petitions.  In any event,

18

the legislative history of the 2006 Federal Voting Rights Act renewal gathered by the County shows that

19

it supports the County' position, rather than the contrary as RSJOC argues.  Congress was aware before

20

renewing FVRA that decisions such as *In re Monterey Initiative Matter* and the initial *Padilla* decision

21

existed.  Req. for Jud. Not., Tab 3.  Indeed, there was even a proposal to amend FVRA to explicitly

22

exclude these types of petitions.  *Id.* at Ex. C, pp. 23-24.  Despite that fact, Congress chose to renew

23

FVRA without amendment.  Under well-recognized principles of statutory construction, this supports an

24

argument that Congress was aware of and acquiesced in an interpretation of the Act that required

25

translating petitions into other languages by lawyers.  *See Dougherty County Board of Education v.*

26

*White*, 439 U.S. 32, 38 (1978).  Any argument by RSJOC's that the FVRA renewal supports their

27

motion for summary disposition is mistaken.

28

### G. Deference Should be Accorded to the United States Attorney General's Interpretation of Section 203.

The Attorney General's reasonable interpretation of the statute must be accorded deference. *See United States v. Sheffield Bd. Of Comm'rs*, 435 U.S. 110, 131-32 (1978) (recognizing that because of the Attorney General's "key role" in the formulation of the FVRA the United States Supreme Court has "given great deference to his interpretations" of the statute). The Court might also note that Congress has revisited the act three times (in 1982, 1992 and 2006) since the Attorney General's regulations were issued shortly after the act's passage in 1975, and also acquiesced in the Attorney General's interpretations of the act as applying to <u>petitions</u> of all kinds (see below). Cf. *Pleasant Grove v. United States*, 479 U.S. 462, 468 (1987) (awareness of Attorney General's view on the scope of section 5 of the same act).

The Attorney General's guidelines regarding section 203 provide in pertinent part as follows:

> (a) Types of materials. … A jurisdiction required to provide minority language materials is only required to publish in the language of the applicable minority group materials distributed to or provided for the use of the electorate generally. Such materials, for example, ballots, sample ballots, informational materials, and *petitions*.

28 C.F.R. 55.19(a) (emphasis added). Not only does this explicitly cover *petitions*, but it provides that any material "distributed to or provided for the use of the electorate generally" is also covered. Any petition is by definition distributed to the *electorate* generally, because it can only be signed by registered voters of the jurisdiction. *See* Cal. Elec. Code § 9144. Note the *en banc* panel said it was not convinced this section applied to recall petitions, but did not discuss referendum petitions. In fact, the Justice Department has made clear it understands referendum petitions to fall under FVRA's purview (*see* 28 C.F.R. § 51.22.) There is thus no such ambiguity pertaining to referendum, as the *en banc* panel surmised with respect to recall.

Also, the regulations elsewhere evidence the Attorney General's interpretation of section 203 as applying to materials and activities other than merely casting the ballot.

> The basic purpose of these requirements is to allow members of applicable language minority groups to be effectively informed of and participate effectively in *voting-connected* activities. Accordingly, the quoted language should be broadly construed to apply to *all stages of the*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT IN REFERENDUM CASES AND IN SUPPORT OF DISMISSAL IN THE MELENDEZ INITIATIVE CASE

> *electoral process*, from voter registration through activities related to
> conducted elections, including, for example the issuance, at any time
> during the year, of notifications, announcements, or other informational
> materials concerning the opportunity to register, the deadline for voter
> registration, the time, places and subject matters of elections, and the
> absentee voting process.

28 C.F.R. § 55.15 (emphasis added).  This statement of purpose clearly does not, as RSJOC would

argue, evince a desire to impose any temporally-based restrictions on the application of the act.

### H.   Conclusion With Respect to the Referendum Summary Judgment Motion

The petition is almost completely provided by the government, and there is a virtual absence of

any drafting by the proponents.  If the matter were to be ultimately placed on the ballot, the materials for

the ballot would undoubtedly be translated in the minority language, and more than half the voters

would have to approve the measure.  However, under the state law, the resulting change in the local law

can be accomplished by as few as 10% of the registered voters within the jurisdiction without ever

reaching the casting of those ballots in a process that effectively excludes those to be assisted by the

FVRA.  There being no facts in dispute, these defendants/respondents respectfully request that the Court

enter summary judgment in their favor.

## III.   THE *MELENDEZ* CASE SHOULD BE DISMISSED AS MOOT

The *Melendez* Plaintiffs' request for injunctive relief to force the election to take place has

become moot.  The proper disposition therefore is simply to dismiss the case.   Their anticipated request

for remand to the state courts for the purpose of obtaining such relief is pointless.

