1  OFFICE OF THE MONTEREY COUNTY COUNSEL
   CHARLES J. MCKEE (SBN 152458), COUNTY COUNSEL
2  LEROY W. BLANKENSHIP (SBN 065233), ASSISTANT COUNTY COUNSEL
   EFREN N. IGLESIA (SBN 71309), SENIOR DEPUTY COUNTY COUNSEL
3  168 W. ALISAL, 3RD FLOOR
   SALINAS, CA  93901-2680
4  Telephone:  (831) 755-5045
   Facsimile:  (831) 755-5283
5
   NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
6  STEPHEN N. ROBERTS (SBN 062538)
   50 CALIFORNIA STREET, 34TH FLOOR
7  SAN FRANCISCO, CALIFORNIA 94111-4799
   Telephone: (415) 398-3600
8  Facsimile: (415) 398-2438
   Email: montereycase@nossaman.com
9
   NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
10 JOHN J. FLYNN III (SBN 076419)
   18101 VON KARMAN AVENUE
11 IRVINE, CA  92612-0177
   Telephone: (949) 833-7800
12 Facsimile: (949) 833-7878
   Email: montereycase@nossaman.com
13
   Attorneys for Defendants/Respondents
14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:  County of Monterey Initiative Matter<br><br>and<br><br>In re:  Monterey Referendum | Case Nos.:  C 06-01407 JW<br>C 06-02202 JW<br>**(Related Cases)**<br><br>**COUNTY DEFENDANTS'**<br>**MEMORANDUM OF POINTS AND**<br>**AUTHORITIES IN OPPOSITION TO**<br>***MELENDEZ* PLAINTIFFS' MOTION**<br>**FOR REMAND AND *RANCHO SAN***<br>***JUAN* PLAINTIFFS MOTION FOR**<br>**SUMMARY JUDGMENT; AND IN**<br>**RESPONSE TO *RANGEL* PLAINTIFFS'**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT**<br><br>Date:        February 27, 2007<br>Time:        9:00 a.m.<br>Judge:       Hon. James Ware<br>Courtroom:  8 |

COUNTY DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO *MELENDEZ*
PLAINTIFFS MOTION FOR SUMMARY JUDGMENT; AND IN RESPONSE TO *RANGEL*  PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**(Page)**

I.    INTRODUCTION ..................................................................................................2

    A.    The Melendez Plaintiffs' Motion to Remand Should Be Denied and the
    Melendez Case Should Be Dismissed as Moot ...............................................2

    B.    Rancho San Juan Plaintiffs' Motion for Summary Judgment Should Be
    Denied and the County's Motion For Summary Judgment in The
    Referendum Cases Should Be Granted...........................................................2

    C.    The *Rangel* Plaintiffs' Motion Should be Granted .......................................3

II.   THE *MELENDEZ* CASE SHOULD NOT BE REMANDED, BUT RATHER
    DISMISSED BECAUSE IT IS MOOT .............................................................4

III.  THE *RANCHO SAN JUAN* PLAINTIFFS" MOTION FOR SUMMARY
    JUDGMENT IN THE REFERENDUM CASES SHOULD BE DENIED ...............8

    A.    Facts Relevant to Summary Judgment in the Referendum Cases ...................8

    B.    Section 203 Of The FVRA Must Be Broadly Construed To Require
    Translation Of A Referendum Petition Into Spanish In Monterey County. ...8

    C.    The Referendum Petition And Associated Forms Are "Provided" By The
    State Or Its Subdivision. ..............................................................................10

        1.    The State or Its Subdivision Regulates the Form and Process of a
        Referendum Petition. .........................................................................11

        2.    The State or Its Subdivision Also Provides the Content of the
        Referendum Petition. .........................................................................13

        3.    The Referendum Process May Substitute for the Election. ...............13

        4.    RSJOC's Primary Argument Is Largely Based Upon Flawed
        Logic. ................................................................................................14

    D.    Referendum Petitions, Forms And Associated Documents Constitute
    "Materials Or Information Relating To The Electoral Process." ...................16

    E.    The Legislative History Of Section 203 Supports These Conclusions. .......17

    F.    Deference Should be Accorded to the United States Attorney General's
    Interpretation of Section 203. ......................................................................18

COUNTY DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO *MELENDEZ*
PLAINTIFFS MOTION FOR SUMMARY JUDGMENT; AND IN RESPONSE TO *RANGEL* PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT

1

**TABLE OF CONTENTS (cont'd)**

2

<u>(Page)</u>

3

IV.    THE COUNTY DEFENDANTS HAVE NO OBJECTION TO THE RELIEF
4      REQUESTED BY THE *RANGEL* PLAINTIFFS ................................................................. 19

5 V.    CONCLUSION ................................................................................................................. 19

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNTY DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO *MELENDEZ*
PLAINTIFFS MOTION FOR SUMMARY JUDGMENT; AND IN RESPONSE TO *RANGEL*  PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT

1

## TABLE OF AUTHORITIES

2                                                                      <u>(Page)</u>

3   **Cases**

4   *Allard v. De Lorean*, 884 F.2d 464 (9th Cir. 1989) ........................................................................4

5   *Allen v. State Bd. Of Elections*
6       393 U.S. 544 (1969) ...........................................................................................................9

7   *Delgado v. Smith*
        861 F.2d 1489 (11th Cir. 1988) ....................................................................................15

8
    *Dougherty County Board of Education v. White*
9       439 U.S. 32 (1978) ...........................................................................................................17

10  *Lockyer v. United States Forest Service*, 2006 U.S. Dist. .......................................................4

11  *Montero v. Meyer*
12      861 F.2d 603 (10th Cir. 1998) .....................................................................................15

