FREDRIC D. WOOCHER (SBN 96689)
MICHAEL J. STRUMWASSER (SBN 58413)
BRYCE A. GEE (SBN 222700)
STRUMWASSER & WOOCHER LLP
100 Wilshire Boulevard, Suite 1900
Santa Monica, California 90401
Telephone:    (310) 576-1233
Facsimile:    (310) 319-0156
E-mail:  fwoocher@strumwooch.com

J. WILLIAM YEATES (SBN 84343)
KEITH G.WAGNER (SBN 210042)
JASON R. FLANDERS (SBN 238007)
LAW OFFICE OF J. WILLIAM YEATES
3400 Cottage Way, Suite K
Sacramento, CA 95825
Telephone:    (916) 609-5000
Facsimile:    (916) 609-5001
E-mail:  byeates@enviroqualitylaw.com

*Attorneys for Plaintiffs Melendez et al., and
Plainitiffs Rancho San Juan Opposition
Coalition, et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE COUNTY OF MONTEREY INITIATIVE MATTER, and

IN RE MONTEREY REFERENDUM.

CASE NO.  C 06-01407 JW
CASE NO.  C 06-01730 JW
CASE NO.  C 06-02202 JW
CASE NO.  C 06-02369 JW

*MELENDEZ* PLAINTIFFS' AND
*RANCHO SAN JUAN OPPOSITION
COALITION* PLAINTIFFS'
CONSOLIDATED OPPOSITION TO
COUNTY DEFENDANTS' AND
*RANGEL* PLAINTIFFS' MOTIONS
FOR SUMMARY JUDGMENT

Judge: Hon. James Ware
Ctrm: 8
Date:   February 27, 2007
Time: 9:00 a.m.

Printed on Recycled Paper

*MELENDEZ*'S AND *RSJOC*'S CONSOLIDATED OPPOSITION TO COUNTY DEFENDANTS'
AND *RANGEL* PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

1

**CONTENTS**

2   TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

3   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4   I.   THE *MELENDEZ* ACTION SHOULD BE REMANDED TO STATE COURT FOR RESOLUTION

5        OF PLAINTIFFS' STATE-LAW CAUSES OF ACTION AND FOR FINAL DISPOSITION OF

     THAT CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6
        A.   THE COURT DOES NOT HAVE JURISDICTION OVER THE *MELENDEZ* ACTION
7            PURSUANT TO THE 28 U.S.C. § 1443(2) BECAUSE THE COUNTY IS NOT
             REFUSING TO PLACE THE INITIATIVE ON THE BALLOT . . . . . . . . . . . . . . 3
8
        B.   THE COUNTY'S VOLUNTARY AND NON-BINDING DECISION TO PLACE THE
9            INITIATIVE ON THE BALLOT DOES NOT MOOT *MELENDEZ* PLAINTIFFS'
             REQUEST FOR INJUNCTIVE RELIEF . . . . . . . . . . . . . . . . . . . . . . . 4
10
        C.   *MELENDEZ* PLAINTIFFS' ADDITIONAL REQUEST FOR DECLARATORY RELIEF IS
11           NOT MOOT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
12
     II.  THE COURT SHOULD ORDER THAT THE REFERENDUM MEASURE BE PLACED ON THE
13        JUNE 2007 BALLOT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

14      A.   THE *PADILLA* EN BANC DECISION FULLY APPLIES TO THE REFERENDUM
15           PETITIONS AT ISSUE HERE BECAUSE THEY WERE NOT "PROVIDED" BY THE
             COUNTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
16
        B.   REFERENDUM PETITIONS DO NOT CONSTITUTE "MATERIALS OR OTHER
17           INFORMATION RELATING TO THE ELECTORAL PROCESS" . . . . . . . . . . . . . . 14

18      C.   THE LEGISLATIVE HISTORY OF SECTION 203 OF THE VOTING RIGHTS ACT
19           EXPRESSES CONGRESS' CLEAR INTENT THAT "PETITIONS THAT ARE
             INITIATED AND DISTRIBUTED BY PRIVATE CITIZENS" ARE "EXCLU[DED]"
20           FROM SECTION 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

21      D.   THERE IS NO MERIT TO *RANGEL* PLAINTIFFS' REQUEST TO CONVENE A THREE-
             JUDGE COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
22
     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

## Federal Cases

*Adarand Constructors, Inc. v. Slater*, 528 U.S. 216 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Allen v. State Board of Elections*, 393 U.S. 544 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re County of Monterey Initiative Matter*, 427 F. Supp. 2d 958 (N.D. Cal. 2006) . . . . . . . . . 4

*Delgado v. Smith*, 861 F.2d 1489 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20, 21

*Dougherty County Board of Education v. White*, 439 U.S. 32 (1978) . . . . . . . . . . . . . . . . . . . . 20

*FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 1, 5

*Gerena-Valentin v. Koch*, 523 F. Supp. 176 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . 15, 17, 18

*Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 20

*Hoyle v. Priest*, 59 F. Supp. 2d 827 (W.D. Ark. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Kelly III*, 841 F.2d 908 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) . . . . . . . . . . . . . . . . . 8

*Montero v. Meyer*, 861 F.2d 603 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20, 21

*National Advertising Co. v. City of Fort Lauderdale*, 934 F.2d 283 (9th Cir. 1991) . . . . . . . 5, 6

*Northwest Environmental Def. Center v. Gordon*, 849 F.2d 1241 (9th Cir. 1988) . . . . . . . . . . 4

*Olgaues v. Russoniello*, 770 F.2d 791 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Padilla v. Lever*, 446 F.3d 963 (9th Cir. April 28, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Padilla v. Lever*, 463 F.3d 1046 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Rains v. Criterion Systems, Inc.*, 80 F.3d 339 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Societe de Conditionnement v. Hunter Engineering, Co.*, 655 F.2d 938 (9th Cir. 1981) . . . . . . 8

*Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . 14

## State Cases

*Parsons v. Tickner*, 31 Cal. App. 4th 1513 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Save Stanislaus Area Farm Economy v. Board of Supervisors*,
   13 Cal. App. 4th 141 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Docketed Cases**

*Chinchay v. Verjil*, No. 06-1637 (C.D. Cal. Apr. 11, 2006) . . . . . . . . . . . . . . . . . . . . . . 13

*City and County of San Francisco v. Civil Service Commission of the City and*
   *County of San Francisco*, No. 02-03462, 2002 WL 1677711
   (N.D. Cal. July 24, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lockyer v. U.S. Forest Service*, No. 04-02588, 2006 WL 2038491
   (N.D. Cal. July 20, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Morcote v. Oracle Corp.*, No. 05-0386, 2005 WL 3157512 (N.D. Cal. Nov. 23, 2005) . . . . . . . 5

**Federal Statutes**

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

28 U.S.C. § 1343(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

28 U.S.C. § 1343(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

28 U.S.C. § 1443(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 22

28 U.S.C. § 1973aa-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 22

28 U.S.C. § 2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

42 U.S.C. § 1973i(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

H.R. Rep. No. 109-478, 2006 WL 1403199 (May 22, 2006) . . . . . . . . . . . . . . . . . . . . 19, 20

S. Rep. No. 94-295, *as reprinted in* 1975 U.S.C.C.A.N. 774 . . . . . . . . . . . . . . . . . . . . . 19

**State Statutes**

Cal. Code of Civ. Proc., § 1060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Elec. Code,

   § 9146 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   § 9147 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   §§ 11020(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

§ 11041(a) ..................................................... 12

§ 11041(b) ..................................................... 13

**INTRODUCTION**

Plaintiffs William Melendez et al. and Plaintiffs Rancho San Juan Opposition Coalition et al. ("*Melendez* and *RSJOC* plaintiffs") submit this consolidated opposition to the motions for summary judgment filed by Defendants County of Monterey et al. ("County Defendants" or the "County") and Plaintiffs Sabas Rangel et al. ("*Rangel* plaintiffs").

