FREDRIC D. WOOCHER (SBN 96689)
MICHAEL J. STRUMWASSER (SBN 58413)
BRYCE A. GEE (SBN 222700)
STRUMWASSER & WOOCHER LLP
100 Wilshire Boulevard, Suite 1900
Santa Monica, California 90401
Telephone: (310) 576-1233
Facsimile: (310) 319-0156
E-mail: fwoocher@strumwooch.com

J. WILLIAM YEATES (SBN 84343)
KEITH G. WAGNER (SBN 210042)
JASON R. FLANDERS (SBN 238007)
LAW OFFICE OF J. WILLIAM YEATES
3400 Cottage Way, Suite K
Sacramento, CA 95825
Telephone: (916) 609-5000
Facsimile: (916) 609-5001
E-mail: byeates@enviroqualitylaw.com

*Attorneys for Plaintiffs Rancho San Juan Opposition Coalition, et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MONTEREY REFERENDUM. | CASE NO. C 06-02202 JW<br>CASE NO. C 06-02369 JW<br><br>*RSJOC*'S RESPONSE TO COUNTY DEFENDANTS' [PROPOSED] ORDER ON MOTIONS IN CONSOLIDATED CASES<br><br>Judge: Hon. James Ware<br>Hrng. Date: Feb. 27, 2007<br>Ctrm: 8 |

1    Contradicting the position they had taken for the past year in this litigation, as well as in the briefs they filed in connection with the instant cross-motions for summary judgment, County Defendants in their [Proposed] Order on Motions in Consolidated Cases; Explanation of Reasons for Order ("County's [Proposed] Order") have now, for the first time, argued that if the Court concludes that the Voting Rights Act did not require the Referendum petitions to be printed and circulated in Spanish, then the proper disposition of the Referendum cases would be to remand the *Rancho San Juan Opposition Coalition* action to state court in light of allegedly related pending state court cases. Because they have not had any previous opportunity to respond to this new argument, Plaintiffs Rancho San Juan Opposition Coalition, et al. ("RSJOC") respectfully submit this short response to County's [Proposed] Order.

In their [Proposed] Order, County Defendants suggest that remand of the *RSJOC* action to state court is somehow appropriate because the County is involved in *other* state court litigation relating to the same development project that is at issue in the Referendum. There are several reasons why the County's argument is without merit. First and foremost, as County Defendants must concede, none of those other state court actions has anything to do with the **validity** of the Referendum and none has any effect on the judgment that would be rendered in this case, much less on *this Court's* authority to issue the declaratory and injunctive relief requested herein by RSJOC. As County Defendants note, the state court cases involve (1) CEQA challenges to the County's adoption of the specific plan and general plan amendments that are the subject of the Referendum petition (which challenges would be mooted by the *defeat* of those amendments in the Referendum election); and (2) an injunctive relief and "takings" claim brought by the owner of the Rancho San Juan property against the County for the delay in allowing development of the property (which claim would likewise be mooted by the *passage* of the specific plan and general plan amendments in the Referendum election). The present case, by contrast, involves only the question of the validity of the Referendum petitions under the Voting Rights Act. As the parties stipulated in the Joint Case Management Statement and Order: "The *sole* legal issues in dispute [in the Referendum cases] are whether Section 203 of the Voting Rights Act requires the Referendum petitions at issue here to have been translated into Spanish, and whether the Referendum proponents' failure to have circulated the

1

*In re Monterey Referendum* (Case Nos. C 06-02202 JW, C 06-02369 JW)
RSJOC'S RESPONSE TO COUNTY DEFENDANTS' [PROPOSED] ORDER ON MOTIONS IN CONSOLIDATED CASES

petitions in Spanish justifies the Board of Supervisors' refusal to hold an election on the Referendum." Accordingly, there is only that one *federal* question to be resolved in the Referendum cases, and once this Court resolves that question, there is nothing to be done but to enter this Court's judgment in conformance with its ruling.