With their lawsuit, they sought to have placed on the ballot a particular initiative, the "Monterey

County Quality of Life, Affordable Housing, and Voter Control Initiative" (the "Initiative").  They have

achieved that goal:  the County of Monterey has agreed and resolved to have the Initiative placed on the

June ballot.  The Resolution is at Ex. E.

Apparently Plaintiffs instead want this remanded to State Court.  The Court is aware of no legal

bars to do so as the removal was perfectly proper.  Apparently Plaintiffs want to do that so they can ask

for an injunction.  If that is true and Plaintiffs are concerned – albeit without any basis -- that the County

will reverse the Board resolution sending the Initiative to election in June, there is a simple solution.

1   This Court may exercise its discretion to retain jurisdiction over this matter until June, and Plaintiffs

2   would be able to seek appropriate relief from the Court should such an event occur.  The County would

3   have no objection to this Court's retention of jurisdiction over this lawsuit pending the election in June,

4   and then dismissing the lawsuit at that time.  So long as this Court retains jurisdiction through June,

5   Plaintiffs will have an avenue to seek relief, and no reason exists for any further use of this or the state

6   Court's resources to decide a moot and frivolous request for remand and for injunctive relief.  In any

7   event, plaintiffs could not meet even the barest of requirements for injunctive relief, because they can

8   claim no injury in the absence of an injunction given that the Initiative will be on the ballot in June.

9   **A.      Factual And Procedural Background**

10          The relevant facts are not in dispute, and can be taken mostly from this Court's Order on March

11   23, 2006.  In the Fall of 2005, Plaintiffs circulated an Initiative that was in English only. (*Id.* at p. 6.)

12          On November 23, 2005, the Ninth Circuit issued its initial decision in the *Padilla v. Lever*

13   matter. *See Padilla v. Lever,* 429 F.3d 910 (9th Cir. 2005).

14          After Certification of Signatures, the petition was then given to the County Board of Supervisors

15   ("Board") (*Id.* at p.2), which had the option of adopting the petition as law, sending it to an election, or

16   ordering a report pursuant to Elections Code §§ 9118(c) and 9111 (*Id.* at p.6).  Selecting the third option,

17   on January 31, 2006, the Board ordered a report on the impacts and effects of the Initiative. *Id.*  The

18   report outlined numerous procedural and substantive flaws with the Initiative, including that the (1)

19   Initiative was not circulated in compliance with the Federal Voting Rights Act; (2) the Initiative failed to

20   comply with a state elections law mandate called the "full-text rule"; (3) the Initiative violated the

21   "single-subject" rule of state elections law; and (4) the Initiative was illegal for numerous substantive

22   reasons.  Following a public hearing on February 28, 2006, the Board voted not to place the Initiative on

23   the ballot, given the many flaws specified in the report, including the FVRA-related problem.  *Id.*

24          After the Board vote, the Initiative proponents (plaintiffs) filed a mandamus action in state court,

25   seeking an injunction order requiring the Board to hold the election.  The County removed the action to

26   the United States District Court, where it became the matter *Melendez v. Board of Supervisors of the*

27   *County of Monterey,* N.D. of Cal., San Jose Division, Case No. C 06-01730 JW.

28

211519_2.DOC                                    -18-                        Case No. C 06-02202 JW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT IN REFERENDUM
CASES AND IN SUPPORT OF DISMISSAL IN THE MELENDEZ INITIATIVE CASE

1    Prior to the Board vote in February 2006, a federal lawsuit was also filed against the County

2    seeking to prevent it from placing the matter on the ballot because of its lack of compliance with the

3    FVRA. *Madrigal v. The County of Monterey,* N.D. Cal., San Jose Division, Case No. C 06-01407 JW.

4    The *Madrigal* and *Melendez* matters were consolidated before this Court under the title *In re Monterey*

5    *County Initiative Matter,* No. C 06-01407 JW. The *Madrigal* matter has now been dismissed, leaving

6    only the *Melendez* matter.

7    On March 23, 2006, this Court denied the *Melendez* plaintiffs' request for an injunction that

8    would have forced the election to go forward, finding that the petition had been circulated in violation of

9    FVRA. The Court relied in part on the then extant Padilla decision, *Padilla v. Lever,* 429 F.3d 910 (9th

10    Cir. 2005) ("*Padilla*"). The *Melendez* plaintiffs appealed.

11    Subsequent to the appeal, the Ninth Circuit heard the *Padilla* case *en banc*. The *en banc* panel's

12    decision was filed on September 19, 2006. *Padilla v. Lever,* 463 F.3d 1046 (9th Cir. 2006) (*en banc*). In

13    essence, the Ninth Circuit reversed itself with respect to the application of the FVRA to recall petitions.