13  *Morcote v. Oracle Corp* 2005 U.S. Dist. LEXIS 31898, *13  (N.D. Cal. 2005)............................4

14  *Myers v. Patterson*
15      196 Cal.App.3d 130 (1987) ...........................................................................................12

16  *Northwest Environmental Defense Center v. Gordon*
        849 F.2d 1241, (9th Cir. 1988) .......................................................................................5
17
    *Padilla v. Lever*
18      463 F.3d 1046 (9th Cir. 2006) ................................................................................ passim

19  *Pleasant Grove v. United States*
20      479 U.S. 462 (1987) .........................................................................................................18

21  *Powell v. McCormack*
        395 U.S. 486, 496, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969) ...........................................5
22
    *Roger v. Frito-Lay, Inc.*
23      661 F.2d 1074, 1080 (5th Cir. 1980) .............................................................................17

24  *U.S. v. McNab*
25      331 F.3d 1228 (11th Cir. 2003) ....................................................................................17

26  *United States Parole Comm'n v. Geraghty*
        445 U.S. 388, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980) ...............................................5
27
28  *United States v. Sheffield Bd. Of Comm'rs*

COUNTY DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO *MELENDEZ*
PLAINTIFFS MOTION FOR SUMMARY JUDGMENT; AND IN RESPONSE TO *RANGEL* PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES (cont'd)

**(Page)**

435 U.S. 110 (1978) .................................................................................................18

*Zaldivar v. City of Los Angeles*
   780 F.2d 823 (9th Cir. 1986) ...............................................................................11

**Statutes**

28 C.F.R. § 55, App. .............................................................................................7, 8

28 U.S.C. § 1443 .......................................................................................................5

42 U.S.C. § 1973 .........................................................................................7, 8, 14, 15

Cal. Elec. Code  at § 9020 .......................................................................................11

Cal. Elec. Code § 9101 ...........................................................................................11

Cal. Elec. Code § 9140 ...........................................................................................10

Cal. Elec. Code § 9141 .................................................................................10, 11, 12

Cal. Elec. Code § 9144 .............................................................................10, 11, 12, 17

Cal. Elec. Code § 9146 .......................................................................................10, 11

Cal. Elec. Code § 9147 ...................................................................................10, 11, 15

Federal Voting Rights Act § 203 ...................................................................... passim

**Other Authorities**

*Merriam Webster's Collegiate Dictionary*, at 458 (10th ed. 1996)...............................15

1    I.      **INTRODUCTION**

2           A.      **The *Melendez* Plaintiffs' Motion to Remand Should Be Denied and the**

3                   ***Melendez* Case Should Be Dismissed as Moot**

4           As anticipated in the County of Monterey opening brief, the *Melendez* Plaintiffs request

5    remand to the state courts.  And, as explained in that opening brief, the request should be denied,

6    because Plaintiffs have attained all of the relief they requested.  With their lawsuit, Plaintiffs

7    sought to have placed on the ballot a particular initiative, the "Monterey County Quality of Life,

8    Affordable Housing, and Voter Control Initiative" (the "Initiative").  They have achieved that

9    goal:  the County of Monterey has agreed and resolved to have the Initiative placed on the June

10   ballot.  Plaintiffs have no other claims – state law-based or otherwise – to pursue in this matter.

11   Plaintiffs should not be permitted to waste any more judicial resources on requests for relief that

12   has already been attained.  Plaintiffs attempt to raise an alleged jurisdictional issue but this is

13   and should be treated as nothing more than an attempt to deflect from what has actually

14   happened: removal was properly effected and completely relief was subsequently accorded to

15   the Plaintiffs.  No case or controversy exists.  The action should be dismissed as moot.

16          B.      **Rancho San Juan Plaintiffs' Motion for Summary Judgment Should Be**

17                  **Denied and the County's Motion For Summary Judgment in The**

18                  **Referendum Cases Should Be Granted**

19          Perhaps the only point of agreement the defendants have with the summary judgment

20   motion of plaintiffs Rancho San Juan Opposition Coalition, Citizens for Responsible

21   Government, and Julie Engell (collectively "RSJOC,") is that this case boils down to a

22   straightforward legal question: does §203 of the Federal Voting Rights Act ("FVRA") require

23   that a referendum election in Monterey be conducted in Spanish.  Most importantly, defendants

24   do not agree that the issue was decided in the *en banc* decision, *Padilla v. Lever,* 463 F.3d 1046,

25   1048 (9th Cir. 2006) (*en banc*).  In that case involving recall petitions, the panel studiously

26   avoided deciding the issue of whether FVRA applied to referendum petitions.  And if one

27   reviews the reasoning of the *en banc* panel's decision, that the recall petition was not governed

28

COUNTY DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO *MELENDEZ*
PLAINTIFFS MOTION FOR SUMMARY JUDGMENT; AND IN RESPONSE TO *RANGEL* PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT

1  by FVRA because it was not provided by the government, that reasoning leads to a different

2  result in referendum cases because referendum petitions are almost entirely provided by the

3  government.

4          The plaintiffs are extremely aggressive in not wanting Spanish speaking voters to see the

5  petition in Spanish. Oddly, while they are liberal in throwing around strong rhetoric in their

6  memorandum of points and authorities about the venality of everyone else, they fail to supply

7  any evidence of how the petition could be understood by its limited English signers. But the

8  County does not have the luxury of excluding a set of voters that FVRA says should not be

9  excluded from the process. It has to balance the demands of one advocacy group that wants to

10  see Spanish speaking voters excluded from the process against those wanting to be included.

11  And, in the absence of any governing judicial authority, it has to make a judgment call about

12  what the law means and whether to proceed with the election or not.