In the Initiative cases (*In re County of Monterey Initiative Matter*, a consolidation of *Melendez v. Board of Supervisors* and the now-dismissed *Madrigal v. County of Monterey*), there is no longer any dispute over the validity of the Initiative: County Defendants have given up on their year-old argument that the Initiative petitions violated Section 203 of the Voting Rights Act ("VRA") because they were not translated into Spanish — as have the plaintiffs in the *Madrigal* action, who have voluntarily dismissed their action seeking to prohibit the County from holding an election on the Initiative — and the County has called for an election to be held on June 5, 2007, to submit the Initiative to a vote.  In light of these recent events, however, the County incorrectly argues that this action is now moot and should be dismissed, ignoring that the Ninth Circuit has ***uniformly rejected*** the argument that a defendant can, by itself, moot a lawsuit by voluntarily ceasing its allegedly illegal activity.  If that were the case, the Ninth Circuit has recognized, "the courts would be compelled to leave the defendant free to return to his old ways." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1238 (9th Cir. 1999) (internal quotations and citation omitted).[1]  That, of course, is one of the things that *Melendez* plaintiffs fear might occur here.

More fundamentally, however, *as a threshold matter*, this Court now lacks jurisdiction to consider whether *Melendez* plaintiffs' request for injunctive relief is moot.  *Melendez v. Board of Supervisors* — which, with the dismissal of the *Madrigal* action, is now all that remains of the Initiative cases — is a state court action involving only state law claims that was ***removed*** to this Court pursuant to 28 U.S.C. § 1443(2), a rarely-used removal statute that applies only in the very limited circumstance in which a state official is "refusing to do any act on the ground that it would

---

[1] Notably, the County only seeks dismissal of *Melendez* plaintiffs' request for injunctive relief, and does not address the fact that *Melendez* plaintiffs are entitled to a judgment on their request for declaratory relief.

1  be inconsistent with" a federal law providing for equal rights.  With the County's acquiescence in

2  placing the Initiative on the ballot, the County is no longer "refusing" to do that act, and accordingly,

3  this Court *no longer has jurisdiction* under § 1443(2).  The appropriate disposition, then, is to

4  remand the *Melendez* action to state court for resolution of plaintiffs' state law claims, whether by

5  judgment or dismissal.

6      Although County Defendants have now agreed that recall and initiative petitions are ***not

7  provided by the State*** and not subject to Section 203 of the VRA, they nonetheless continue to

8  maintain that *referendum* petitions — which one federal court has determined "include[] the ***least

9  amount of state involvement***" — are State-provided electoral materials that must be translated into

10 minority languages.  County Defendants even assert that the Ninth Circuit's en banc decision in

11 *Padilla v. Lever*, 463 F.3d 1046 (9th Cir. 2006) (en banc), holding that Section 203 ***does not apply***

12 to recall petitions, somehow affirmatively supports their position that Section 203 nevertheless ***does

13 apply*** to privately initiated, drafted, and circulated *referendum* petitions.  But there is no possible

14 way to read the *Padilla* en banc decision as anything but a firm and unambiguous rejection of the

15 argument the County proffers here.  Even Judge Reinhardt, who concurred separately in the decision,

16 reluctantly acknowledged that "the plain and inescapable meaning of the statutory language" (*id.* at

17 1056 (Reinhardt, J., concurring)) ***compelled*** the result reached by the en banc court, because "the

18 petition was funded, drafted, printed, and circulated — i.e., provided — by the private proponents

19 of the recall, although in conformance with the relevant provisions of the California Elections Code."

20 *Id.* at 1053.

21     County Defendants' position is not just unsupportable, it is completely unprecedented.  In

22 the more than 30 years that have passed since Section 203 was first added to the Voting Rights Act

23 in 1975, ***no city, county, or state anywhere in the country*** (other than Monterey County here) has

24 ever taken the position that a referendum petition must be translated into and printed in foreign

25 languages pursuant to the VRA.  Indeed, prior to the Board of Supervisors' action in this case,

26 ***Defendant Monterey County itself*** certified and held elections on dozens of referendum petitions

27 that were printed only in English, ***without once*** raising any objection to the validity of those petitions

28 under the VRA.

2

1    This Court should not allow County Defendants to continue to deprive *RSJOC* plaintiffs and

2    the thousands of Monterey County residents who signed the Referendum petitions their right to

3    challenge legislation through the referendum process, an important constitutional check on

4    governmental power. *RSJOC* plaintiffs therefore respectfully request that this Court deny County

5    Defendants' and *Rangel* plaintiffs' Cross-Motions for Summary Judgment, and instead grant *RSJOC*

6    plaintiffs' Motion for Summary Judgment so that the Referendum measure can finally be submitted

7    to a vote of the electorate at the June 5, 2007, election.

8    **I.    THE *MELENDEZ* ACTION SHOULD BE REMANDED TO STATE COURT FOR RESOLUTION OF PLAINTIFFS' STATE-LAW CAUSES OF ACTION AND FOR FINAL DISPOSITION OF THAT CASE**

9    

10   County Defendants quite inappropriately ask this Court to rule that *Melendez* plaintiffs'

11   request for injunctive relief is moot when, as a threshold matter, it is clear that the federal courts no

12   longer have subject matter jurisdiction over this suit.  This action must therefore be remanded

13   forthwith to state court where County Defendants may, if they still desire, raise their mootness

14   argument.  In any event, even were this Court to have jurisdiction to consider it, the County's

15   argument has no merit, as discussed below.

16   **A.    THE COURT DOES NOT HAVE JURISDICTION OVER THE *MELENDEZ* ACTION PURSUANT 28 U.S.C. § 1443(2) BECAUSE THE COUNTY IS NOT REFUSING TO PLACE THE INITIATIVE ON THE BALLOT**

17   

18   As is evident from their Opening Memorandum, County Defendants are no longer taking the

19   position that the Initiative petitions at issue here are invalid under the VRA, and they have therefore

20   "agreed to permit the Initiative to be placed on the ballot in the next election." County Defendants'

21   Memorandum, at 19; *see also* Resolution 07-021, Declaration of Fredric D. Woocher in Support of

22   *Melendez* and *RSJOC* Plaintiffs' Motion for Summary Judgment ("Woocher Decl."), Exh. A.  The

23   legal effect of the County's action, however, is not to moot *Melendez* plaintiffs' request for

24   injunctive relief, as County Defendants mistakenly assert, but rather to divest the federal courts of

25   jurisdiction over the *Melendez* action.

26   As more fully discussed in *Melendez*'s and *RSJOC*'s Opening Memorandum, this Court

27   originally had removal jurisdiction over the *Melendez* action under 28 U.S.C. § 1443(2) — providing

28   jurisdiction when a state official is sued for "refusing to do any act on the ground that it would be

3

inconsistent with" a federal law providing for equal rights — because the County was, at the time, refusing to place the Initiative on the ballot on the ground that the petitions allegedly violated the VRA. *See In re County of Monterey Initiative Matter*, 427 F. Supp. 2d 958, 959-60 (N.D. Cal. 2006); *see also Melendez* and *RSJOC* Opening Memorandum, at 12. But the statute is clear, as is the case law, that if the state official is not "refusing to act" based upon a federal equal rights law, there is no basis for jurisdiction and the action must be immediately remanded. *See, e.g., City and County of San Francisco v. Civil Service Commission of the City and County of San Francisco*, No. 02-03462, 2002 WL 1677711 (N.D. Cal. July 24, 2002); *see also Melendez* and *RSJOC* Memorandum, at 12-13.

Simply put, therefore, since County Defendants are no longer refusing to place the Initiative on the ballot, this Court lacks jurisdiction under § 1443(2) and must remand the action to state court. County Defendants misconstrue the law in arguing against remand because "removal **was** perfectly proper" (County Defendants' Memorandum, at 17 (emphasis added)), as it is well-established that jurisdiction must exist throughout all stages of litigation, requiring courts to consider challenges to subject matter jurisdiction *at any time. See, e.g., Rains v. Criterion Systems, Inc.*, 80 F.3d 339, 342-43 (9th Cir. 1996) (examining whether the district court had jurisdiction "both at the time the case was removed and at the time the district court entered its judgment").