Second, there is absolutely no possibility of "inconsistent judgments" between this Court's ruling in these Referendum cases and the judgments in any of the pending state court cases, as County Defendants incorrectly imply. *See* County Defendants' Explanation of Reasons for Order, at 4. Most significantly, ***none of the state court actions seeks to enjoin the election on the Rancho San Juan Referendum from going forward***. To the contrary, as noted above, the outcome of the election is only likely to moot and resolve at least one set of those state court actions. Indeed, the declaratory relief cross-complaint filed by the County in the Rancho San Juan developer's lawsuit (*HYH v. County of Monterey*, No. M 46616) that is referred to in the County's Explanation of Reasons for its [Proposed] Order is actually *premised* on the assumption that *there is going to be an election* held on the Referendum, seeking a declaration as to what the legal impact of the defeat of the Rancho San Juan Specific Plan at the polls would be on the County's potential liability in that case.[1] That is precisely why, as County Defendants themselves note, their declaratory relief motion was taken off calendar after the Board of Supervisors removed the Referendum from the ballot last April "in anticipation of this Court's ruling," subject to being re-noticed "[i]f the referendum is

---

[1] There is, in any event, no basis for the County's professed concern that the voters' rejection of the Rancho San Juan Specific Plan might subject it to takings liability, much less to a "contempt of court" citation. The Superior Court in the *HYH v. County of Monterey* action merely rejected the County's prior excuses for its 14-year delay in failing even to *process* HYH's request to develop its property, ordering in 2001 that the County adopt a specific plan for the property within a reasonable time period; the state court made explicit, however, that its order did "not seek to compel any particular substantive finding or requirement within the . . . Plan," and that it was not intended to "limit or control the discretion legally vested in respondent [County]." Declaration of Alana Knaster in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Knaster Decl."), Exh. C, at 5-6; Exh. B, at 2. Thus, the Superior Court's order did not in any way limit or affect the County's (or, in this instance, the County's voters') absolute discretion over the *substance* of the specific plan that may be adopted for the Rancho San Juan area. And more importantly for present purposes, the court's order in no way limits the constitutionally reserved right of the electorate to refund any particular specific plan adopted by the Board of Supervisors. If the Referendum is defeated in the June 5, 2007, election, the County would simply need to adopt another specific plan for Rancho San Juan in order to comply with the Superior Court's order — a plan that the voters of Monterey County will find acceptable, such as the one contained in the citizen-sponsored General Plan Initiative that will also be submitted to the voters at that same election.

2

*In re Monterey Referendum* (Case Nos. C 06-02202 JW, C 06-02369 JW)
RSJOC's Response to County Defendants' [Proposed] Order on Motions in consolidated cases

restored to the ballot at a later date." *See* County Defendants' Explanation of Reasons for Order, at 3; Knaster Decl., Exh. I.  In sum, following this Court's entry of a judgment ordering the Referendum onto the June ballot, the County and the other litigants in the state court proceedings may or may not pursue their litigation, but there is no possibility of inconsistent judgments and no further action for any state court to take with respect to the *RSJOC* case that would possibly justify "remanding" the case to state court.

Lastly, RSJOC plaintiffs are very concerned that the County Defendants' belated request for a remand to state court will merely serve to unnecessarily delay matters and prevent the Referendum from appearing on the June 5, 2007, ballot.  In light of the April 9, 2007, date that counsel for County Defendants represented was the deadline to include the Referendum on the June ballot, remand of the Referendum cases to state court would make it very difficult, if not impossible, for RSJOC to obtain an injunction from the state court in time to have their Referendum — which qualified for the ballot back in *January 2006* — placed on the June 5, 2007, ballot.  Significantly, all of the state court litigation to which the County Defendants now refer was pending at the time that the Board of Supervisors originally voted more than a year ago to submit the Referendum to the county's voters at the June *2006* election.  The County evidently did not believe at that time (nor at any other time prior to last week) that the state court litigation somehow affected its obligation to submit the qualified Referendum to the voters.  Rather, the ***only ground*** on which the County has ever suggested that the Referendum should not be submitted to the voters is the Voting Rights Act claim at issue in the pending summary judgment motions in the instant Referendum cases.  Once that legal issue is resolved by this Court, judgment should be entered by this Court either ordering the Referendum to be submitted to the voters at the June 5, 2007, election or prohibiting the County from holding an election on the Referendum.  Those are the Court's appropriate choices for disposition of the Referendum cases, plain and simple.

//

//

3

*In re Monterey Referendum* (Case Nos. C 06-02202 JW, C 06-02369 JW)
RSJOC'S RESPONSE TO COUNTY DEFENDANTS' [PROPOSED] ORDER ON MOTIONS IN CONSOLIDATED CASES

1 | DATE: March 13, 2007

Respectfully submitted,

STRUMWASSER & WOOCHER LLP
Fredric D. Woocher
Michael J. Strumwasser
Bryce A. Gee

By _____/s/_____
     Fredric D. Woocher

*Attorneys for Plaintiffs Rancho San Juan Opposition Coalition, et al.*

4