14    In light of the *en banc* decision in *Padilla*, the Ninth Circuit then remanded *Madrigal* and *Melendez*

15    back to this court for consideration in light of the *en banc* decision. Judgment entered November 20,

16    2006. In so doing, the injunction that had been given to the Madrigal plaintiffs against the initiative

17    election taking place was vacated. *Id.*

18    More recently, the County's Board of Supervisors agreed to permit the Initiative to be placed on

19    the ballot in the next election, set for June of 2007. (A copy of the resolution declaring that the Initiative

20    will be put on the ballot is submitted herewith as Exhibit E.)

21    At the time of the original hearing before this Court, the County had also argued a number of

22    state law reasons the election should not go forward, in addition to the federal issue, Section 203 of

23    FVRA. In view of the decision in the County's favor on FVRA, it was unnecessary for the Court to

24    reach those state law issues, and the Court did not do so. Because the County's Board of Supervisors

25    has now chosen to put the initiative on the ballot, those state law defenses have also been mooted insofar

26    as they relate to whether the matter should be on the ballot or not.

27

28

**B.     The Proper Disposition of the Case is to Dismiss It As Moot**

In view of the Board action placing the initiative on the ballot, the proper disposition is simply to dismiss this action as moot.

Where there is no actual controversy, the proper procedure for the Court is to dismiss an action as moot. *See Morcote v. Oracle Corp.,* 2005 U.S. Dist. LEXIS 31898, *13 (N.D. Cal. 2005), citing *Allard v. De Lorean,* 884 F.2d 464, 466 (9th Cir. 1989). In the similar case of *People ex rel. Lockyer v. United States Forest Service,* 2006 U.S. Dist. LEXIS 53430 (N.D. 2006), the Court dismissed the action as moot. In that case, even after the U.S. Forest Service notified the Court of its decision to withdrawn its Fire Plan, plaintiffs still sought to enjoin the U.S. Forest Service from issuing a Fire Plan unless the Forest Service fully complied with the National Environmental Policy Act. In his decision to dismiss, Judge Breyer noted that the "steadfast requirement" of a case or controversy is "borne out of a court's duty to avoid rendering advisory opinions." *Id.* at **3-4. The Court further stated,

> Under Article III of the United States Constitution a foundational predicate to the exercise of judicial power is that a "case or controversy" must exist for the duration of an action. See, e.g., United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980). A case is moot where "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Id. at 396 (quoting Powell v. McCormack, 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969)). The Ninth Circuit has stated that the "basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." Northwest Environmental Defense Center v. Gordon, 849 F.2d 1241, 1244 (9th Cir. 1988). A court sitting in equity deciding a mootness issue must not consider whether the "precise relief sought at the time the application for an injunction was filed is still available" but "whether there can be *any* effective relief." Id. at 1244-45 (emphasis in original). *Id.* at * 3.

There can be no doubt that this case has become moot under the same reasoning, and should be dismissed.


**C.     Remanding to State Court Would Not Be Appropriate and Would Be an Idle Act, Because Plaintiffs Cannot Make The Showing Required For Injunctive Relief.**

Due to the simultaneous nature of the briefing by plaintiffs and the County, it is unclear precisely what plaintiffs will request or what legal support they will purport to advance. However, the County is aware generally plaintiffs want the case remanded to state court, presumably to ask for an injunction to

1  require the County to place the initiative on the ballot. Such an action would be inappropriate for two

2  reasons: (i) if the case is moot, it is moot for either federal or state court, and should be dismissed (ii) in

3  the same vein, there are no further grounds to obtain an injunction and therefore no further reason for

4  litigation. However, since plaintiffs have elected to continue to pursue this matter rather than stipulate

5  to a dismissal, presumably they continue to seek an injunction either in state or federal court requiring

6  the County to do what it has already done – place the initiative on the June ballot. Under these

7  circumstances, whatever test is used for determining whether an injunction should issue, plaintiffs'

8  request would fail.

9      Whether a permanent or preliminary injunction is sought, likelihood of harm and a balancing of

10  hardships are critical elements. *See United States v. Saint Paul,* 1993 U.S. Dist. LEXIS 13454, **4-5

11  (C.D. Cal. 1993) ("standard for determining whether a Court should issue a permanent injunction is

12  essentially the same as the standard for a preliminary injunction, except that the court determines the

13  Plaintiffs' actual success on the merits"). A request for injunctive relief at this time, after the County

14  placed the Initiative on the ballot, would be moot, since there is no harm or hardship that will befall

15  plaintiffs or with which plaintiffs are even remotely threatened.