13          This case boils down to whether the plain language of FVRA requires the referendum

14  petition to be in Spanish. The guidance of the *en banc* panel's decision in *Padilla* says that it

15  does, and that analysis is supported by the most relevant available interpretive aids. Section 203

16  of FVRA raises two basic questions: (i) whether the petition constitutes materials or

17  information relating to the electoral process under § 203 and (ii) whether the petition is of the

18  type of material or information provided by the State or a political subdivision. *Padilla,* 463

19  F.3d at 1048. The referendum procedure in California falls squarely within both of these tests,

20  such that § 203 does apply to the circulation of referendum petitions. RSJOC's Motion for

21  Summary Judgment should be denied.

22      **C.     The *Rangel* Plaintiffs' Motion Should be Granted**

23          The defendants do not object to the *Rangel* plaintiffs' motion for a three judge court. Nor

24  do defendants oppose the *Rangel* plaintiffs' motion for a summary judgment, for the same

25  reason they oppose RSJOC's. However, no injunction is necessary to force the County to keep

26  the referendum off the ballot, since the County is not threatening to place it on the ballot.

27

28

1 | **II.    THE *MELENDEZ* CASE SHOULD NOT BE REMANDED, BUT RATHER**
2 | **DISMISSED BECAUSE IT IS MOOT**

3  The County and the *Melendez* Plaintiffs disagree on one fundamental issue:  Should the

4 County's agreement to place the Initiative on the ballot in the upcoming June election require

5 dismissal of this action as moot or force a remand to state law court?  Under the law and the

6 facts, the answer is not a close call.  The *Melendez* action should be dismissed as moot.  There

7 are no claims left to be resolved, and the alleged jurisdictional issue raised by Plaintiffs has no

8 legal or factual basis.

9 | **A.    Because There Are No Claims Left To Be Resolved In The *Melendez* Matter,**
10 | **It Must Be Dismissed As Moot.**

11  Because the *Melendez* plaintiffs tell so little of what their position is, it is difficult to

12 respond.  However, the erroneous approach taken by the *Melendez* plaintiffs seems to be based

13 upon three very basic, but partially unspoken misconceptions.  (i) That a federal court has no

14 power to dismiss this action as moot; (ii)  That there are state causes of action left to be litigated;

15 and (iii) That the Board's decision to place the initiative on the ballot creates a problem with the

16 removal that took place in *Melendez* and thus this Court is somehow deprived of jurisdiction.

17 Plaintiffs are in error with all three of these unspoken premises.

18  First, the Court plainly has the power to dismiss this action as moot.  Quite simply, nothing

19 in this case remains to be resolved and so it should be dismissed.  Plaintiffs do not dispute that the

20 County has already resolved to place the Initiative on the ballot in the upcoming June election. *See*

21 Plaintiffs' Memo. of Pts. and Auth.'s, 11:19-22.  When the County so resolved, Plaintiffs received all

22 the relief that they had ever sought in their complaint/petition in the *Melendez* action.

23  Under these circumstances, where there is no actual controversy, the proper procedure for

24 the Court is to dismiss an action as moot.  *See Morcote v. Oracle Corp.,* 2005 U.S. Dist. LEXIS

25 31898, *13  (N.D. Cal. 2005), citing *Allard v. De Lorean,* 884 F.2d 464, 466 (9th Cir. 1989).  In

26 the similar case of *People ex rel. Lockyer v. United States Forest Service,* 2006 U.S. Dist.

27 LEXIS 53430 (N.D. 2006), the Court dismissed the action as moot.  In that case, even after the

1  U.S. Forest Service notified the Court of its decision to withdraw its Fire Plan, plaintiffs still

2  sought to enjoin the U.S. Forest Service from issuing a Fire Plan unless the Forest Service fully

3  complied with the National Environmental Policy Act.  In his decision to dismiss, Judge Breyer

4  noted that the "steadfast requirement" of a case or controversy is "borne out of a court's duty to

5  avoid rendering advisory opinions."  *Id.* at **3-4.  The Court further stated,

> Under Article III of the United States Constitution a foundational predicate to the
> exercise of judicial power is that a "case or controversy" must exist for the
> duration of an action. See, e.g., <u>United States Parole Comm'n v. Geraghty, 445
> U.S. 388, 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980)</u>. A case is moot where
> "the issues presented are no longer 'live' or the parties lack a legally cognizable
> interest in the outcome." <u>Id. at 396</u> (quoting <u>Powell v. McCormack, 395 U.S. 486,
> 496, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969)</u>). The Ninth Circuit has stated that the
> "basic question in determining mootness is whether there is a present controversy
> as to which effective relief can be granted." <u>Northwest Environmental Defense
> Center v. Gordon, 849 F.2d 1241, 1244 (9th Cir. 1988)</u>. A court sitting in equity
> deciding a mootness issue must not consider whether the "precise relief sought at
> the time the application for an injunction was filed is still available" but "whether
> there can be *any* effective relief." <u>Id. at 1244-45</u> (emphasis in original). *Id.* at * 3.

15  Similarly, this case has become moot and should be dismissed.

16      Second, there are no state law causes of action.  Contrary to Plaintiffs' unfounded

17  argument for remand, no causes of action, based on state law or otherwise, remain for

18  disposition by this Court or a state court.  In their Complaint, Plaintiffs sought no relief other

19  than sending the Initiative to election.  Tellingly and not surprisingly, Plaintiffs never specify in

20  their 32-page brief just what state law causes of action must be resolved, because there are no

21  such causes of action remaining to be resolved.  They merely vaguely state that this case "must

22  be remanded for appropriate resolution of plaintiffs' state law causes of action and for final

23  disposition of the case in accordance with California law," without once specifying what they

24  could possibly mean by "state law causes of action." *See* Plaintiffs' Memorandum of Points and

25  Authorities, 13:10-12.  Perhaps they are thinking of the various state law defenses that the

26  County defendants raised, in addition to the federal law issue, the Federal Voting Rights Act

27  ("FVRA").  But all those defenses as well as the FVRA-based defense became moot when the

28

COUNTY DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO *MELENDEZ*
PLAINTIFFS MOTION FOR SUMMARY JUDGMENT; AND IN RESPONSE TO *RANGEL* PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT

1    Board put the Initiative on the ballot.  While it is true that the state law <u>defenses</u>, which went to

2    the substantive legality of the proposed measure, will continue to exist should the measure ever

3    pass, the only state law <u>cause of action</u> that was ever raised in this case was one to get the matter

4    placed on the ballot.  That cause of action has become moot and should be dismissed.