### B. THE COUNTY'S VOLUNTARY AND NON-BINDING DECISION TO PLACE THE INITIATIVE ON THE BALLOT DOES NOT MOOT *MELENDEZ* PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF

Even were this Court to have jurisdiction, *Melendez* plaintiffs' request for injunctive relief would not be moot merely because the County has, at present, decided to permit the Initiative to be placed on the ballot. There is no question that the Court may still issue effective relief in this action, as the election on the Initiative is not scheduled to be held for another three months, during which time period the County may, at any time, withdraw the measure from the ballot. *See Northwest Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988) (basic question of mootness is whether there is a present controversy to which "*any* effective relief" can be granted) (emphasis in

4

1   original).[2] This Court — or, more properly, the state court — may (and should) therefore order that

2   the election on the Initiative be held in order to ensure that the County indeed makes good on its

3   currently non-binding commitment.

4          California courts routinely issue injunctions in nearly identical situations as here, uniformly

5   rejecting County Defendants' argument that their voluntary agreement to finally submit the Initiative

6   to a vote has mooted any injunctive relief.  As the Ninth Circuit has held, such an argument

7   "mischaracterizes the law to such a degree that [defendants] are advocating a legal proposition that

8   is precisely opposite the rule established by our precedents." *FTC v. Affordable Media, LLC, supra*,

9   179 F.3d at 1237.  Rather, voluntary cessation of the challenged conduct moots a case only if it is

10  "*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur."

11  *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221 (2000) (emphasis in original).  The test for

12  mootness under such circumstances is necessarily a "stringent one," for if mere voluntary cessation

13  could moot a case, "the courts would be compelled to leave the defendant free to return to his old

14  ways." *FTC v. Affordable Media*, 179 F.3d at 1238 (internal quotations and citation omitted).  Thus,

15  the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected

16  to start up again *lies with the party asserting mootness*." *Adarand Constructors*, 528 U.S. at 221

17  (emphasis in original).

18         In *National Advertising Co. v. City of Fort Lauderdale*, 934 F.2d 283 (9th Cir. 1991), for

19

20  _____

21   [2]The two, non-precedential cases cited by County Defendants fail to lend support to their
    mootness argument. In *Morcote v. Oracle Corp.*, No. 05-0386, 2005 WL 3157512 (N.D. Cal. Nov.
22   23, 2005), the plaintiff sought a declaration that he was not violating a six-month non-compete
    provision, but the court found this request for declaratory relief was moot because that provision had
    already expired and there was "no possibility that any further damages can accrue." *Id.* at *5.  In
23   stark contrast, here, the election on the Initiative has not yet been held.

24         Likewise, the court in *Lockyer v. U.S. Forest Service*, No. 04-02588, 2006 WL 2038491
    (N.D. Cal. July 20, 2006), found the action to be moot because the court had already granted all the
25   relief that was possible at the time.  After the court had found that defendants' fire management plan
    violated the National Environmental Policy Act, defendants withdrew the plan and sought and
26   received a waiver of the requirement to issue that plan.  The court accordingly found that plaintiffs'
    request for injunctive relief was moot because any order the court might render "would be based
27   entirely on a hypothetical set of facts." *Id.* at *1-2.  Again, the *Lockyer* case has no applicability to
    the instant action in which this Court clearly can grant effective relief ordering the County to hold
28   an election on the very real, not hypothetical, Initiative measure that has not yet been submitted to
    the voters.

5

1   instance, the Ninth Circuit found that a city's amendments to the challenged provisions of its sign

2   code did **not** moot the case, even though the changes granted plaintiff the relief it had requested. *Id.*

3   at 286.  Citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1981) — in which the

4   Supreme Court found that a city's repeal of an allegedly unconstitutional section of an ordinance did

5   not moot the action because nothing would prevent the city from re-enacting those provisions — the

6   Ninth Circuit in *National Advertising Co.* similarly concluded that the city there "presently possesses

7   the power and authority to amend the sign code," and that it "remains uncertain whether the City

8   would return the sign code to its original form if it managed to defeat jurisdiction in this case." 934

9   F.3d at 286.

10       Like the defendants in *City of Mesquite* and *National Advertising*, County Defendants here

11   have failed to satisfy their heavy burden of establishing that it is "absolutely clear" that they will not

12   return to their old ways, offering no real assurances that they will not later decide to remove the

13   Initiative from the ballot.  To the contrary, they actually assert that their decision to place the

14   Initiative on the June ballot "is a very close call." (County Defendants' Memorandum, at 22.) Given

15   the vigor with which County Defendants previously argued that the Initiative petitions were invalid

16   under the VRA, and further given that County Defendants have changed their position on this issue

17   several times — first certifying the Initiative petition as sufficient, then declaring it invalid and

18   refusing to submit it to a vote, and now again agreeing to place it on the ballot , while still refusing

19   to submit the Referendum to a vote — is it really so unreasonable for *Melendez* plaintiffs to be

20   cautious about County's latest promise to place the Initiative on the ballot?  Moreover, there is some

21   reason to doubt the County's explanation for its sudden reversal of its position on the Initiative —

22   that it was "merely following the dictates of the Ninth Circuit's decisions in the *Padilla* matter"

23   (County Defendants' Memorandum, at 22) — given that **months after** the *Padilla* en banc decision

24   was issued, the County still continued to maintain that the Initiative petitions were invalid under the

25   VRA.[3]

26   ────────────────────

27       [3]As recently as November 2006, for example, the County strenuously opposed *Melendez*
     plaintiffs' motion to the Ninth Circuit for remand, arguing that "there is such a substantial state role
28   [in the initiative process] that FVRA applies, even under the reasoning of the *en banc* panel's
     decision," and that the "underlying principles" of the *Padilla* en banc ruling actually "provide a basis

6

1   Regardless of the reasons for the County's recent action, County Defendants cannot dispute

2   that there is absolutely nothing preventing the Board of Supervisors from once again changing its

3   collective mind about the validity of the Initiative petitions and canceling the election on the

4   measure, as they previously did with the Referendum prior to last June's election.[4]  On this basis

5   alone, *Melendez* plaintiffs' request for injunctive relief is without question ***not*** moot under Ninth

6   Circuit law.[5]

7   **C.    *MELENDEZ* PLAINTIFFS' ADDITIONAL REQUEST FOR DECLARATORY
        RELIEF IS ALSO NOT MOOT**
8
9        In any event, *Melendez* plaintiffs' third cause of action for declaratory relief is not moot. In

10   that cause of action, *Melendez* plaintiffs request a judicial declaration that the Monterey County

11   Board of Supervisors "has violated its duties under the California Constitution and the California

12   Elections Code by refusing to either adopt [the Initiative] without alteration, or to submit the

13   Initiative, without alteration, to the voters of Monterey County." *Melendez* Complaint, ¶ 3 (Prayer

14   for Relief). County Defendants completely ignore this request for declaratory relief, perhaps because

15   they cannot contest that it presents a live controversy over which *Melendez* plaintiffs are entitled to

16   a judgment.

17        Under the Declaratory Judgment Act, federal courts may issue judicial declarations to a case

18   of "actual controversy" (28 U.S.C. § 2201), which exists when there is a "substantial controversy,

19   _____

20   for upholding Judge Ware's judgment in this case." *See* Appellees/Defendants' Opposition to
     Motion to Remand Following *En Banc* Ruling in *Padilla v. Lever*, Supplemental Declaration of
21   Fredric D. Woocher in Support of *Melendez* and *RSJOC* Plaintiffs' Motion for Summary Judgment,
     Exh. A at 3, 4.  Likewise, as recently as December 13, 2006, in the case management conference
22   conducted to address the County's Motion to Consolidate, County Defendants' took the position that
     the Initiative and Referendum cases involved "nearly identical questions of law" involving the
23   application of the en banc decision in *Padilla*, and they gave no hint that the County was considering
     placing the Initiative on the ballot.
24
         [4]Similarly, because *Madrigal* plaintiffs' dismissal of their lawsuit challenging the validity
25   of the Initiative petitions was "without prejudice," there is nothing preventing them from refiling that
     action at any time, since there is apparently no statute of limitations under the VRA. *See* Stipulation
26   for Voluntary Dismissal (granted Feb. 6, 2007).

27       [5]Notably, if County Defendants' mootness argument were correct, this Court would not have
     had the authority to issue its March 23, 2006, injunction enjoining the County from placing the
28   Initiative on the ballot, because the County was already refusing to do so.