16      In the Ninth Circuit, a party seeking preliminary injunctive relief must meet one of two tests.

17  Under the first, a court may issue a preliminary injunction if it finds that:  (1) the moving party will

18  suffer irreparable injury if injunctive relief is not granted, (2) the moving party will probably prevail on

19  the merits, (3) in balancing the equities, the moving party will not be harmed more than the moving

20  party is helped by the injunction, and (4) granting the injunction is in the public interest. *Stanley v.*

21  *University of S. Cal.,* 13 F.3d 1313, 1319 (9th Cir. 1993). Alternatively, in the Ninth Circuit, "a court

22  may issue a preliminary injunction if the moving party demonstrates *either* a combination of probable

23  success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the

24  balance of hardships tips sharply in his favor." *Id.* Should Plaintiffs seek injunctive relief in California

25  state court, the test for deciding whether or not an injunction should issue is similar:  a court must weigh

26  two interrelated factors – 1) for a preliminary injunction, the likelihood that the moving party will

27  ultimately prevail on the merits and (2) the relative harm to the parties from issuance or nonissuance of

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT IN REFERENDUM
CASES AND IN SUPPORT OF DISMISSAL IN THE MELENDEZ INITIATIVE CASE

1   the injunction. *O'Connell v. Superior Court,* 141 Cal.App.4th 1452, 1463 (2006).  To obtain permanent

2   injunctive relief, the plaintiff must show that the defendant's wrongful acts threaten to cause irreparable

3   injuries, ones that cannot be adequately compensated in damages. *See Intel Corp. v. Hamidi,* 30 Cal.4th

4   1342, 1352 (2003).

5      Plaintiffs' request for an injunction would be denied under any of the factors described above.

6   Most importantly, no showing of threatened harm can be made.  Plaintiffs can point to no threatened

7   harm, interim or not, to themselves in the absence of the issuance of an injunction, since the initiative

8   will be placed on the June ballot.  Also, for the same reason, any exercise in balancing hardships or

9   equities or examining what would be in the public interest would be futile and not applicable.  Thus, any

10  facts Plaintiffs might use to support a request for an injunction simply are not relevant, since the ultimate

11  relief sought has already been agreed to by the County.  There would be no grounds to issue an

12  injunction in this Court or in state court.

13     As plaintiffs' approach throughout this litigation has been to accuse everyone else of bad faith,

14  plaintiffs may attempt to argue that a reason for an injunction is that the County has not engaged in good

15  faith conduct during the course of this matter, along the lines that the County vigorously opposed their

16  request, only to agree after lengthy and costly litigation that the Initiative could be placed on the ballot

17  in June of this year.  Such an argument would be without merit.  The County acted in good faith and

18  indeed correctly under the law, heeding the guidance of the Court in the *Padilla* matter.  When the Court

19  in *Padilla* issued its first decision regarding the Initiative, the County relied, and justifiably so, on that

20  decision.  This Court agreed.  The Ninth Circuit agreed in the sense that it refused to issue an injunction

21  against the County will the *en banc* proceeding was pending.  When the status of *Padilla* changed and

22  the Ninth Circuit essentially reversed itself with respect to the Initiative, the County, in good faith, has

23  again acted accordingly and has ultimately agreed to have the initiative put on the June 2007 election

24  ballot—trying to do the right thing when it is a very close call.  Plaintiffs would be unable to point to an

25  instance of bad faith on the County's part given that the County merely followed the dictates of the

26  Ninth Circuit's decisions in the *Padilla* matter.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT IN REFERENDUM
CASES AND IN SUPPORT OF DISMISSAL IN THE MELENDEZ INITIATIVE CASE

In sum, there simply are no grounds to consider issuing an injunction or to send it the state court for consideration of such an act. This case is moot and should be dismissed.

**D.      Conclusion With Respect to Initiative Cases**

The *Melendez* plaintiffs had their day in Court, and in fact, they have now attained what they ultimately sought in this lawsuit. They should not be permitted to waste any of this Court's or the state court's resources and time with frivolous and inapplicable requests for relief to which the County has already agreed. In light of the County's agreement to place the Initiative on the June 2007 ballot, Plaintiffs' lawsuit should be dismissed, and if it is not dismissed pending the election in June, this Court should retain jurisdiction of the matter providing Plaintiffs with an avenue for seeking appropriate relief should that ever be necessary.

Dated: February 7, 2007                    NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP

                                                                    / S /

                                                By: _____
                                                        STEPHEN N. ROBERTS

                                                Attorneys for Defendants
                                                COUNTY OF MONTEREY, THE BOARD OF
                                                SUPERVISORS OF THE COUNTY OF MONTEREY, AND
                                                ANTHONY ANCHUNDO