5        Third, the mootness creates no issue with respect to the correctness of the removal.  This

6    is explained in the following section, II.B.

7        In sum, Plaintiffs in the *Melendez* case have failed to address any of the relevant issues

8    and wholly misconstrue the situation.  The case should simply be dismissed as moot; remand to

9    state court is pointless.

10   **B.    In The Event The Court Does Not Dismiss This Matter, The Court Should**

11   **Retain Jurisdiction.**

12       The removal of this action to federal district court was proper.  The case was properly

13   removed pursuant to 28 U.S.C. § 1443(2).  The subject matter of this action qualified it for

14   removal.  Under Section 1443, a defendant may remove a civil action from state to federal court

15   "[f]or any act under color of authority derived from any law providing for equal rights, or for

16   refusing to do any act on the ground that it would be inconsistent with such law."  Defendants

17   were sued for refusing to place the Initiative on the ballot in part because it would have been

18   inconsistent with FVRA.  There was no doubt that a "colorable conflict" existed between state

19   and federal law under the then existing opinion in *Padilla v. Lever*, 429 F.3d 910 (9th

20   Cir. 2005).   The County would have been in violation of FVRA's bilingual and pre-clearance

21   provisions were it to have put the matter on the ballot at that time, as this court later found.

22   Courts which had reviewed the matter had said voting rights cases are subject to § 1443(2).

23   *Wachtler v. Cuomo*, 1991 U.S. Dist. LEXIS 17069 at *10.  *See, also, Smith v. Winter*, 717 F.2d

24   191, 194 (5th Cir. 1983); *Sexson v. Servaas*, 33 F.3d 799, 801 (7th Cir. 1994).  Accordingly, there

25   is no doubt that removal under 28 U.S.C. § 1443 was proper.

26       The Board has now decided, in light of the reversal of *Padilla* in the Ninth Circuit, that it

27   is prudent to place the Initiative on the ballot.  That does not change the fact that it was removed

28

1    properly and this Court has jurisdiction.  Once a case is properly removed, the federal court has

2    jurisdiction over it.  *See* 28 U.S.C. §§ 1367, 1441, 1443, 1446, 1447.  Just because the whole

3    case has become moot does not deprive the Court of jurisdiction to dismiss it under any theory

4    (*id.*); in any event, none is cited by plaintiffs.

5        Indeed, in a removed case, even if a federal cause of action had been dismissed, leaving

6    only state causes of action, this Court would still have discretionary jurisdiction to decide the

7    ancillary state causes of action.  *See Acri v. Varian Assocs.,* 114 F.3d 999, 1000 (9th Cir. 1997);

8    *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1170 (9th Cir. 2001).  Specifically, 28 U.S.C. §

9    1367(c) provides that the district court may or may not decline to exercise supplemental

10   jurisdiction in the event that "the district court has dismissed all claims over which it has

11   original jurisdiction."  28 U.S.C. § 1367(c)(3).  *A fortiori*, as here where all claims have been

12   mooted including the state causes of action and defenses, this Court has jurisdictional power to

13   dismiss the action as moot.[1]

14       Plaintiffs cite several cases, none of which apply.  While they may provide examples of

15   removals that were found by the Court to be improper, here, in contrast, the removal under 28

16   U.S.C. § 1443(2) was indisputably proper.  Plaintiffs have cited no authority discussing an

17   instance where remand was ordered following a removal effected properly pursuant to 28 U.S.C.

18   § 1443(2).  They have made no legal or factual showing as to why the supplemental

19   jurisdictional statute would not operate to allow this Court to exercise its discretion and retain

20   jurisdiction.

21   **C.    Conclusion**

22       The *Melendez* Plaintiffs have now attained what they ultimately sought in this lawsuit.  In

23

24   _____

25   [1] If it is a claim for attorneys' fees that plaintiffs are worried about, they have it wrong there as

26   well.  Except for the drafting of the original petition/complaint in state court, the entire litigation

27   has taken place in this Court.  Moreover, the proper court for determining attorneys' fees in

28   removal is the federal district court.  28 U.S.C. § 1447(c).

COUNTY DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO *MELENDEZ*
PLAINTIFFS MOTION FOR SUMMARY JUDGMENT; AND IN RESPONSE TO *RANGEL* PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT

1   light of the County's agreement to place the Initiative on the June 2007 ballot, Plaintiffs' lawsuit

2   should be dismissed as moot, and if it is not dismissed pending the election in June, this Court

3   should retain jurisdiction of the matter providing Plaintiffs with an avenue for seeking

4   appropriate relief should that ever be necessary. For all of the foregoing reasons and those set

5   forth in the County's opening brief, the Court should deny Plaintiffs' Motion.

6   **III.    THE *RANCHO SAN JUAN* PLAINTIFFS" MOTION FOR SUMMARY**

7   **JUDGMENT IN THE REFERENDUM CASES SHOULD BE DENIED**

8   **A.    Facts Relevant to Summary Judgment in the Referendum Cases**

9   The County discussed the background of this dispute in the memorandum in support of

10  its own summary judgment motion, presently before the Court, and therefore will not repeat that

11  discussion here. In the end, the key facts necessary for summary disposition are the referendum

12  petition and the fact it was not circulated in any language but English. That it was not circulated

13  in English was stipulated by RSJOC.