7

1    between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

2    issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273

3    (1941); *Societe de Conditionnement v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981). In this

4    action, there is a substantial controversy over whether the Board violated the law by refusing to

5    submit the Initiative to a vote in the first instance.  Previously, County Defendants affirmatively

6    disputed the notion that the Board of Supervisors had a mandatory and ministerial duty to place the

7    Initiative on the ballot under California law, arguing instead that the Board has the authority to

8    withhold measures from the ballot that it believes are "clearly invalid." *See* Defendants' Opposition

9    to Application for Issuance of TRO and Preliminary Injunction, at 5-6.  County Defendants appear

10   to continue to take that position, asserting that they did nothing wrong and that they have "acted in

11   good faith and indeed correctly under the law." County Defendants' Memorandum, at 22. *Melendez*

12   plaintiffs disagree and have argued that the Board, upon receiving a duly certified initiative, is

13   required under the law to adopt that measure without alteration or to submit it to a vote of the

14   electorate; should the Board believe that an initiative is invalid, the proper procedure would be for

15   it to place the measure on the ballot and then file a petition for writ of mandate seeking a court order

16   *removing* the measure from the ballot. *See Melendez* Complaint, ¶¶ 18-19; *see also Save Stanislaus*

17   *Area Farm Economy v. Board of Supervisors*, 13 Cal. App. 4th 141, 148 (1993); *Padilla*, 463 F.3d

18   at 1052 n.5 ("the California Court of Appeal has characterized local election officials' duties as

19   'purely ministerial'").

20           Moreover, because of the importance of this legal issue and the likelihood that the Board will

21   be faced with this situation again in the future — indeed, this very week, the Monterey County Board

22   of Supervisors is determining whether to place a referendum measure sponsored by some of the

23   *Melendez* plaintiffs on the June 2007 ballot — there is a significant public interest in having the

24   legality of the Board's actions in this regard resolved by the courts, a factor that courts recognize

25   "militates *against* a mootness conclusion." *Olgaues v. Russoniello*, 770 F.2d 791, 795 (9th Cir.

26   1985) (emphasis in original).  Indeed, as County Defendants argued only two months ago, their

27   "goal" in this litigation is to "arriv[e] at a uniform set of rules, ***adjudicated in the courts***, that the

28   County could follow."   County Defendants' Motion for Consolidation, at 4 (emphasis added).

1    Although *Melendez* plaintiffs disagree with the County over what those rules should be, they agree

2    that this determination should be adjudicated in the courts.

3           In short, neither the request for injunctive relief nor the cause of action for declaratory relief

4    is moot, and *Melendez* plaintiffs deserve a judgment on each.[6]  As the United States Supreme Court

5    admonished, "[i]t is no small matter to deprive a litigant of the rewards of its efforts," and doing so

6    "on the grounds of mootness would be justified only if it were absolutely clear that the litigant no

7    longer had any need of judicial protection that it sought." *Adarand Constructors*, 528 U.S. at 224.[7]

8    Of course, the question of mootness here is beside the point as this Court is without jurisdiction to

9    consider it in the first place; rather, as discussed above, this action should be remanded to state court

10   for that court's determination of *Melendez* plaintiffs' claims under state law.[8]

11   **II.     THE COURT SHOULD ORDER THAT THE REFERENDUM MEASURE BE PLACED ON**
         **THE JUNE 2007 BALLOT**

12

13          **A.     THE *PADILLA* EN BANC DECISION FULLY APPLIES TO THE REFERENDUM**
                **PETITIONS AT ISSUE HERE BECAUSE THEY WERE NOT "PROVIDED" BY**
                **THE COUNTY**

14

15          After having taken the position until now that the referendum process in California is so

16   ***similar*** to the recall process that the *panel's* opinion in *Padilla v. Lever* required the Board of

17

18          [6]Ironically, the *Padilla* en banc decision itself was issued ***years after*** the recall election at
     issue in that case had been held — whereas the election on the Initiative here will not occur for
19   another three months — yet the en banc court nevertheless found that the request for declaratory
     relief was not moot because it "falls classically into that category of cases that survive mootness
20   challenges because they are 'capable of repetition, yet evading review.'" *Padilla*, 463 F.3d at 1049.
     That is yet another reason why the instant case is not moot.

21
          [7]County Defendants themselves recognize *Melendez* plaintiffs' possible need for further
22   judicial protection, proposing that the Court retain jurisdiction over this matter until the June election
     so that "Plaintiffs would be able to seek appropriate relief from the Court" should the County decide
23   again to remove the Initiative from the ballot. *See* County Defendants' Memorandum, at 18. This
     proposal, however, would not protect *Melendez* plaintiffs' interests, for the County could cancel the
24   election on the Initiative at the very last minute, leaving plaintiffs' inadequate time to obtain
     effective judicial relief, just as the County did with respect to the Referendum measure shortly before
25   the June 2006 election.

26          [8]Contrary to County Defendants' assertion, the applicable standards for injunctive and
     declaratory relief are quite different under federal and state law.  State courts, which are not subject
27   to article III restrictions, have far more discretion in issuing such relief; for instance, California state
     courts may issue declaratory relief to determine future rights of the parties even if those parties have
28   no present rights in dispute. *See, e.g., Parsons v. Tickner*, 31 Cal. App. 4th 1513, 1533 (1995); *see
     also* Cal. Code of Civ. Proc., § 1060.

1    Supervisors to invalidate the Referendum petition and to withdraw the measure from the ballot,

2    County Defendants now seek to argue that the processes are so ***different*** that the *en banc court's*

3    opinion in *Padilla* should have no bearing on this case.   Remarkably, County Defendants even go

4    so far as to assert that the en banc opinion in *Padilla* actually ***supports*** their contention that

5    referendum petitions are covered by Section 203 of the VRA, even though recall petitions (and

6    initiative petitions) are not.

7            County Defendants' argument is illogical on its face.   As the Ninth Circuit itself framed its

8    ruling, "the question presented by this appeal is whether [Section 203's] requirement attaches to

9    recall petitions *initiated, circulated and paid for by private proponents* . . . , when the proponents

10   are required to draft the petitions in a form specified by the State and county."   *Padilla v. Lever*, 463

11   F.3d 1046, 1048  (9th Cir. 2006) (en banc) (emphasis added).   The en banc court answered that

12   question in the negative: "We conclude, as did the district court, that the recall petitions circulated

13   by the proponents of the recall were not subject to this provision because they were not 'provided'

14   by Orange County or the State. . . .   The fact that, under Cal. Elec. Code § 11041(a), the Secretary

15   of State 'provides' the format does not mean that the State 'provides' the petitions themselves within

16   the meaning of the Voting Rights Act."   *Id.* at 1050-51; *see also id.* at 1051 ("It is not reasonable to

17   hold that this regulatory process transforms *petitions privately initiated, drafted, and circulated by*

18   *the proponents* into petitions 'provided' by the County for purposes of the Voting Rights Act.")

19   (emphasis added); *id.* at 1052 ("[T]he ultimate determination is what Congress meant by imposing

20   requirements on materials 'provided' by the State or its subdivision.   That term cannot reasonably

21   be construed to apply to recall petitions *initiated, drafted, and circulated by private citizens*.").

22           The clear and unequivocal basis of the Ninth Circuit's ruling in *Padilla* was thus its

23   conclusion that recall petitions could not be considered to be "provided" by the State or County

24   because the *petitions themselves* were "*initiated, circulated, and paid for by private proponents*."

25   *Id.* at 1048 (emphasis added).   This was certainly Judge Reinhardt's understanding of the court's

26   ruling: "[A]s the majority holds, the petition was *funded, drafted, printed, and circulated* — i.e.,

27   ***provided*** *— by the private proponents* of the recall, although in conformance with the relevant

28   provisions of the California Elections Code."   *Id.* at 1053 (Reinhardt, J., concurring) (emphasis

10

---

1  added). It should be equally clear and unequivocal, then, that the court's holding in *Padilla* therefore

2  applies *fully* to referendum petitions:  Like recall petitions, referendum petitions are also "initiated,

3  circulated, and paid for by private proponents," even though "the proponents are required to draft

4  the petitions in a form specified by the State and county." *Id.* at 1048.