14  **B.    Section 203 Of The FVRA Must Be Broadly Construed To Require**

15  **Translation Of A Referendum Petition Into Spanish In Monterey County.**

16  RSJOC's motion boils down to the meaning of § 203 of the Federal Voting Rights Act

17  ("FVRA"). That statute states:

18  > Whenever any State or political subdivision subject to the
19  > prohibition of subsection (b) of this section provides any registration
20  > or voting notices, form, instructions, assistance, or other materials or
20  > information relating to the electoral process, including ballots, it
21  > shall provide them in the language of the applicable minority group
21  > as well as in the English language.

22  42 U.S.C. § 1973aa-1a(c).

23  Under the applicable federal regulations, the County is "subject to the prohibition of

24  subsection (b)." 28 C.F.R. § 55, App. (2005) (identifying the County as being subject to the

25  multilingual requirements of § 203, and in particular the Spanish heritage requirements). The

26  obligations thereby imposed on counties such as Monterey are further expounded in the

27  regulations as follows:

28

211833v.1 doc                           - 8 -                    Case Nos.: C 06-01407 JW and C 06-02202 JW

> The requirements of … 203 (c) apply with regard to the provision of "any registration or voting notices, forms, instructions, assistance or other materials or information relating to the electoral process, including ballots." … Accordingly, the quoted language should be broadly construed to apply to all stages of the electoral process, from voter registration through activities related to conducting elections, including the issuance, at any time during the year, of notifications, announcements, or other informational materials concerning the opportunity to register, the deadline for voter registration, the time, places and subject matters of elections, and the absentee voting process.

28 C.F.R. § 55.15. Pursuant to these provisions, voting materials should be conveyed in Spanish, in addition to English, so that all the electorate may participate effectively in the process.

Supreme Court precedent mandates that this Court broadly construe the FVRA. *See Allen v. State Bd. Of Elections*, 393 U.S. 544, 565-66 (1969) (stating that FVRA gives a broad interpretation to the right to vote and recognizing that voting includes "all action necessary to make a vote effective"). In enacting the bilingual election requirements, Congress made an explicit finding that "language minorities had been effectively excluded from participation in the electoral process," necessitating remedial action "to enforce the guarantees of the 14th and 15th amendments." 42 U.S.C. § 1973aa-1a(a). This authority requires a broad view of the applicability of the FVRA to state elections. Applying the FVRA's bilingual mandates to referendum petitions will further Congress' goal of ensuring broad participation in the electoral process.

With respect to petitions, *Padilla* guides us in pointing out that there are two basic questions: (i) whether the petition constitutes "registration or voting notices, form, instructions, assistance, or other materials or information relating to the electoral process, including ballots" under § 203 and (ii) whether the petition is of the type of material or information provided by the State or a political subdivision. *Padilla* at 1048. The answer to both questions is yes as discussed in the following.

1     **C.**     **The Referendum Petition And Associated Forms Are "Provided" By The**

2             **State Or Its Subdivision.**

3        Referendum petitions in California are provided by the State or its political subdivision

4 within the meaning of § 203, and therefore such petitions meet the first element of that statute.

5 That is because virtually every part of each such petition is provided by either the State or its

6 subdivision.

7        In addressing the parallel question with respect to recall petitions, the *en banc* panel

8 concluded that type of petition was not provided by the State or its subdivision within the

9 meaning of § 203.  But the very grounds that it stated led to that decision demonstrate why in

10 contrast a referendum petition is to be deemed provided by the State or its subdivision.

11

12          It is true that California regulates recall petitions in some
detail.  The petitions must follow a format provided by the Secretary

13 of State, and must use a minimum type size. (Citation omitted.)  The
petition also must include a copy of the Notice of Intention, the

14 statement of grounds for recall, and the answer of the targeted
officer if the officer submitted one. (Citation omitted.)  But these

15 regulations do not mean that the petitions are *provided* (emphasis in
original by the State or subdivision.  The form is regulated by the

16 State, but the proponents fill out the petition, supply the grounds of
recall, and have the petitions printed at their own expense.  The fact

17 that, under [California law], the Secretary of State "provides" the
format does not mean that the State "provides" the petitions

18 themselves within the meaning of the Voting Rights Act.

19          The plaintiffs argue that, because the election officials are
charged under state law with ascertaining whether "the proposed

20 form and *wording* (emphasis in original) of the petition meets the
requirements of this chapter[,] (citation omitted), they are dictating

21 the content of the petitions to the degree that the petitions may be
said to be "provided" by the County.  **But there is nothing in the**

22 **chapter governing elections that specifies the actual wording**
**that proponents must use, for example, in stating their grounds**

23 **for recall.  Nor does the record contain any hint that the**
**elections officials determine the contents of the petition; they**

24 **merely make sure that the petitions are in the form specified by**
**statute.**  (Emphasis provided.)  It is not reasonable to hold that this

25 regulatory process transforms petitions privately initiated, drafted,
and circulated by the proponents into petitions "provided" by the

26 County for purposes of the Voting Rights Act.  *Padilla* at 1051.

27

28

COUNTY DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO *MELENDEZ*
PLAINTIFFS MOTION FOR SUMMARY JUDGMENT; AND IN RESPONSE TO *RANGEL* PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT

In other words, *Padilla* instructs that the government regulation over the form and process is important, but not enough—the government must also provide the contents of the petition to fall within § 203. Similarly to recall petitions, referendum petitions conform to pervasive state regulation as to form, and impose the same requirements upon local government to insure the process is carried out correctly and properly. But in contrast to recall petitions, for referenda the County provides virtually every word of the petition. An examination of Exhibit D shows that the petition consists of two types of things: words to fill in the form that may be provided by the petition drafters, but are in fact dictated by State law as to what they must say; and the substance of the petition itself, which consists of the resolution at issue and which was provided entirely by the State's subdivision, the County of Monterey. Unlike a recall petition where the State provides the form but not the substance, the government here provides both the form and the substance. Each of these elements is discussed in more detail.