5           In an attempt to avoid this clear holding, County Defendants argue instead that the en banc

6  court's ruling was actually based on the court's findings that "there is nothing in the chapter

7  governing elections that specifies the actual wording that proponents must use," and that "elections

8  officials [do not] determine the contents of the petition" — a complete misrepresentation of the en

9  banc decision. *Padilla*, 463 F.3d at 1051; County Defendants' Memorandum, at 12; *see also Rangel*

10  Memorandum, at 10-11. County Defendants then assert that because county officials *do* supposedly

11  supply "the actual wording" of the ordinance or resolution contained in a referendum petition, the

12  referendum petition *is* "provided" by the government and therefore *is* subject to Section 203 of the

13  VRA. County Defendants are wrong on both counts.

14           First, this argument is based upon the false logical deduction that the proposition "if A, then

15  B" necessarily means that the *converse* is also true, "if *not* A, then *not* B."[9]  That clearly does not

16  follow. But more fundamentally, the en banc court's recognition that the Elections Code does not

17  specify the "actual wording" of the recall petition was certainly *not* the sole or even primary rationale

18  for the court's holding that the VRA did not apply; rather, this observation was made only in the

19  context of *rejecting* the plaintiffs' specific argument that the County should be deemed to "provide"

20  a recall petition because it specifies and approves "the form and wording of the petition." *See*

21  *Padilla*, 463 F.3d at 1051; *Melendez* and *RSJOC* Memorandum, at 21.

22           The County's argument also fails as a factual matter, for the en banc court's conclusion that

23  as to recall petitions "there is nothing in the chapter governing elections that specifies the actual

24  wording that proponents must use" is equally, if not even more, true of *referendum* petitions.  *See*

25

26  ─────────────────

27           [9]In the specific context of this case, County Defendants are actually positing that because the
    court in *Padilla* held that "if *not* A [Elections Code does not specify the actual language of the recall
    petition], then *not* B [recall petitions are not covered by Section 203]," this necessarily means that

28  "if A [Elections Code specifies the actual language of the referendum petition], then B [referendum
    petitions are covered by Section 203]."

1   *Padilla*, 463 F.3d at 1051. The California Elections Code does not specify *any* of the actual wording

2   of a referendum petition; there is but a single provision in the Code — section 9147 — indicating

3   the form for the "heading" of a proposed referendum measure (which must only be in "substantially"

4   that form) and requiring that each section of the referendum petition "contain" the title and text of

5   the challenged ordinance. *See* Cal. Elec. Code, § 9147. Neither of these requirements could

6   reasonably be interpreted as "specif[ying] the actual wording that proponents must use" for a

7   referendum petition. Moreover, everything else that might be included in a referendum petition, such

8   as a statement of the reasons why the proponents believe voters should sign the petitions and should

9   support the measure, is left to the discretion of the private citizens who initiate, draft, fund, and

10  circulate the petitions.[10]

11         Indeed, a side-by-side review of the Elections Code provisions governing referendum

12  petitions in comparison with those governing recall petitions shows just how minimal the level of

13  regulation of the former is in comparison to the much stricter and more detailed requirements set

14  forth in the Code for the latter, which the *Padilla* en banc court nevertheless found insufficient to

15  subject recall petitions to the VRA. For instance, the Elections Code mandates that recall proponents

16  must use "the recall petition format provided by the Secretary of State and available from the county

17  elections official or the Secretary of State," which contains nearly all the language of the petition.

18  (*Id.* § 11041(a).); there is no comparable form available from the Secretary of State or the County

19  Registrar for a referendum petition. Further, the Elections Code imposes other, detailed restrictions

20  on the content of recall petitions, such as limiting the number of words that may be included in the

21  petitions and dictating the size and spacing of petition sections. *Id.* §§ 11020(b); 11023(a);

22  11041(b); the Code imposes no word, size, spacing, or other comparable limitations on referendum

23  petitions.

24         Perhaps most importantly, as Judge Collins stressed in *Chinchay v. Verjil*, No. 06-1637 (C.D.

25

26         [10]As County Defendants note, Elections Code section 9146 explicitly provides that the
   provisions of the Code relating to the form of petitions and the duties of the county elections official
27  are the *same* for both initiative and referendum petitions. *See* County Defendants' Memorandum,
   at 11. Yet despite the "form" of the two petitions being the same, County Defendants argue that the
28  Elections Code somehow specifies the "actual wording" of referendum petitions but does not do so
   for initiative petitions.

                                                    12

1    Cal. Apr. 11, 2006), whereas the Elections Code requires recall proponents to submit their petition

2    to the elections officials for review ***prior to its circulation*** — prohibiting the proponents from

3    beginning the circulation process until the elections official had affirmatively ***approved*** the "form

4    and wording" of the petition and had determined that all the ***alterations*** demanded by the elections

5    official had been made (*id.* § 11042) — "a given referendum petition is neither submitted to,

6    reviewed by nor supplemented in any way by the state until ***after*** it has been circulated and all

7    signatures have been collected." Order Regarding Plaintiffs' Motion for Preliminary Injunction in

8    *Chinchay v. Vergil*, Woocher Decl., Exh. B, at 19 (emphasis in original). It was primarily this

9    distinction that led Judge Collins to conclude — even while the original *panel* decision in *Padilla*

10   was still good law — that "of the three types of citizen-sponsored petitions reviewed here, the

11   referendum petition process includes the ***least amount of state involvement***," and that "[t]o expand

12   the application of state-'provided' electoral process to referendum would be to 'strain[] the meaning

13   of these statutory terms' beyond what this Court deems to be Congress's, or the Ninth Circuit's,

14   intent." *Id.*, Woocher Decl., Exh. B, at 18-19 (emphasis added).[11]

15           Judge Collins certainly would disagree, then, with County Defendants' assertion that "[i]t

16   is difficult to imagine ***greater state involvement***" simply because the County had drafted and adopted

17   the ordinance that becomes the subject of a referendum petition. *See* County Defendants'

18   Memorandum, at 12-13. County Defendants provide absolutely no authority for their novel theory

19   that the requirement that the challenged ordinance be attached to a referendum petition somehow

20   transforms privately initiated, drafted, and circulated referendum petitions into election materials that

21   are "provided by" the State and made subject to Section 203 of the VRA. Even if the County could

22   be said to "provide" the ordinance that is being challenged, there is no question that it does ***not***

23   "provide" the actual referendum ***petitions*** themselves, which is what would trigger coverage under

24   Section 203. *See Melendez* and *RSJOC* Memorandum, at 21-22. Indeed, as discussed above, the

25   Ninth Circuit in *Padilla* has already rejected such reasoning, finding that the "fact that, under [the

26

27           [11]At the time the panel opinion in *Padilla* was still in effect, Judge Collins found this
     distinction to be so critical because the prior review, alteration, and approval of recall petitions by
28   elections officials was the principal factor that had led Judge Pregerson to consider the petitions as
     effectively being "provided by" the county and thus within the coverage of Section 203 of the VRA.

                                                    13

California Elections Code], the Secretary of State 'provides' the format [of recall petitions] does not mean that the State 'provides' the petitions *themselves* within the meaning of the Voting Rights Act." *See Padilla*, 463 F.3d at 1051 (emphasis added).

**B.   REFERENDUM PETITIONS DO NOT CONSTITUTE "MATERIALS OR OTHER INFORMATION RELATING TO THE ELECTORAL PROCESS"**

Citing the Ninth Circuit's decision in *Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir. 1986), and the Attorney General's Guidelines pertaining to Section 203, County Defendants also argue that referendum petitions constitute "other materials relating to the electoral process," thereby satisfying the second criterion necessary for Section 203 to apply.   The en banc court in *Padilla*, however, expressly rejected each of these authorities as supporting that position.   The court explained that *Zaldivar* did not rule on whether Section 203 applied to a Notice of Intention to seek a recall election; instead, "we ruled only that an attorney who signed the complaint could not be sanctioned under Fed. R. Civ. P. 11 for filing a frivolous lawsuit.   That a claim is not frivolous does not establish that it is meritorious." *Padilla*, 463 F.3d at 1051 (citation omitted).   As more fully discussed in *Melendez*'s and *RSJOC*'s Opening Memorandum, the en banc court further "was not convinced that th[e Attorney General's] regulation encompasses recall petitions initiated, drafted and circulated by citizens." *Id.* at 1052; *Melendez* and *RSJOC* Memorandum, at 24-26.   That regulation, the court concluded, "simply cannot reasonably be construed to apply to recall petitions initiated, drafted and circulated by private citizens." 463 F.3d at 1052.