### 1.    The State or Its Subdivision Regulates the Form and Process of a Referendum Petition.

In California's referendum process, ordinances may be subject to a referendum petition within 30 days of the ordinance being adopted. Cal. Elec. Code §§ 9141, 9144. The petition must be duly signed by only 10% of the voters in the County in the last gubernatorial election. *Id.*, § 9144. When presented to the Board, a vote must be taken as to whether to appeal the ordinance or not. *Id.* If not entirely repealed, the ordinance is then placed on the ballot for a majority vote.

Under the California electoral system the State or its subdivision provided the referendum petition within the meaning of FVRA. To begin, there is elaborate government involvement in all aspects of the process. The government plays an integral role in regulating, approving, monitoring, and, ultimately, in administering referendum elections. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 833 (9th Cir. 1986) ("That the state or a political subdivision has mandated by law that certain preliminary steps be taken by the would-be voter, the candidate for

COUNTY DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO *MELENDEZ* PLAINTIFFS MOTION FOR SUMMARY JUDGMENT; AND IN RESPONSE TO *RANGEL* PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1   office, or the proponents of an issue does not in any sense absolve the governmental entity of its

2   responsibility under the Voting Rights Act"). Indeed, this heightened level of control that

3   extends to the beginning of every referendum process is enshrined in the numerous statutory

4   requirements governing conduct, well before the point where petition signatures are certified.

5   *See* Cal. Elec. Code §§ 9140 *et seq.*; *see also id.* at § 9146 (the provisions of the Elections Code

6   relating to the form of petitions, the duties of county elections officials, and the manner of

7   holding elections in *initiative* matters also govern the procedures in *referendum* matters). The

8   state mandates the specific format that county referendum petition proponents are required to

9   use. *See* Cal. Elec. Code § 9147(a) ("The heading of the proposed referendum shall be in

10  substantially the following form: 'Referendum Against an Ordinance Provided by the Board of

11  Supervisors'"). The Code also requires that a copy of the title and text of the ordinance being

12  referenced be attached to the petition. *Id.*, § 9147(b).

13          That the government has an integral part is further evidenced by the large role it plays in

14  ensuring that referendum petitions conform to statutory requirements. In addition to the above-

15  referenced code sections specifying the form and content of the referendum petition, the Code

16  imposes highly specific requirements as to the information required of petition signers. *Id.* at

17  § 9020 (incorporated into the referendum petition process by sections 9101 and 9146). It

18  imposes time limits on when the petition may be filed in order to halt effectiveness of the

19  relevant ordinance. *Id.* at § 9141, 9144 (ordinances become effective 30 days after passage

20  unless a referendum petition protesting its adoption becomes effective). The local elections

21  officer, in this case the Registrar of Voters, is required by the Code to examine and verify the

22  number of valid signatures on the petition, and is provided with detailed direction on how to do

23  so. *Id.* at § 9113-9115. The political subdivision may have to reject the petition if it does not

24  comply with the Code. *See, e.g. Myers v. Patterson*, 196 Cal.App.3d 130, 136 (1987) (regarding

25  initiative petition).

26

27

28

**2.      The State or Its Subdivision Also Provides the Content of the Referendum Petition.**

*Padilla* said of recall petitions:

> But **there is nothing in the chapter governing elections that specifies the actual wording that proponents must use,** for example, in stating their grounds for recall. Nor does the record contain any hint that the elections officials determine the contents of the petition; they merely make sure that the petitions are in the form specified by statute. *Padilla* at 1051 (emphasis added).

Therein lies the primary difference between recall and referendum petitions. In the latter, the government does specify the actual wording of the petitions: the text is the ordinance or (here) resolution at issue. The resolution that is the entire object of the petition here was drafted and adopted by the County in the first place. Since the Resolution is the substantive part of the petition, the petition too is provided by the government. There is no substantive part of the petition that is provided by the petition circulators—it is provided entirely by the State's subdivision. Putting that together with the State's thorough regulation of the process, there is no part of the petition that is not provided by the government. The only thing that the circulators do is print and circulate the petition, but, as the language quoted immediately above from *Padilla* points out, the critical question is who "specifies the actual wording that proponents must use...." And there is no doubt that is the County. The reasoning of *Padilla* dictates that FVRA applies.

**3.      The Referendum Process May Substitute for the Election.**

Although not directly addressed by the *Padilla* panel, one thing that might be said of recall petitions is that at least minority language voters might ultimately get a chance to vote in an actual election. The same cannot be said of referendum. That is, the petition circulation process might constitute the entirety of the process in which voters participate.

A unique part of the referendum process is that the process itself may result in the passage of the legislation prayed, repeal of the ordinance, without an actual election. Cal. Elec. Code §§ 9141, 9144. Thus it cannot be said that any problems will be cured by simply having a

1    translation available at election time.  The effect of the petition may be that, upon

2    reconsideration, the Board eliminates the ordinance.  If that happens, the law will have been

3    changed by the 10% who signed the petition, not the 50% majority who voted one way or

4    another on the ordinance itself.  The petition signers then become the part of the electorate that

5    is making decisions about the ordinance, not the fuller set of actual voters.  Thus non-English

6    speaking voters will have been eliminated from this process altogether.