Likewise, the only two appellate decisions to squarely address this issue have both held that privately circulated initiative petitions do not constitute materials relating to the electoral process. They recognized that the "petition process [is] far too removed from the voting booth to fall under the [VRA]," *Delgado v. Smith*, 861 F.2d 1489, 1493 (11th Cir. 1989), and that the "electoral process" does not commence until a "measure is qualified for placement upon the ballot, and . . . signing of an initiated petition is not 'voting.'" *Montero v. Meyer*, 861 F.3d 603, 607 (10th Cir.

14

1  1988).[12]  Indeed, in California, the "electoral process" triggered by a referendum petition does not

2  begin until (a) the petition is certified to contain the requisite number of signatures; and (b) the Board

3  of Supervisors decides that it will not repeal the challenged ordinance but will instead submit it to

4  a vote of the people.  Only at that point is it determined that *there will even be* an election.

5          The County highlights this very fact in arguing that the qualification of a referendum petition

6  may result in the Board of Supervisors' decision to reconsider and repeal the challenged legislation

7  *without ever holding an election.*  County Defendants' Memorandum, at 12.  The County's

8  recognition that an election on the referendum *may never occur* demonstrates that such petitions

9  cannot be considered electoral materials.  Yet County Defendants argue that this possibility actually

10  supports requiring translation because, according the them, "the law will have been changed by the

11  10% who signed the petition, not the 50% majority who voted one way or another on the ordinance

12  itself." County Defendants' Memorandum, at 12.  County Defendants completely misrepresent the

13  nature of this aspect of the referendum process, however, for it is the *Board of Supervisors* — acting

14  in a *legislative*, not electoral, capacity — who would be deciding to repeal the challenged ordinance

15  under that scenario, not the petition signers.  If the Board were to choose to repeal the ordinance

16  upon presentation of a qualified referendum petition, it is because *the Board* evidently reconsidered

17  the wisdom of the legislation or, perhaps more likely, realized that it would be defeated in any

18  ensuing election.  In either event, the petition signers do not "become the part of the electorate that

19  is making decisions about the ordinance," as County Defendants contend.  *Id.*  Rather, the power to

20  determine whether the challenged ordinance will become law remains either with the Board itself

21  or with the "actual voters" in an election held on the referendum measure.  *Id.*

22          In addition, even though the Ninth Circuit has squarely rejected this argument, *Rangel*

23  plaintiffs continue to assert that the inclusion of the word "petitions" in the Attorney General's

24

25
26          [12]Two district courts have similarly held that privately circulated petitions do not qualify as
   "voting" or "election" materials that are subject to the VRA's coverage.  *See Hoyle v. Priest*, 59 F.
27  Supp. 2d 827, 834 (W.D. Ark. 1999) ("signing an initiative petition is not tantamount to voting in
   an election" and "does not fall within the purview of the Voting Rights Act"); *Gerena-Valentin v.*
   *Koch*, 523 F. Supp. 176, 177 (S.D.N.Y. 1981) ("The failure to provide bilingual petitions does not
28  by itself deprive the Hispanic community of their right to vote . . . .").

15

1    Guidelines demonstrates that all "registered voter petitions" are subject to Section 203 of the VRA.

2    As an initial matter, this argument proves way too much, for it is now without question that recall

3    petitions — which *Rangel* plaintiffs presumably would consider "registered voter petitions" — are

4    ***not*** subject to Section 203 based upon the *Padilla* en banc decision.  Furthermore, *Rangel* plaintiffs

5    (the same Spanish-speaking plaintiffs who voluntarily dismissed the *Madrigal* action) also

6    apparently concede that initiative petitions — another type of "registered voter petitions" — are

7    likewise not covered by Section 203.

8          *Rangel* plaintiffs' expansive interpretation of the Attorney General's Guidelines thus cannot

9    be correct; rather, as demonstrated in *Melendez*'s and *RSJOC*'s Opening Memorandum, the Attorney

10   General's use of the word "petitions" most likely refers only to ***nominating petitions*** — an

11   interpretation that is wholly consistent with the actions of the Department of Justice, which has never

12   once brought an administrative or judicial enforcement action challenging the validity of an English-

13   only recall, initiative, or referendum petition during the more than 30 years since Section 203 was

14   enacted.  *See Melendez* and *RSJOC* Memorandum, at 24-25 & n.12.  In fact, the various Attorney

15   General Letters of Objection cited by *Rangel* plaintiffs further support the conclusion that the

16   Attorney General interprets Section 203 as applying to *nominating* petitions, but not to citizen-

17   sponsored recall, initiative, or referendum petitions.  ***Every one of these Letters*** pertains only to

18   nominating petitions, and not ***a single one of them*** says anything about recall, initiative, or

19   referendum petitions.[13]

20

21          [13]In addition to only referring to ***nominating*** petitions, these Letters are also inapplicable here
     because they were issued under the preclearance provisions of *Section 5* of the VRA, not under
22   *Section 203*, which is the statutory provision at issue here.  *Rangel* Plaintiffs' convoluted argument
     regarding why Section 203 should be interpreted in the same manner as Section 5 of the VRA is
23   unconvincing.  There are very good reasons why the scope of Section 5's coverage is ***very different***
     than that of Section 203, including (1) different constitutional underpinnings (Section 5 is intended
24   to remedy discriminatory practices in certain selected jurisdictions with a proven history of
     discrimination, whereas Section 203 applies more generally to any jurisdiction meeting the statutory
25   threshold for language minority populations); (2) different procedural mechanisms (Section 5 bars
     a covered jurisdiction from *changing* its election rules without obtaining the Attorney's General's
26   consent, whereas Section 203 applies to all ongoing practices of the jurisdiction, no matter how long
     they have been in effect); and — perhaps most importantly — (3) different statutory language
27   defining the scope of coverage (Section 5 covers "any voting qualification or *prerequisite* to voting,
     or standard, practice, or procedure with respect to voting" (emphasis added), whereas Section 203
28   applies only to materials related to the electoral process that are "provided by" the state or a political

1    For example, *Rangel* plaintiffs include as the centerpiece of their argument a March 4, 1977,

2  Letter issued by the Attorney General to Monterey County objecting to the County's bilingual

3  election plan. *Rangel* Memorandum, at 11-12. That Letter objects to the County's failure to prepare

4  and make ***nominating petitions*** available in Spanish as well as in English. Significantly, however,

5  the Letter makes no similar objection to the County's practice of accepting and approving — or, in

6  *Rangel* plaintiffs' and County Defendants' view, "providing" — recall, initiative, and referendum

7  petitions in English only.

8    Even more telling, *Rangel* plaintiffs cite a March 29, 2002, Letter of Objection issued to the

9  Chualar Union Elementary School District in Monterey County in which the Attorney General

10  objected to a proposed change in the method of electing the school district's trustees, which would

11  have reinstated an at-large system in place of the existing district system. The change was instituted

12  by an initiative (erroneously referred to as a "referendum" in the Letter) sponsored by non-Hispanic

13  proponents, who "easily defeated the Hispanic opposition." *See Rangel* Memorandum, at 16-17.

14  The Attorney General refused to approve the proposed change, however, concluding that it would

15  have a retrogressive effect on Hispanic voters' ability to elect candidates of their choice, and that it

16  appeared to have been motivated, at least in part, by a discriminatory animus. *Id.*

17    Again, however, what is most significant about this Letter of Objection for present purposes

18  is that there is not a word of objection to the fact that the "voter petitions" that proposed the change

19  that the Attorney General found objectionable were printed and circulated ***only in English***.[14] The

20  Attorney General "examined the circumstances surrounding the initiation of the petition drive, which

21  led to the referendum on the proposed change" (*id.* at 16), remarked on the "language and tone"of

22  the "cover letter, which accompanied the petition" (*id.* at 17), and even noted that "over 90 percent

23

24  subdivision). It is therefore quite inappropriate to blindly import all of the Section 5 jurisprudence
   into the interpretation of Section 203's very different statutory language, as *Rangel* plaintiffs suggest.