7                    **4.      RSJOC's Primary Argument Is Largely Based Upon Flawed Logic.**

8           The primary argument advanced by RSJOC is that *Padilla* decided the issue with respect

9    to all types of petitions.  That is certainly not true, as one can easily discern from reading

10   *Padilla*.  The decision carefully steers away from discussing other types of petitions and

11   expressly limits its holding to recall petitions.  RSJOC's arguments are simply a branch of the

12   basic logical fallacy that apples are fruits, oranges are fruits, therefore apples are oranges.

13   Recall petitions are simply not the same as referendum petitions, nor indeed the same as

14   initiative petitions.  Of the three types, recall petitions clearly have the least material provided

15   by the State or its subdivision.  Thus when the original *Padilla* decision determined that recall

16   petitions were subject to § 203, it was a simple step to apply that decision to initiative and

17   referendum petitions, which contain an even greater amount of material provided by the

18   government.  But the same cannot be said about the *en banc* decision, because the other types of

19   petitions provide a much stronger case for application of the FVRA.

20          That is not to say the reasoning of the *en banc* panel's decision is not important, because

21   it does interpret § 203 and therefore provides guidelines for other types of petitions.  But one

22   must examine the reasoning, not just say that because the 9th Circuit made a decision with

23   respect to recall petitions, that necessarily applies to referenda.

24

25

26

27

28

Nor does it help RSJOC to cite cases[2] from other circuits, under other states' laws and procedures, involving a totally different process, the initiative process. Since the 9th Circuit has provided its interpretation in *Padilla*, that is the controlling authority. Were the cases from other jurisdictions referenda cases, and were the statutes in those states similar to California, then perhaps they might be helpful guidelines. But neither is true and so the cases are simply inapposite. Similarly, the review of Judge Collins' unpublished decision prior to the *en banc* panel's decision provides no helpful guidance. She was interpreting the law prior to the current statements of the 9th Circuit in *Padilla*. In that regard, the language they quote does not address the central requirement derived from the *Padilla* case, that the substantive material be provided by the government. Had the *Padilla* decision been extant at the time, Judge Collins may have reached the opposite conclusion.

Finally, RSJOC attempts to make some practical arguments based on some of the statements in *Padilla*. The language from *Padilla* explained that some practical considerations supported its actual holding as to recall elections—but it was not the holding of the case. The critical holding, as already quoted, is:

> But there is nothing in the chapter governing elections that specifies the actual wording that proponents must use, for example, in stating their grounds for recall. Nor does the record contain any hint that the elections officials determine the contents of the petition; they merely make sure that the petitions are in the form specified by statute. (Emphasis provided.) It is not reasonable to hold that this regulatory process transforms petitions privately initiated, drafted, and circulated by the proponents into petitions "provided" by the County for purposes of the Voting Rights Act. *Id*. at 1051.

That addresses the central issue of the cases: What does provided by the State mean? There is no part of § 203 that says one complies with § 203 only if it is practical or convenient; the Court's discussion of practical issues then was not part of the holding, but merely part of its reasoning to seek to glean the intent of the statute. But where as in the case of a referendum

---

[2] *Montero v. Meyer,* 861 F.2d 603 (10th Cir. 1988); *Delgado v. Smith,* 861 F.2d 1489 (11th Cir. 1988).

petition the entirety of the petition is provided by the State or its subdivision, the practical issues are irrelevant.

Nor was there any serious practical barrier here. Perhaps it would have been slightly inconvenient to translate 14 pages into Spanish, but hardly impossible. Self evidently that could have been done in less than a day and the 30 day deadline for circulating a petition is thus hardly a barrier.

**D.    Referendum Petitions, Forms And Associated Documents Constitute "Materials Or Information Relating To The Electoral Process."**

*Padilla* provided no guidance with respect to the second criterion, whether the referendum petition constitutes any of "registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots...." FVRA § 203 (42 U.S.C. § 1973aa-1a(c)). Fundamentally RSJOC does not address the issue in its moving papers, and so the County defendants will deal with it only briefly here. In the County's motion for summary judgment there is a detailed discussion why the petition does constitute election materials, and the Court is therefore respectfully referred to that discussion.

Very briefly in summary:  FVRA applies to "registration or voting notices, form, instructions, assistance, or other materials or information relating to the electoral process, including ballots….." *Id.*  A "form" is a "printed or typed document with blank spaces for insertion of required or requested specific information." *See Merriam Webster's Collegiate Dictionary*, at 458 (10th ed. 1996).  A referendum petition easily fits that description. *See, e.g.,* Cal. Elec. Code § 9147(a) ("The heading of a proposed referendum measure shall be in substantially the following *form*:  'Referendum Against an Ordinance Provided by the Board of Supervisors'") (emphasis added).  Further, the statutes require that referendum proponents attach a copy of the ordinance to be referended to the above-referenced form. *See Id.*, § 9147(b).  There can be no serious dispute that the ordinance being referended constitutes "other materials or information relating to the electoral process."  It is the very reason for the

1  election.

2  **E.      The Legislative History Of Section 203 Supports These Conclusions.**

3       The legislative history of the FVRA mandates a broad interpretation.  For example, in its

4  report on the bilingual amendment, the Senate specifically expressed concern that language

5  minorities exerted little influence or control over the election or appointment of local officials

6  due to language barriers.  Sen. Rep. No. 94-295 (1975) (Req. Jud. Not., Ex. B, p. 14).  It strains

7  reason to suggest that persons who initiate or sign referendum petitions are not participating in

8  the "electoral process" or are not exercising some "control over [an] election," especially when

9  it might never reach the voters.