25

26    [14]In preparing the papers in support of *RSJOC* plaintiffs' previous motion for a preliminary
   injunction, counsel for *RSJOC* plaintiffs personally confirmed with the Attorney General's office
   that the petitions at issue in the Chualar Union Elementary School District Letter of Objection were
27  printed only in English. After receiving a copy of the English-only petition pursuant to a FOIA
   request, *RSJOC* plaintiffs submitted it to this Court in the August 3, 2006, Declaration of Bryce Gee
28  in Support of Plaintiffs' Motion for Preliminary Injunction.

17

1  of the persons signing the petition did not reside in" the district that would be affected by the

2  proposed change (*id.* at 16), yet the Attorney General **did not object** that the English-only initiative

3  petition violated Section 203 of the VRA.

4      In sum, far from demonstrating that the Attorney General views Section 203 as applying to

5  recall, initiative, and referendum petitions, these Letters — as well as the fact that the Department

6  of Justice has never brought an enforcement action challenging an English-only recall, initiative, or

7  referendum petition — actually evidence the Attorney General's acquiescence in the 30-year-long

8  uniform practice of state and local officials across California to **not** require such citizen-sponsored

9  petitions to be translated into multiple languages under the VRA.[15]

10  **C.  THE LEGISLATIVE HISTORY OF SECTION 203 OF THE VOTING RIGHTS ACT
       EXPRESSES CONGRESS' CLEAR INTENT THAT "PETITIONS THAT ARE
11     INITIATED AND DISTRIBUTED BY PRIVATE CITIZENS" ARE "EXCLU[DED]"
       FROM SECTION 203**
12

13      Remarkably, County Defendants contend that the legislative history of Section 203 of the

14  VRA somehow *supports* their interpretation that referendum petitions are subject to Section 203's

15  translation requirements.  In so arguing, they completely ignore the most recent, and most pertinent,

16  legislative history pertaining to Section 203 — the Fannie Lou Hamer, Rosa Parks, and Coretta Scott

17  King Voting Rights Reauthorization and Amendments Act of 2006.

18      As more fully discussed in *Melendez*'s and *RSJOC*'s Opening Memorandum, the House

19

---

20      [15]*Rangel* plaintiffs' reference to the Attorney General's "numerous actions to require covered
    jurisdictions to comply with the requirements of Section 203" further demonstrates the Attorney

21  General's acquiescence in this practice of not requiring citizen-sponsored recall, initiative, and
    referendum petitions to be translated into minority languages.  For instance, in response to an

22  enforcement action filed against Ventura County by the Attorney General, a Consent Decree was
    issued on September 2, 2004, requiring the county "to provide in Spanish any 'registration or voting

23  notices, forms, instructions, assistance or other materials or information relating to the electoral
    process, including ballots' that they provide in English, as required by Section 203 of the Voting

24  Rights Act, as amended." *Rangel* Memorandum, at 4 & n.12; *see also* Consent Decree, ¶ 1, attached
    as Exh. A to the Declaration of Philip J. Schmit.  Yet neither the county nor the Attorney General

25  has interpreted this Consent Decree to require that private citizens who sponsor and circulate recall,
    initiative, or referendum petitions must translate those petitions and circulate them in Spanish as well

26  as English.  In the more than two years since the issuance of the Decree, the county has accepted and
    certified numerous English-only initiative and referendum petitions, and has conducted a number

27  of elections in recent years on ballot measures that qualified for the ballot based upon petitions that
    were not printed and circulated in Spanish, without the Attorney General ever once objecting to this

28  practice. *See* Schmit Declaration, ¶¶ 3-5.

Judiciary Committee's May 22, 2006, Report on the re-authorization of the Voting Rights Act, unequivocally states Congress's declaration that "petitions that are initiated and distributed by private citizens" are "exclu[ded]" from Section 203's translation requirements. H.R. Rep. No. 109-478, at 59, 2006 WL 1403199 (May 22, 2006); *see also Melendez* and *RSJOC* Memorandum, at 22-24. Congress explained that because Section 203 was enacted "as a remedy for the past and present failures of *States and jurisdictions* to remedy educational disparities," imposing the translation requirement on private citizens would "have the effect of *penalizing* them for injuries caused by States." H.R. Rep. No. 109-478, at 59 (emphasis added).[16] Notably, Congress did not in any way limit this exclusion to any particular *type* of citizen-initiated petition, but instead broadly stated that *all* "privately prepared and distributed" petitions — whether recall, initiative, or referendum petitions — do not need to be made available in the covered languages. H.R. Rep. No. 109-478, at 59.[17] Such official committee reports "provide the ***authoritative*** expression of legislative intent," *In re Kelly III*, 841 F.2d 908, 912 n.3 (9th Cir. 1988) (emphasis added), which is why "[t]his circuit relies on

---

[16] For this reason, the Court must also reject *Rangel* plaintiffs' argument that Section 203 ***does*** reach private conduct. *See Rangel* Memorandum, at 23-25. To support that position, *Rangel* plaintiffs cite other *other* provisions of the VRA, which by their statutory terms expressly implicate private conduct — such as Section 11, which provides "[n]o person, whether acting under color of law *or otherwise*, shall intimidate . . . any person for voting or attempting to vote . . . ." 42 U.S.C. § 1973i(b) (emphasis added). But *Rangel* plaintiffs completely ignore the actual language of Section 203, which makes clear that the section applies only to materials that ***the State or political subdivision*** "provides," and which Congress has now clearly interpreted ***not*** to apply to private citizens lest they be penalized for injuries caused by the States. Nor do *Rangel* plaintiffs explain why, if Section 203 does indeed cover private conduct as they contend, the *Padilla* en banc court found that Section 203 does not apply to recall petitions precisely because they were "initiated, circulated, and paid for by ***private proponents***." *Padilla*, 463 F.3d at 1048 (emphasis added).

Moreover, the fact that a Spanish translation of the Referendum petition was not presented to Plaintiff Sabas Rangel — who similarly complained that he was unable to read the Initiative petition at issue in *In re County of Monterey Initiative Matter*, yet has since dismissed that lawsuit — also does not support subjecting private citizens to the minority language provisions of Section 203, as *Rangel* plaintiffs propose. As the Ninth Circuit has already held, "when the Voting Rights Act creates no duty to present a petition to the plaintiffs in the first place, it is difficult to see why the Act requires the petition to be translated into their language." *Id.* at 1052.

[17] The 1975 Senate Report that County Defendants cite as support for their position actually further demonstrates that in enacting Section 203, Congress intended to make the minority translation requirement only "applicable to ***states and political subdivisions***," and not to private citizens. *See, e.g.*, S. Rep. No. 94-295, at 9, *as reprinted in* 1975 U.S.C.C.A.N. 774, 775 (emphasis added); *id.* at 48 ("For a period of 10 years, ***state and local officials*** are prohibited from providing English-only registration and election materials . . . .") (emphasis added).

19

---

1    official committee reports when considering legislative history, not stray comments by individuals

2    or other materials unrelated to the statutory language or the committee reports." *Hertzberg v. Dignity*

3    *Partners, Inc.*, 191 F.3d 1076, 1082 (9th Cir. 1999).

4         Significantly, there is one important point about the legislative history on which Plaintiffs

5    and County Defendants are in complete agreement: Congress' re-authorization of the Voting Rights

6    Act without amending Section 203 must be viewed as ***congressional acquiescence*** in the

7    interpretation given to that provision by the courts.   *See Melendez* and *RSJOC* Plaintiffs'

8    Memorandum, at 23 n.11 (citing *Dougherty County Board of Education v. White*, 439 U.S. 32, 38

9    (1978) ("Had Congress disagreed with [the courts'] broad construction of § 5, it presumably would

10   have clarified its intent when re-enacting the statute in 1970 and 1975.")); County Defendants'

11   Memorandum, at 15 (citing same decision).  However, contrary to the suggestion in the County's

12   brief, it was not the unique interpretation placed on Section 203 by Judge Pregerson's panel opinion

13   in *Padilla* that Congress acquiesced in by re-authorizing Section 203 without change, for at the time

14   the House Judiciary Committee Report was issued in May 2006 and the Voting Rights Act was re-

15   enacted in July 2006, ***the panel opinion in Padilla had been withdrawn***.  *See* 446 F.3d 963 (9th Cir.