10      Congress was aware before renewing FVRA that decisions such as *In re Monterey*

11 *Initiative Matter* and the initial *Padilla* decision existed.  Req. for Jud. Not., Ex. C.  Indeed,

12 there was even an amendment offered to change FVRA to exclude petitions explicitly.  *Id.*,

13 pp. 23-24.  Despite that fact, Congress chose to renew FVRA without amendment.  Under well-

14 recognized principles of statutory construction, this supports an argument that Congress was

15 aware of and acquiesced in an interpretation of the Act that required translating petitions into

16 other languages.  *See Dougherty County Board of Education v. White*, 439 U.S. 32, 38 (1978);

17 *U.S. v. McNab,* 331 F.3d 1228, 238 (11th Cir. 2003) (may look at fact amendments were offered

18 during legislative history); *Roger v. Frito-Lay, Inc.*, 661 F.2d 1074, 1080 (5th Cir. 1980).

19      RSJOC cites a committee report.  RSJOC's Memorandum in Support Summary Judgment

20 Motion, at p. 22.  The report is at best ambiguous for purposes relevant here, stating that it

21 believes FVRA does not apply to privately prepared and circulated materials, but does not

22 specify of what these consist.  It begs the question here, which is whether referenda are solely

23 privately circulated materials or instead are provided by the State or its subdivision.[3]  The report

24 does show Congress was aware of the general issue and therefore is damaging to RSJOC's

25 position because Congress chose to do nothing to clarify FVRA.  Even more persuasive is the

26

27

28

[3] The quoted piece certainly does not say that where petitions are provided by the State or its subdivision they should not be translated.

COUNTY DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO *MELENDEZ*
PLAINTIFFS MOTION FOR SUMMARY JUDGMENT; AND IN RESPONSE TO *RANGEL* PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT

1  fact that when Congress had the chance to address that issue in the proposed amendment

2  discussed above, the amendment was rejected.  In the end the legislative history undermines

3  RSJOC's position.

### F.   Deference Should be Accorded to the United States Attorney General's Interpretation of Section 203.

6      The Attorney General's ("AG") reasonable interpretation of the statute must be accorded

7  deference.  *See United States v. Sheffield Bd. Of Comm'rs*, 435 U.S. 110, 131-32 (1978)

8  (recognizing that because of the AG's "key role" in the formulation of the FVRA the United

9  States Supreme Court has "given great deference to his interpretations" of the statute).  The

10  Court might also note that Congress has revisited the act three times (in 1982, 1992 and 2006)

11  since the AG's regulations were issued shortly after the act's passage in 1975,  and also

12  acquiesced in the AG's interpretations of the act as applying to <u>petitions</u> of all kinds (see below).

13  *Cf. Pleasant Grove v. United States*, 479 U.S. 462, 468 (1987) (awareness of AG view on the

14  scope of section 5 of the same act).

15      The AG's guidelines regarding section 203 provide in pertinent part as follows:

16          (a) Types of materials. … A jurisdiction required to provide
minority language materials is only required to publish in the
17  language of the applicable minority group materials distributed to or
provided for the use of the electorate generally.  Such materials, for
18  example, ballots, sample ballots, informational materials, and
*petitions.*

19

20  28 C.F.R. § 55.19(a) (emphasis added). Contrary to RSJOC's argument not only does this

21  explicitly cover *petitions*, but it provides that any material "distributed to or provided for the use

22  of the electorate generally" is also covered.  Any petition is by definition distributed to the

23  *electorate* generally, because it can only be signed by registered voters of the jurisdiction.  *See*

24  Cal. Elec. Code § 9144.  Notably, the *en banc* panel said it was not convinced this section

25  applied to recall petitions, but did not discuss referendum petitions.  In fact, the Justice

26  Department has made clear it understands referendum petitions to fall under FVRA's purview

27  (*see* 28 C.F.R. § 51.22.)  There is thus no such ambiguity pertaining to referendum, as the *en banc* panel surmised with respect to recall.

28

Also, the regulations elsewhere evidence the AG's interpretation of §203 as applying to materials and activities other than merely casting the ballot.

> The basic purpose of these requirements is to allow members of applicable language minority groups to be effectively informed of and participate effectively in *voting-connected* activities. Accordingly, the quoted language should be broadly construed to apply to *all stages of the electoral process*, from voter registration through activities related to conducted elections, including, for example the issuance, at any time during the year, of notifications, announcements, or other informational materials concerning the opportunity to register, the deadline for voter registration, the time, places and subject matters of elections, and the absentee voting process.

29 C.F.R. § 55.15 (emphasis added).

## IV.   THE COUNTY DEFENDANTS HAVE NO OBJECTION TO THE RELIEF REQUESTED BY THE *RANGEL* PLAINTIFFS

As is apparent, the County Defendants have concluded that the *Rangel* plaintiffs have the better argument. Therefore they have no objection in general to summary judgment being granted on their motion. Further, they have no objection to this being referred to a three judge court.

However, it is not necessary to grant the *Rangel* plaintiffs an injunction against the County. An injunction should be granted only if the harm which the plaintiffs' fear is being threatened. The harm would be the County placing the referendum election on the ballot. The County has not threatened to do that and in fact has agreed with the *Rangel* plaintiffs in this litigation.

## V.   CONCLUSION

The *Melendez* case is moot and accordingly should be dismissed.

Unlike the recall petition in *Padilla,* the referendum petition at issue is almost completely provided by the government, and there is a virtual absence of any drafting by the proponents. Under the state law, the resulting change in the local law can be accomplished by as few as 10% of the registered voters within the jurisdiction, without ever holding an election, a process that effectively excludes those to be assisted by the FVRA. The motion of RSJOC should be denied;

1   that of the County defendants and the Rangel Plaintiff should be granted.

2

3   Dated: February 13, 2007                NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP

4

5                                           BY: _____/ S / _____

6                                                STEPHEN N. ROBERTS
                                                 ATTORNEYS FOR DEFENDANTS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28