16   April 28, 2006).[18]  Rather, it was the established judicial interpretation given to Section 203 in the

17   20-year-old precedents of the courts of appeals in both *Montero v. Meyer*, 861 F.2d 603 (10th Cir.

18   1988) and *Delgado v. Smith*, 861 F.2d 1489 (11th Cir. 1988), that Congress must be deemed to have

19   intended to adopt in re-authorizing the Voting Rights Act for an additional 25 years — an

20

21        [18]Contrary to the claim in the County's Memorandum (*id.* at 15), there is no evidence
     suggesting that Congress was aware of the existence of this Court's decision in *In re Monterey*
22   *Initiative Matter*.  The supporting "evidence" cited by the County consists entirely of one sentence
     in the testimony of Orange County Supervisor Chris Norby, who referred to a Ninth Circuit decision
23   "plac[ing] in doubt" a "recent recall election in Santa Ana" and then observed that "[s]imilar
     petitions are being challenged all over the state."  County Defendants' Request for Judicial Notice,
24   Exh. C, at 1-2.  Nor does the fact that Congress declined Mr. Norby's request for a "total
     reexamination" of Section 203 (*id.*), including amending its language to explicitly exclude
25   "initiative, referendum or recall petitions" from the statute's coverage, demonstrate any sort of
     congressional support for the County's position.  County Defendants' Memorandum, at 15.  Rather,
26   that Supervisor Norby even raised the issue of Section 203's applicability to private petitions in his
     testimony may well explain why Congress felt the need to go out of its way to include an explicit
27   statement in the House Committee Report that Section 203 "does not require private citizens to make
     privately prepared and distributed materials available in the covered languages."  H.R. Rep. No. 109-
28   478, at 59, 2006 WL 1403199 (May 22, 2006).

                                    20

*In re County of Monterey Initiative Matter* (Case Nos. C 06-01407 JW, C 06-01730 JW)
*In re Monterey Referendum* (Case Nos. C 06-02202 JW, C 06-02369 JW)
*Melendez*'s and *RSJOC*'s Consolidated Opposition to County Defendants'
and *Rangel* Plaintiffs' Motions for Summary Judgment

interpretation that unequivocally holds that ***privately circulated petitions are not subject to Section 203's requirements***.[19]

> **D.    THERE IS NO MERIT TO *RANGEL* PLAINTIFFS' REQUEST TO CONVENE A THREE-JUDGE COURT**

Finally, *Melendez* and *RJSOC* plaintiffs respectfully request that this Court decline *Rangel* plaintiffs' invitation to be the first in the country to hold that private right of actions alleging Section 203 violations must be heard by a three-judge court.  *Rangel* plaintiffs merely rehash — nearly verbatim — the same novel and unsupportable arguments they previously made in their original Request for the Convening of a Three Judge Court, which *Melendez* and *RSJOC* plaintiffs have fully addressed in their Opening Memorandum (*id.* at 26-31).  Accordingly, *Melendez* and *RSJOC* plaintiffs wish only to highlight a few brief points here.

Most conspicuously, *Rangel* plaintiffs utterly fail to explain why if a three-judge court is truly required here,  every other court — including ***the Ninth Circuit*** in the *Padilla* appeal — has refused to follow that procedure, instead proceeding to hear such private actions in the district court with appeal being taken in the normal course to the court of appeals.  *See Melendez* and *RSJOC* Memorandum, at 27-28, and cases cited therein.  Indeed, when this precise argument that private actions under Section 203 should be heard by a three-judge court was made by the Solicitor General, the ***United States Supreme Court rejected it by denying certiorari***. *See Montero v. Meyer*, 492 U.S. 921 (1989).  There simply exists no basis for greatly expanding the reach of Section 204 of the VRA — which by its own terms applies only to actions brought by the ***Attorney General*** "in the name of

---

[19]It is telling how County Defendants apply their "acquiescence" argument selectively.  On the one hand, they assert that congressional acquiescence in the *Montero* and *Delgado* decisions is of "dubious" precedential value here, since "those cases involved the initiative process, not the referendum process."  County Defendants' Memorandum, at 15.  But on the very same page, they ask this Court to consider re-authorization of the VRA to constitute congressional acquiescence in the panel opinion in *Padilla* and in this Court's decision in *In re County of Monterey Initiative Matter* — which, of course, involved the *recall* and *initiative* processes, respectively.  *Id.*  County Defendants cannot have it both ways, arguing that Congress acquiesced in the decisions that they like, but not in the decisions that they don't like, particularly when the opinion they would like to rely upon was ***withdrawn*** prior to any Congressional action.  Indeed, the withdrawal of the panel opinion in *Padilla* may explain why Congress felt it unnecessary to amend the actual language of Section 203 in response to that opinion, since the only court of appeals' precedents on the books at the time the VRA was re-authorized had held that privately circulated petitions were not covered by Section 203.

---

1  the United States" — to cover ***private actions*** brought individually, particularly given that such

2  statutes "providing for the convening of three-judge courts must be ***strictly construed***." *Allen v.*

3  *State Board of Elections*, 393 U.S. 544, 562 (1969) (emphasis added); *see also id.* (courts "have been

4  reluctant to extend the range of cases necessitating the convening of three-judge courts.").

5        Nor can *Rangel* plaintiffs explain how either their own action or the *RSJOC* action could

6  possibly qualify for a three-judge court, even if their interpretation were correct.  Although *Rangel*

7  plaintiffs now assert that Section 204 of the VRA, 28 U.S.C. § 1973aa-2, is the basis for the Court's

8  jurisdiction to hear their action, that was not the basis they relied upon in their Complaint; rather,

9  they alleged that the Court had jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), 1343(4), 2201, and

10  2202, none of which require the convening of a three-judge court.  *Rangel* Complaint, ¶ 8.  To this

11  day, *Rangel* plaintiffs have not sought to amend their Complaint, nor have they ever asserted that the

12  jurisdictional allegations in their Complaint were incomplete or inaccurate.

13        Furthermore, regardless of Section 204's applicability to the *Rangel* lawsuit, it is absolutely

14  clear that the convening of a three-judge court is not warranted or authorized in the *RSJOC* action.

15  That action was not brought under either Section 203 or 204 of the VRA, but rather was originally

16  filed in state court raising only state-law claims, and it was removed to this Court pursuant to ***28***

17  ***U.S.C. § 1443(2)***.  It is therefore 28 U.S.C. § 1443(2) that forms the basis of this Court's jurisdiction

18  over the *RSJOC* matter, and that section indisputably contains no requirement for convening a three-

19  judge court.  *See Melendez* and *RSJOC* Memorandum, at 29.

20  //

21  //

22

23

24

25

26

27

28

1

**CONCLUSION**

2       For all the foregoing reasons, *Melendez* and *RSJOC* plaintiffs respectfully request that

3  this Court grant their Motion for Summary Judgment, remanding the *Melendez v. Board of*

4  *Supervisors* action to the Monterey County Superior Court for the appropriate resolution of the

5  state-law causes of action, denying the declaratory and injunctive relief requested by the *Rangel*

6  plaintiffs, and issuing the declaratory and injunctive relief requested by the RSJOC plaintiffs

7  ordering County Defendants either to repeal Resolution No. 05-305 in its entirety or to place the

8  Referendum on the June 5, 2007, ballot for a vote of the Monterey County electorate.

9

10  DATE: February 13, 2007           Respectfully submitted,

11                                STRUMWASSER & WOOCHER LLP

12                                Fredric D. Woocher
                                  Michael J. Strumwasser

13                                Bryce A. Gee

14

15                              By         /s/
                                       Fredric D. Woocher

16                              *Attorneys for Plaintiffs Melendez, et al.*
                              *and Plaintiffs Rancho San Juan Opposition*

17                              *Coalition, et al.*

18

19

20

21

22

23

24

25

26

27

28