1  FREDRIC D. WOOCHER (SBN 96689)
2  MICHAEL J. STRUMWASSER (SBN 58413)
   BRYCE A. GEE (SBN 222700)
3  STRUMWASSER & WOOCHER LLP
   100 Wilshire Boulevard, Suite 1900
4  Santa Monica, California 90401
   Telephone:    (310) 576-1233
5  Facsimile:    (310) 319-0156
   E-mail: fwoocher@strumwooch.com
6
   J. WILLIAM YEATES (SBN 84343)
7  KEITH G. WAGNER (SBN 210042)
   JASON R. FLANDERS (SBN 238007)
8  LAW OFFICE OF J. WILLIAM YEATES
   3400 Cottage Way, Suite K
9  Sacramento, CA 95825
   Telephone:    (916) 609-5000
10 Facsimile:    (916) 609-5001
   E-mail: byeates@enviroqualitylaw.com
11
12 *Attorneys for Plaintiffs William Melendez,*
   *et al. and Plaintiffs Rancho San Juan*
13 *Opposition Coalition, et al.*

14
15                  UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17

18                                                CASE NO.  C 06-01730 JW
                                                  CASE NO.  C 06-02369 JW
19
20 IN RE COUNTY OF MONTEREY INITIATIVE            *MELENDEZ* PLAINTIFFS' AND
   MATTER,                                        *RSJOC* PLAINTIFFS' OPPOSITION
21                                                TO DEFENDANT'S MOTION TO
                                                  CLARIFY OR ALTER JUDGMENT
22 and
23 IN RE MONTEREY REFERENDUM.                     Date: May 21, 2007
                                                  Time: 9:00 a.m.
24                                                Judge: Hon. James Ware
                                                  Ctrm: 8
25
26
27
28

Printed on Recycled Paper

OPPOSITION TO DEFENDANT'S MOTION TO CLARIFY OR ALTER JUDGMENT

1

## CONTENTS

2    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4    I.    THE COURT'S RULING THAT *MELENDEZ* PLAINTIFFS AND *RSJOC* PLAINTIFFS ARE
5          ENTITLED TO RECOVER THEIR ATTORNEYS' FEES WAS PROCEDURALLY PROPER . . . . . . 5

6    II.   ON THE MERITS, *MELENDEZ* PLAINTIFFS AND *RSJOC* PLAINTIFFS ARE ENTITLED
           TO THEIR ATTORNEYS' FEES UNDER BOTH STATE AND FEDERAL FEE-SHIFTING
7          STATUTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8          A.    CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1021.5
                 REQUIRES AWARDING *MELENDEZ* PLAINTIFFS AND *RSJOC*
9                PLAINTIFFS THEIR ATTORNEYS' FEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10         B.    THE FEDERAL ATTORNEYS' FEES PROVISION OF 42 U.S.C. § 1973*L*
11               PROVIDES AN ADDITIONAL GROUND FOR AWARDING *MELENDEZ*
                 PLAINTIFFS AND *RSJOC* PLAINTIFFS THEIR ATTORNEYS' FEES . . . . . . . . . . . . 13

12   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

**TABLE OF AUTHORITIES**

**Federal Cases**

*Ackerman v. Western Electrical Co.*, 860 F.2d 1514 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . 12

*Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975) . . . . . . . . . . . . . 11, 13

*American Civil Liberties Union v. Lomax*, 471 F.3d 1010 (9th Cir. 2006) . . . . . . . . . . . . . . 15

*Bouman v. Block*, 940 F.2d 1211 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Campuzano v. Illinois State Board of Education*, 241 F. Supp. 2d 892 (N.D. Ill. 2003) . . . . . . 15

*Charfauros v. Board of Elections*, 249 F.3d 941 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 15

*Control Data Corp. v. S.C.S.C Corp*, 53 F.3d 930 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . 11, 13

*In re County of Monterey Initiative Matter*, 427 F. Supp. 2d 958 (N.D. Cal. 2006) . . . . . . . . 12

*Crommie v. California Public Utilities Commission*, 840 F. Supp. 719 (N.D. Cal. 1994) . . 10, 11

*Eddy v. Colonial Life Insurance Co. of Am.*, 59 F.3d 201 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . 8

*Gomez v. City of Watsonville*, 863 F.2d 1407 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329 (9th Cir. 1995) . . . . . . . . . . . 13

*Hastert v. Illinois State Board of Election Comm'rs*, 28 F.3d 1430 (7th Cir. 1993) . . . . . . . 7, 8

*Jordan v. Multnomah County*, 815 F.2d 1258 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Keith v. Volpe*, 644 F. Supp. 1317 (C.D. Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 13

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*King v. Illinois State Board of Education*, 410 F.3d 404 (7th Cir. 2005) . . . . . . . . . . . . . 2, 13, 14

*Mangold v. California Public Utilities Commission*, 67 F.3d 1470 (9th Cir. 1995) . . . . . . 10, 11

*Seals v. Quarterly County Court of Madison County*, 562 F.2d 390 (6th Cir. 1977) . . . . . . . . 14

*Texas A&M Research Foundation v. Magna Transportation, Inc.*,
    338 F.3d 394 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Williams v. Alioto*, 625 F.2d 845 (9th Cir. 1980), *cert. denied*, 450 U.S. 1012 (1981) . . . . . . 6, 7

**State Cases**

*Citizens Against Rent Control v. City of Berkeley*, 181 Cal. App. 3d 213 (1986) . . . . . . . . . . . . 9

*City of Sacramento v. Drew*, 207 Cal. App. 3d 1287 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lyons v. Chinese Hospital Association*, 136 Cal. App. 4th 1331 (2006) . . . . . . . . . . . . . . . . . 8

*Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wal-Mart Real Estate Business Trust v. City Council of the City of San Marcos*,
132 Cal. App. 4th 614 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Federal Statutes and Rules**

28 U.S.C. § 1443(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 9

42 U.S.C. § 1973*l* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 13

42 U.S.C. § 1973*l*(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. § 1973*l*(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13, 16

42 U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Fed. R. Civ. P. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**State Constitution and Statutes**

Cal. Const., art. II, § 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Code Civ. Proc., § 1021.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 7, 8

Cal. Elec. Code,

§ 9118 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

§ 9145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**INTRODUCTION**

In its Motion to Clarify or Alter Judgment, Defendant County of Monterey ("the County") asks this Court to revise the judgment entered on March 29, 2007, to delete the statements therein confirming that Plaintiffs William Melendez et al. ("*Melendez* Plaintiffs") and Plaintiffs Rancho San Juan Opposition Coalition et al. ("*RSJOC* Plaintiffs") are entitled to recover the reasonable attorneys' fees they incurred in successfully prosecuting these consolidated actions. Unable to refute that Plaintiffs do indeed satisfy the statutory criteria for a fee award under the relevant state and federal fee-shifting statutes, the County instead contends (1) that it was "premature" for the Court to address Plaintiffs' entitlement to attorneys' fees in its summary judgment ruling on the merits, and (2) that these established fee-shifting statutes do not apply in the context of these consolidated actions. The County is wrong on both scores: The Court's judgment quite properly addresses Plaintiffs' ***entitlement*** to an award of attorneys' fees in the first instance, reserving for a subsequent motion (if necessary) the question of the appropriate ***amount*** of such an award, and the Court was perfectly correct in recognizing that ***both state and federal law*** expressly authorize a fee award to Plaintiffs as the prevailing parties in the present actions.

Most telling, the County essentially concedes that *Melendez* Plaintiffs and *RSJOC* Plaintiffs would be entitled to a fee award under California's private attorney general statute, codified in California Code of Civil Procedure section 1021.5. The County contends, however, that there is no federal statute nor any decisional law that would permit application of California's fee-shifting statute to this case. As is demonstrated below, the County is fundamentally wrong in this regard, for numerous federal court decisions — including some of those cited by the County itself — have awarded fees under section 1021.5 and other state fee-shifting statutes under circumstances similar to those present here.

The County's argument that Plaintiffs are not entitled to a fee award under 42 U.S.C. § 1973*l* is similarly misplaced. Plaintiffs not only satisfy the ***literal terms*** of that statute but, perhaps more importantly, a fee award to Plaintiffs would fulfill the statute's ***underlying purpose*** of ensuring effective access to the judicial process for persons seeking to enforce their voting rights. In these lawsuits, Plaintiffs sought nothing more than to secure the right to vote for Monterey County's

1

citizens on two important ballot measures affecting the quality of life in their community — a right that the County had denied them based, in part, on its erroneous interpretation of the Voting Rights Act. By prevailing in these actions and obtaining an injunction requiring the County to submit the Initiative and Referendum to a vote of the people, Plaintiffs accomplished precisely what the County itself acknowledges is the "critical inquiry" for determining a party's entitlement to a fee award under section 1973*l*: "[W]hat matters is that they successfully protected rights guaranteed to them under the Constitution of the United States and the Voting Rights Act." *King v. Ill. State Bd. of Elections*, 410 F.3d 404, 419 (7th Cir. 2005) [quoted in Defendant's Memorandum of Points and Authorities in Support of Motion to Clarify or Alter Judgment ("County's Memorandum"), at 6].

In sum, this Court's March 29, 2007, judgment was absolutely correct in recognizing that Plaintiffs "are entitled to recover reasonable costs and fees" as the prevailing parties in these actions. As contemplated in the Court's judgment, if Plaintiffs and the County are unable to reach agreement on the reasonable amount of those fees, then that issue may be submitted to this Court for post-judgment consideration through a motion requesting that the Court issue an order awarding Plaintiffs fees in a particular amount. In the meantime, there is no need for any order clarifying or altering the Court's March 29, 2007, judgment in any respect. Accordingly, the County's Motion to Clarify or Alter Judgment should be denied.

## BACKGROUND

The two consolidated lawsuits at issue here were initiated in response to the County's refusal to allow a vote on two duly qualified citizen-sponsored ballot measures. On March 1, 2006, after the Board of Supervisors had voted not to place "The Monterey County Quality of Life, Affordable Housing, and Voter Control Initiative" (the "Initiative") on the ballot for the June 2006 election, *Melendez* Plaintiffs filed suit against the County defendants in Monterey County Superior Court. The Complaint alleged, among other things, that the County had a ministerial duty under the law to submit the Initiative to a vote of the people, and that the County's denial of their right to vote on the measure violated the California Elections Code and the Constitution. *Melendez* Complaint, ¶¶ 18-20, 28. *Melendez* Plaintiffs therefore requested an order requiring the County Defendants to comply with their ministerial duty to submit the Initiative for a vote of the County's electorate. *Id.*, Prayer

2

1    for Relief, at ¶¶ 1-2.  In addition, *Melendez* Plaintiffs explicitly prayed for an award of their

2    reasonable costs and attorneys' fees (*id.*, Prayer for Relief, at ¶ 4), specifically alleging that "they

3    bring this action as private attorneys general pursuant to California Code of Civil Procedure

4    section 1021.5, in order to vindicate their own interests as well as the interests of all of the taxpayers

5    and citizens of the County of Monterey in obtaining Respondents' compliance with the California

6    Constitution, in the proper implementation of the state's election laws, and in the fair and impartial

7    performance of Respondents' duties as county officials."  *Melendez* Complaint, ¶ 23.[1]

8          On March 7, 2006, before the Superior Court could hold a hearing in the matter, the County

9    removed the *Melendez* case to this Court pursuant to 28 U.S.C. § 1443(2), which permits a defendant

10   to remove a civil action from state to federal court if that action is "[f]or any act under color of

11   authority derived from any law providing for equal rights, or for refusing to do any act on the ground

12   that it would be inconsistent with such law."  Upon its removal to this Court, the *Melendez* action

13   (Case No. C 06-01730) was related to, and was ultimately consolidated with, another action —

14   *Madrigal v. County of Monterey* (Case No. C 06-01407) — that had been brought by three Spanish-

15   speaking plaintiffs under Section 203 of the Voting Rights Act, alleging that the Initiative was

16   invalid because the petitions had been printed and circulated only in English.

17         The second lawsuit at issue here, which relates to the Referendum Against Resolution

18   No. 05-305 ( the "Referendum") sponsored by *RSJOC* Plaintiffs, came before this Court in a similar

19   fashion.  On April 3, 2006, following the Board of Supervisors' removal of the duly qualified

20   Referendum from the June 2006 election ballot, *RSJOC* Plaintiffs filed suit in Monterey County

21   Superior Court seeking an order requiring the County to submit the measure to a vote of the people

22   in order to vindicate Plaintiffs' and the other County residents' voting rights.  *RSJOC* Complaint,

23   Prayer for Relief, at ¶¶ 1-2.  Like *Melendez* Plaintiffs, *RSJOC* Plaintiffs alleged in their Complaint

24   that the County had a ministerial duty under California state election law and the Constitution to

25   permit a vote on the Referendum.  *See, e.g.*, *id.*, ¶¶ 18-20, 28.  *RSJOC* Plaintiffs also explicitly

26   _____

27       [1]Consequently, the County's contention in the context of the instant motion that *Melendez*
     plaintiffs "d[id] not cite any statute" as the ground for their prayer for attorneys' fees — and the

28   County's feigned uncertainty regarding the basis for any fee award in this case — is simply ***untrue***.
     *See* County's Memorandum, at 2.

*In re County of Monterey Initiative Matter; In re Monterey Referendum*
Case Nos. C 06-01730 JW; C 06-02369
OPPOSITION TO DEFENDANT'S MOTION TO CLARIFY OR ALTER JUDGMENT

1   requested an award of their costs and reasonable attorneys' fees pursuant to California Code of Civil

2   Procedure section 1021.5. *Id.*, ¶ 23, Prayer for Relief, at ¶ 4.

3          On April 4, 2006, again before any state court proceedings could be held, the County

4   removed the *RSJOC* action to this Court pursuant to 28 U.S.C. § 1443(2), and shortly thereafter the

5   *RSJOC* action (Case No. C 06-02369) was related to and then consolidated for purposes of summary

6   judgment motions with another pending federal action — *Rangel v. County of Monterey* (Case No.

7   C 06-02202) — in which a subset of the Spanish-speaking plaintiffs from the *Madrigal* action had

8   alleged that the Referendum was also invalid under Section 203 of the Voting Rights Act.

9          After more than a year of vigorous litigation, including an appeal to the Ninth Circuit in the

10  *Melendez/Madrigal* cases, these actions reached final disposition on March 29, 2007, when this

11  Court entered summary judgment in favor of *Melendez* Plaintiffs and *RSJOC* Plaintiffs and against

12  Defendant County of Monterey, ordering the County to submit the Initiative and Referendum to the

13  voters at the next scheduled county election on June 5, 2007. *See* March 29, 2007, Summary

14  Judgment, ¶¶ 1 & 3.   The Court ruled, as *Melendez* and *RSJOC* Plaintiffs had argued, that

15  Section 203 of the Voting Rights did not apply to privately initiated, drafted, and circulated petitions,

16  and that *Melendez* Plaintiffs and *RSJOC* Plaintiffs were therefore entitled to their requested

17  injunctions requiring the County to submit the ballot measures, in their entirety and without

18  alteration, to the voters of Monterey County at the June 5, 2007, county election.   The Court's

19  judgment also noted that, as the prevailing parties, *Melendez* Plaintiffs and *RSJOC* Plaintiffs "are

20  entitled to recover reasonable costs and fees," while specifically "reserv[ing] for post-judgment

21  consideration" upon timely request "any motion for reasonable attorneys' fees or costs by a

22  prevailing party." March 29, 2007, Summary Judgment, at 1-2.

23         Shortly after issuance of the judgment, the County filed the instant Motion to Clarify or Alter

24  Judgment, requesting that the Court modify its judgment pursuant to Federal Rule of Civil Procedure

25  59(e) by striking the word "fees" from the two sentences recognizing *Melendez* Plaintiffs' and

26  *RSJOC* Plaintiffs' entitlement "to recover reasonable costs and fees."   As is discussed below,

27  however, the County's motion fails to provide any legal or factual basis for this extraordinary relief,

28  and this Court should deny the Motion in its entirety.

4

I.    THE COURT'S RULING THAT *MELENDEZ* PLAINTIFFS AND *RSJOC* PLAINTIFFS ARE ENTITLED TO RECOVER THEIR ATTORNEYS' FEES WAS PROCEDURALLY PROPER

As an initial gambit, the County asks this Court to "clarify" that the word "fees" in the portions of its judgment declaring that the *Melendez* Plaintiffs and *RSJOC* Plaintiffs "are entitled to recover reasonable costs and fees" was not meant to include attorneys' fees.    County's Memorandum, at 4.  The County asserts that it would be "manifestly unjust" and procedurally improper for the Court to have decided the issue of Plaintiffs' entitlement to attorneys' fees without the filing of a motion and any briefing or argument on that issue.  *Ibid.*

While Plaintiffs are obviously not in a position to know what the Court's subjective intent was in declaring that they are entitled to recover their "reasonable costs *and fees*," Plaintiffs must point out that the County's suggestion that the word "fees" was perhaps not meant to include *attorneys' fees* is certainly at odds with the actual language of the Court's judgment.  Indeed, a substantial body of law has developed delineating precisely what types of expenditures qualify as recoverable "costs," on the one hand, and "attorneys' fees," on the other.  Particularly in light of the well-established distinction between these two terms, using both the words "costs" *and* "fees" would be quite an unusual way to refer *only* to costs.

More substantively, there is nothing "premature" or "inappropriate" in the Court's including a declaration regarding Plaintiffs' entitlement to recover their attorneys' fees in the judgment on the merits.  Courts are not required to wait for a written motion to be filed before ruling on a prevailing party's *entitlement* to fees; indeed, in circumstances — as is the case here — in which a party is entitled to fees as a direct consequence of prevailing on the merits, it would be judicially inefficient to do so.[2]  Rather, Rule 54 of the Federal Rules of Civil Procedure and the relevant case law require

---

[2]Including an explicit determination regarding the prevailing party's entitlement to fees in the judgment not only obviates the need for a separate judicial proceeding on that issue, but in many instances will help to facilitate an out-of-court resolution of the entire fee issue.  In the great majority of cases, the parties are able to reach a settlement regarding the reasonable amount of fees incurred.  By determining the entitlement issue prior to the filing of a formal motion for an award of attorneys' fees (which would otherwise typically require resolution of both the *entitlement* and *amount* issues), the Court's judgment removes that issue from further dispute and paves the way for the parties to reach a settlement over the amount of fees to be awarded, saving both the litigants' and the courts' resources for more pressing issues.

5

1    only that a party who is entitled to attorneys' fees must file a motion justifying the *amount* of fees

2    being claimed, which is precisely the procedure that this Court followed — ordering that *Melendez*

3    and *RSJOC* Plaintiffs are entitled to recover their attorneys' fees and costs and that they may

4    therefore file a post-judgment motion requesting an award for the reasonable amount of those fees

5    and costs.[3] *See* March 29, 2007, Summary Judgment, at 2.

6         Just as courts may award a prevailing party its litigation *costs* as a matter of course in the

7    underlying judgment on the merits, they likewise can *and frequently do* summarily declare a

8    prevailing party's entitlement to attorneys' fees when, as here, that determination flows directly from

9    the statutory requirements.   Both the federal district courts in California and the Ninth Circuit

10   routinely follow this practice.  In *Williams v. Alioto*, 625 F.2d 845 (9th Cir. 1980), *cert. denied*, 450

11   U.S. 1012 (1981), for instance, the district court ruled in favor of the plaintiffs in a civil rights action

12   and, without awaiting a fee motion, "awarded the fees . . . as part of its original order, with the

13   amount to be set later." *Id.* at 848.  The statutory basis for that fee award was 42 U.S.C. § 1988,

14   which is construed similarly to 42 U.S.C. § 1973*l*(e) because the two provisions contain nearly

15

16   _____

17        [3]Indeed, Civil Local Rule 54-6, which sets forth the form of such a motion for attorneys' fees,
     requires a party seeking fees to submit documentation pertaining to the *amount* of the attorneys' fees
18   being requested but does not require any information regarding that party's *entitlement* to fees. *See*
     Civil L.R. 54-6(b) (requiring a "statement of services rendered by each person for whose services
19   fees are claimed together with a summary of the time spent by each person, and a statement
     describing the manner in which time records were maintained.")

20        Nor does Rule 54 require that courts issue findings of facts and conclusions of law as to a
     party's entitlement to fees, as the County erroneously asserts.  The findings and conclusions that
21   courts generally make on attorneys' fees motions relate only to the *amount* of fees.  To this end, the
     Ninth Circuit has adopted a multi-factor test under federal fee-shifting statutes "to give trial courts
22   a concrete framework on which to hang attorneys' fees cases," *Jordan v. Multnomah County*, 815
     F.2d 1258, 1264 n.11 (9th Cir. 1987), and each of the factors that trial courts must consider relate
23   *only to the amount of fees* to be awarded. *See, e.g., Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67,
     70 (9th Cir. 1975) (establishing the *Kerr* factors for considering attorneys' fees awards, which
24   include "(1) the time and labor required, (2) the novelty and difficulty of the questions involved,
     (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment
25   by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or
     contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved
26   and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the
     'undesirability' of the case, (11) the nature and length of the professional relationship with the client,
27   and (12) awards in similar cases"); *see also Williams*, 625 F.2d at 849 (finding no abuse of discretion
     in a fee award when district court "adequately considered the requisite factors as set forth by this
28   Court in *Kerr v. Screen Extras Guild, Inc.*").

                                              6

_____

*In re County of Monterey Initiative Matter; In re Monterey Referendum*
Case Nos. C 06-01730 JW; C 06-02369
OPPOSITION TO DEFENDANT'S MOTION TO CLARIFY OR ALTER JUDGMENT

1   identical language. *E.g.*, *Hastert v. Illinois State Bd. of Election Comm'rs*, 28 F.3d 1430, 1439 n.10
2   (7th Cir. 1993). As ordered by the district court in *Williams*, the prevailing parties subsequently
3   "moved the district court to set the amount of the attorneys' fees," which ultimately resulted in a fee
4   award of $45,000. 625 F.2d at 847. On appeal, the Ninth Circuit approved the propriety of the
5   district court's award of fees in its original order and affirmed the entire amount of the fee award.
6   *Id.* at 849.

7        The Ninth Circuit itself also rules on a party's entitlement to attorneys' fees under a similar
8   summary procedure, without requiring a separate motion. For example, in *Gomez v. City of*
9   *Watsonville*, 863 F.2d 1407 (9th Cir. 1988), the Ninth Circuit reversed the district court's judgment
10  against the civil rights plaintiffs and instead entered judgment in their favor. The court then reversed
11  the district court's award of costs to the defendants, and summarily awarded the plaintiffs both their
12  costs *and the reasonable attorneys' fees* they had incurred for the entire action pursuant to 42 U.S.C.
13  §§ 1973*l*(e) and 1988.[4] The case was remanded to the district court solely for determination of the
14  appropriate *amount* of those fees. *Gomez*, 863 F.2d at 1419. The Ninth Circuit explained that its
15  fee award to the plaintiffs was fully justified because they were "***clearly*** the prevailing party in this
16  litigation and no special circumstances prevent an award in this case." *Id.* (emphasis added).

17       In the present case, then, this Court's judgment declaring that *Melendez* Plaintiffs and *RSJOC*
18  Plaintiffs are entitled to recover their costs and fees is perfectly proper and well supported by the law.
19  There is simply no question that Plaintiffs are the prevailing parties in this action, and as such, that
20  they are entitled to an award of their reasonable attorneys' fees. As is more fully discussed below,
21  both California's "private attorney general statute," California Code of Civil Procedure
22  section 1021.5, and the federal attorneys' fees provisions of 42 U.S.C. § 1973*l* provide clear bases
23  for the fee award in the present action. In fact, fee awards under each of these statutes are
24  ***mandatory*** under the circumstances presented here. As California courts have long held, when
25  section 1021.5's statutory criteria are met, the trial court has *no discretion* to deny fees. *See, e.g.*,

26

27      [4]Although the plaintiffs-appellants had included a "request" for attorneys' fees and costs for
    the appeal, they had not requested or moved for an award of their fees and costs incurred in the
28  district court litigation. *Gomez*, 863 F.2d at 1419.

*In re County of Monterey Initiative Matter; In re Monterey Referendum*
Case Nos. C 06-01730 JW; C 06-02369
OPPOSITION TO DEFENDANT'S MOTION TO CLARIFY OR ALTER JUDGMENT

1    *City of Sacramento v. Drew*, 207 Cal. App. 3d 1287, 1297 & n.3 (1989); *see also Lyons v. Chinese*

2    *Hospital Ass'n*, 136 Cal. App. 4th 1331, 1344-45 (2006).  Federal courts have similarly interpreted

3    section 1973*l to require* a fee award to prevailing parties in actions to enforce the voting guarantees

4    of the Fourteenth and Fifteenth Amendments.  *See, e.g., Hastert v. Illinois State Bd. of Election*

5    *Comm'rs, supra*, 28 F.3d at 1439 (although statutes like section 1973*l*(e) "commit fee award to the

6    district court's discretion, Congress has nevertheless made clear that prevailing parties 'should

7    ordinarily recover an attorney's fee unless special circumstances would render such an award

8    unjust.'"); *Eddy v. Colonial Life Ins. Co. of Am.*, 59 F.3d 201, 204 (D.C. Cir. 1995) (case law

9    provides for "the presumptive award of attorneys' fees to prevailing parties in light of legislative

10   history unequivocally endorsing such a presumption.").

11   **II.    ON THE MERITS, *MELENDEZ* PLAINTIFFS AND *RSJOC* PLAINTIFFS ARE ENTITLED**
          **TO THEIR ATTORNEYS' FEES UNDER BOTH STATE AND FEDERAL FEE-SHIFTING**
12        **STATUTES**

13        **A.    CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1021.5**
                 **REQUIRES AWARDING *MELENDEZ* PLAINTIFFS AND *RSJOC***
14               **PLAINTIFFS THEIR ATTORNEYS' FEES**

15        California Code of Civil Procedure section 1021.5 authorizes an award of attorneys' fees to

16   prevailing parties when (1) the litigation enforces an important right affecting the public interest,

17   (2) a significant benefit was conferred on a large class of persons, and (3) the necessity and financial

18   burden are such that an award of attorneys' fees is appropriate.[5]  Cal. Civ. Proc. Code § 1021.5; *see*

19   *also Keith v. Volpe*, 858 F.2d 467, 486 (9th Cir. 1988).  *Melendez* Plaintiffs and *RSJOC* Plaintiffs

20   — who explicitly pled section 1021.5 in their complaints as a basis for an award of their attorneys'

21   fees — clearly qualify for such a fee award here.  By successfully litigating their state law causes of

22   action to obtain injunctions requiring the County to submit the Initiative and Referendum measures

23   to a vote of the people, *Melendez* Plaintiffs and *RSJOC* Plaintiffs protected the constitutional rights

24   of *all* the Initiative's and Referendum's supporters and afforded *all* the voters of Monterey County

25   the opportunity to cast a vote on two matters of significant local concern, thereby conferring a

26

27        [5]The final statutory factor under section 1021.5 — whether such fees should be paid out of
     the recovery, if any — is inapplicable here, since *Melendez* Plantiffs and *RSJOC* Plaintiffs had no
28   monetary recovery.  *See Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 318 n.5 (1983).

1    significant benefit on the general public and satisfying the criteria of the private attorney general

2    statute.  *See, e.g., Wal-Mart Real Estate Business Trust v. City Council of the City of San Marcos*,

3    132 Cal. App. 4th 614, 623 (2005) ("The electorate's right to a referendum vote is . . . an important

4    right under section 1021.5, and [real parties'] opposition to [the] petition to thwart the vote, or at

5    least delay it, protected the rights of thousands of registered voters to proceed in accordance with

6    state law."); *Citizens Against Rent Control v. City of Berkeley*, 181 Cal. App. 3d 213, 229 (1986)

7    ("The fundamental constitutional stature of the rights vindicated here establishes beyond question

8    that an 'important right' has been enforced.").[6]

9           Notably, the County does not dispute that, as a substantive matter, *Melendez* Plaintiffs and

10   *RSJOC* Plaintiffs satisfy the statutory criteria for a fee award under section 1021.5.  The County

11   instead argues that "the opportunities to use § 1021.5 are severely limited" in federal court because

12   "[i]n cases within the district courts' federal question jurisdiction, state fee shifting statutes <u>generally</u>

13   <u>are inapplicable</u>."  County's Memorandum, at 7 (citing 10 Moore's Federal Practice § 54.171[5] (3d

14   Ed.).  But the *Melendez* and *RSJOC* actions are ***not*** before this Court based on federal question

15   jurisdiction.  Rather, both the *Melendez* action (Case No. C 06-01730) and the *RSJOC* action (Case

16   No. C 06-02369) were originally filed in Monterey County Superior Court alleging ***violations of***

17   ***state law***, and they were each removed to federal court *by the County* based upon 28 U.S.C.

18   § 1443(2), a rarely-used removal statute that applies when a state official is "refusing to do any act

19   on the ground that it would be inconsistent with" a federal law providing for equal rights.  Thus,

20   these actions and the relief sought therein (and granted by this Court) are based upon state-law

21   claims.

22   _____

23          [6]Plaintiffs also readily satisfy the necessity and financial burden factors.  Without the
     participation of *Melendez* Plaintiffs and *RSJOC* Plaintiffs, *no arguments* would have been presented

24   to this Court supporting the validity of the Initiative and Referendum, and *no party* would have
     defended the Monterey County citizens' constitutional and statutory rights.  It was therefore

25   absolutely necessary for Plaintiffs to initiate their lawsuits and to oppose the *Madrigal* and *Rangel*
     actions in order to vindicate their constitutional initiative and referendum rights.  It is further

26   undisputed that, as a matter of law, Plaintiffs could not have gained financially from the outcome
     of these lawsuits, thus satisfying the "financial burden" factor.  *See, e.g., Citizens Against Rent*

27   *Control v. City of Berkeley, supra*, 181 Cal. App. 3d at 230 (any potential financial benefit that could
     result from a vote on a ballot measure is "at least once removed from the results of the litigation"

28   over the financing of the campaign).

1    Under these circumstances, in which a party prevails on a state claim that would entitle it to

2    an award of attorneys' fees under section 1021.5 in state court, ***federal courts are required to apply***

3    ***state law*** and to award fees under that statute. *See, e.g., Bouman v. Block*, 940 F.2d 1211, 1237 (9th

4    Cir. 1991) ("When a plaintiff proceeds under multiple theories and prevails on [state law] claims,

5    [plaintiff] is entitled to attorneys' fees on [those state law] claims."). In *Keith v. Volpe*, 858 F.2d 467

6    (9th Cir. 1988), for example, the Ninth Circuit found that the plaintiff there was entitled to attorneys'

7    fees under section 1021.5 for "successfully litigating his state law claims" of racial discrimination.

8    *Id.* at 485-86. As the district court held, "[b]ecause plaintiffs' relief was based partially on state law,

9    the court must . . . consider their entitlement to attorneys' fees under relevant state law." *Keith v.*

10   *Volpe*, 644 F. Supp. 1317, 1320-21 (C.D. Cal. 1986). Indeed, the court ultimately awarded the

11   plaintiff fees under *both* state and federal law, finding that he had also prevailed on his federal law

12   claim. *See* 858 F.2d at 486-87.

13   Similarly, the court in *Mangold v. California Public Utilities Commission*, 67 F.3d 1470 (9th

14   Cir. 1995), awarded fees to the plaintiffs under section 1021.5 because they had prevailed on their

15   California Fair Employment and Housing Act claims. The court recognized that "[e]xisting Ninth

16   Circuit precedent has applied state law in determining not only the right to fees, but also in the

17   method of calculating the fees." *Id.* at 1478; *see also Crommie v. California Public Utilities*

18   *Commission*, 840 F. Supp. 719, 721 (N.D. Cal. 1994) ("Whether a plaintiff is entitled to an award

19   of attorneys' fees is a question of substantive law and therefore is governed by state law."). Finding

20   that the "method of calculating a fee is an inherent part of the substantive right to the fee itself, and

21   a state right to an attorneys' fee reflects a substantive policy of the state," the Ninth Circuit thus

22   affirmed the district court's application of state law to enhance the fee award by a multiplier of 2.0.

23   *Mangold*, 67 F.3d at 1478-79. That the case was a federal action that *also* involved federal claims

24   did not limit the court's authority to award fees under section 1021.5 for plaintiffs' successful

25   litigation of their state law causes of action. To the contrary, the district court in *Mangold* explicitly

26   rejected the defendants' "novel argument that plaintiffs only prevailed on their federal claims and

27   thus only availed themselves of federal remedies." *Crommie*, 840 F. Supp. at 722.

28

10

1        Indeed, the key Supreme Court decision that the County itself relies upon confirms this

2  Court's obligation to award *Melendez* Plaintiffs and *RSJOC* Plaintiffs their fees under section 1021.5

3  in the circumstances of a case, like the present actions, that has been removed from state to federal

4  court.  In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975), the Supreme

5  Court held that "a state statute requiring an award of attorneys' fees should be applied in a case

6  removed from the state courts to the federal courts" because "[i]t is clear that it is the policy of the

7  state to allow plaintiffs to recover an attorney's fee in certain cases, and it has made that policy

8  effective by making the allowance of the fee mandatory on its courts in those cases.  It would be at

9  least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal

10  of the case to the federal courts."[7]  *Id.* at 260 n.31 (quoting *People of Sioux County v. National*

11  *Surety Co.*, 276 U.S. 238 (1928)).[8]  Following *Alyeska*, courts therefore routinely award attorneys'

12  fees to prevailing parties under state fee-shifting statutes in cases that have been removed from state

13  to federal court.  *See, e.g., Mangold, supra*, 67 F.3d at 1472, 1478-79 (affirming award of $724,380

14  in attorneys' fees pursuant to section 1021.5 in consolidated cases that were removed from state to

---

[7]It would be patently unfair to allow the County to defeat Plaintiffs' right to fees under section 1021.5 — a right that would clearly be available to them in state court — simply by removing these actions to federal court.  Indeed, one of the bases for this Court's decision to issue an injunction in the *Melendez* action instead of remanding it to state court was that the "remedies prayed for in the *Melendez* Plaintiffs' state court Complaint do not differ from the remedies the Court will provide . . . ."  March 29, 2007, Summary Judgment, at 16.

[8]Contrary to the implication in the County's Memorandum, the principle articulated in *Alyeska Pipeline* — that "a state statute requiring an award of attorneys' fees should be applied in a case removed from the state courts to the federal courts" — is not limited to cases removed only on diversity grounds.  Rather, the relevant inquiry is simply whether the party claiming fees prevailed on a state law claim and, hence, whether the policy of the state to award fees in order to encourage the successful prosecution of such claims must be honored by the federal courts.  As the Supreme Court observed, "[i]t would be at least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal of the case to the federal courts."  *Id.* at 260 n.31.

      Similarly, the Eighth Circuit's decision in *Control Data Corp. v. S.C.S.C Corp*, 53 F.3d 930 (8th Cir. 1995) — also relied upon by the County — fully supports the fee award to Plaintiffs under section 1021.5 in the instant action.  The Court of Appeals in *Control Data Corp.* affirmed the district court's award of "reasonable attorney fees and witness fees" under a state statute in a case that had raised both federal and state claims.  *Id.* at 938.  Even though the federal law at issue there did not authorize a fee award, the court of appeals held that the federal district court's award of attorneys' fees under the state law was justified because the plaintiff had partially prevailed on both its state and federal law claims.  *Id.* at 938-39.

---

1  federal court); *Ackerman v. Western Elec. Co.*, 860 F.2d 1514, 1520 (9th Cir. 1988) (upholding fee

2  award under California fee-shifting statute in handicapped discrimination case removed from state

3  to federal court).

4      A fee award under section 1021.5 is thus fully warranted here, as *Melendez* Plaintiffs and

5  *RSJOC* Plaintiffs each prevailed on their state law claims to compel the County Defendants to submit

6  the Initiative and Referendum to a vote of the people.  In the *Melendez* and *RSJOC* Complaints,

7  Plaintiffs alleged that the County had violated its mandatory and ministerial duties under the

8  California Constitution and Elections Code by refusing to submit the duly qualified Initiative and

9  Referendum measures to a vote of the electorate, *see, e.g., Melendez* Complaint, ¶¶ 16-20 (citing

10  Cal. Const., art. II, § 11 and Cal. Elec. Code, § 9118); *RSJOC* Complaint, ¶¶ 18-20 (citing Cal.

11  Const., art. II, § 11 and Cal. Elec. Code, § 9145).  Based upon these state law violations, the

12  Complaints asserted causes of action for injunctive relief requiring the County to place the two

13  measures on the election ballot.  *Melendez* Complaint, ¶¶ 27-28; *RSJOC* Complaint, ¶¶ 27-28.[9]

14      This Court granted the requested injunctions in its March 29, 2007, Summary Judgment,

15  finding that the Voting Rights Act did not require the initiative and referendum petitions to be

16  circulated in Spanish as well as English, and ruling that the County thus had a mandatory and

17  ministerial duty under state law to submit the two measures to a vote.  *Cf. In re County of Monterey*

18  *Initiative Matter*, 427 F. Supp. 2d 958, 964 (N.D. Cal. 2006) ("under the California Elections Code,

19  the County of Monterey has a ministerial duty to place a properly notice and circulated initiative on

20  the ballot for the next general election").  As the prevailing parties on their state law claims,

21  therefore, *Melendez* Plaintiffs and *RSJOC* Plaintiffs are entitled to an award of reasonable attorneys'

22

23

24      [9]While the question of whether the Voting Rights Act applied to the Initiative and
Referendum was certainly a significant issue in this litigation — one that was raised as a *defense* by
25  the County for its refusal to submit the measures to a vote of the people as required by state law —
this does not transform the state law causes of action pled in the *Melendez* and *RSJOC* Complaints
26  into purely federal claims, as the County seems to imply.  County's Memorandum, at 7 ("the only
issue was a federal question issue, the Federal Voting Rights Act.").  Moreover, at least in the
27  *Melendez* case, the County initially claimed that its refusal to place the Initiative on the ballot was
justified on several state-law grounds — a position that the County subsequently abandoned after
28  those issues had been briefed in connection with Plaintiffs' initial motion for injunctive relief.

1    fees under section 1021.5.[10]

2    **B.    THE FEDERAL ATTORNEYS' FEES PROVISION OF 42 U.S.C. § 1973*L***
          **PROVIDES AN ADDITIONAL GROUND FOR AWARDING *MELENDEZ***
3         **PLAINTIFFS AND *RSJOC* PLAINTIFFS THEIR ATTORNEYS' FEES**

4            This Court's judgment that *Melendez* Plaintiffs and *RSJOC* Plaintiffs are entitled to recover

5    their attorneys' fees is additionally supported by 42 U.S.C. § 1973*l*, which provides in pertinent part:

6            "In any action or proceeding to enforce the voting guarantees of the fourteenth
             or fifteenth amendment, the court, in its discretion, may allow the prevailing party,
7            other than the United States, a reasonable attorney's fees, reasonable expert fees, and
             other reasonable litigation expenses as part of the costs." 42 U.S.C. § 1973*l*(e).
8

9    Courts have recognized that under section 1973*l*, a "prevailing party in an action to vindicate rights

10   protected by . . . the Fourteenth and Fifteenth Amendments should ordinarily recover an attorney's

11   fee unless special circumstances would render such an award unjust." *King v. Illinois State Board*

12   _____

13       [10]The County suggests that section 1021.5 is somehow preempted by the federal attorneys'
     fees provision of 42 U.S.C. § 1973*l* (even though the County at the same time argues that
14   section 1973*l* does not apply here). County's Memorandum, at 8. The County can muster no
     authority whatsoever to support this preemption argument, and the cases it cites are completely
15   inapposite. *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329 (9th Cir. 1995), vacated
     an award of fees to the defendant under a state statute because the appellate court found that the
16   defendant had not prevailed on the state law claim that might otherwise have entitled it to an award
     of attorneys' fees. *Id.* at 1336. The court also noted that even if the defendants had prevailed on the
17   state law claim, a fee award would have been inappropriate because it would contravene the purposes
     of the *state law*; the court's ruling had *absolutely nothing* to do with federal preemption. *Id.* The
18   decision in *Texas A&M Research Foundation v. Magna Transportation, Inc.*, 338 F.3d 394 (5th Cir.
     2003), likewise has no bearing on the question of whether section 1021.5 fees are preempted by
19   federal law. The court of appeals in that case merely held that a state statute providing for attorneys'
     fees in certain contract actions does not apply to a federal *maritime* contract dispute litigated in
20   federal court, noting the "strong interest in maintaining uniformity in maritime law" and "the general
     rule of maritime law that 'parties pay their own fees absent bad faith or oppressive litigation
21   tactics.'" *Id.* at 406.

22       Indeed, contrary to the County's argument, as is discussed in the text above, federal courts
     have repeatedly awarded fees to prevailing parties under section 1021.5 even when federal law did
23   not authorize — or explicitly prohibited — similar fee awards, not once mentioning any concern
     about federal preemption. *See, e.g.*, *Keith v. Volpe*, 858 F.2d at 486-87; *Control Data Corp.*, 53 F.3d
24   at 938-39 (fees denied to prevailing plaintiff under CERCLA but awarded under parallel state
     cleanup statute). As the Supreme Court has held, denying a prevailing party the attorneys' fees to
25   which it would be entitled under state law simply because fees would not be available under federal
     law would be "at least anomalous," because it would effectively thwart the state policy underlying
26   its fee-shifting statute. *Alyeska Pipeline*, 421 U.S. at 260 n.31. Thus, whether *Melendez* Plaintiffs
     and *RSJOC* Plaintiffs would *also* be entitled to recover their attorneys' fees under federal law has
27   no bearing on their entitlement to fees under section 1021.5 for prevailing on their state law claims.
     And when, as is discussed in the following section, the pertinent federal statute actually *supports* an
28   award of attorneys' fees under federal law, there is certainly no basis for claiming that a fee award
     to Plaintiffs pursuant to section 1021.5 is somehow contrary to and preempted by federal policy.

1    *of Education*, 410 F.3d 404, 413 (7th Cir. 2005) (internal quotations omitted).  As the County

2    acknowledges, "[t]he purpose of § 1973*l*(e) . . . is to ensure effective access to the judicial process

3    for persons with . . . voting rights grievances" by rewarding those "who as private attorneys general

4    take it upon *themselves* to invoke and thereby invigorate federal constitutional and statutory rights."

5    *Id*. at 412 (emphasis in original; internal quotations omitted).  To this end, the attorneys' fees

6    provision in section 1973*l* was intended to apply broadly to voting rights litigation, and it "should

7    be liberally construed to achieve the public purposes involved in the congressional enactment."

8    *Seals v. Quarterly County Court of Madison County*, 562 F.2d 390, 393 (6th Cir. 1977) (citing H.R.

9    Rep. No. 94-1558).

10        As prevailing parties in actions brought to vindicate the people's right to vote on the two

11   citizen-sponsored ballot measures, *Melendez* Plaintiffs and *RSJOC* Plaintiffs plainly qualify for an

12   attorneys' fees award under this section.  By seeking and successfully obtaining injunctions that

13   require the County to submit the Initiative and Referendum measures to a vote of the electorate, the

14   two actions brought by Plaintiffs enforced the voting guarantees of the Fourteenth Amendment to

15   the United States Constitution.  *See* 42 U.S.C. § 1973*l*(c) (defining the term "voting" as "all action

16   necessary to make a vote effective in any primary, special, or general election").

17        Although the County admits that the result of the two actions brought by Plaintiffs was

18   indeed to require that the Initiative and Referendum measures be voted upon at the June 5, 2007,

19   election, the County nevertheless argues that Plaintiffs' lawsuits did not "rectify any violation of

20   voting rights" because "[n]o such allegations are made in their petitions or other pleadings."

21   County's Memorandum, at 6.  But the determination to award fees under section 1973*l* turns not on

22   the particular words used in the petition or complaint, but rather on whether the action, *as a*

23   *substantive matter*, enforced voting rights under the Fourteenth Amendment.  In fact, as the County's

24   own authorities demonstrate, courts may award fees under section 1973*l* "even though the court

25   declines to enter judgment on [a federal voting rights] claim, so long as the plaintiff prevails on the

26   non-fee claim arising out of a 'common nucleus of operative fact.'" *Seals*, 562 F.2d at 393-94 ("This

27   action, of course, is a federal action, and does not cease to be such because relief is rendered . . . on

28   an alternative state law ground.  Congress clearly has the power in such a circumstance to authorize

1   attorney's fees as a matter of federal law, and it equally clearly has done so.").

2          The two actions brought by *Melendez* Plaintiffs and *RSJOC* Plaintiffs did indeed enforce their

3   and their fellow citizens' voting rights.  These actions were filed in response to the County's refusal

4   to place the duly qualified Initiative and Referendum measures on the ballot, thereby denying

5   Plaintiffs — and all Monterey County residents — the right to vote on those measures.  The

6   County's actions constituted an abridgment not just of Plaintiffs' voting rights under the California

7   Constitution and Elections Code, but also of their right to vote under the Fourteenth Amendment to

8   the United States Constitution.  Courts have recognized that the right to vote guaranteed by the

9   Fourteenth Amendment must be broadly construed, and courts must "vehemently protect every

10  citizen's right to vote, carefully and meticulously scrutinizing any alleged infringement."

11  *Charfauros v. Board of Elections*, 249 F.3d 941, 951 (9th Cir. 2001).  Virtually any wrongful denial

12  of the right to vote infringes the voting guarantees of the Fourteenth Amendment.  *Id.* ("[T]he

13  Fourteenth Amendment to the United States Constitution guarantees each and every person that they

14  will not be denied their fundamental rights — including the right to vote . . . .").  Indeed, courts have

15  specifically found that interference with voting rights under a state initiative process implicates the

16  Fourteenth Amendment.  *See, e.g., American Civil Liberties Union v. Lomax*, 471 F.3d 1010, 1020

17  (9th Cir. 2006) (recognizing that the Fourteenth Amendment was violated by a particular initiative

18  qualification rule).  Therefore, because the result of these two lawsuits was to vindicate the people's

19  right to vote on these ballot measures and to thereby rectify a denial of voting rights under the

20  Fourteenth Amendment, *Melendez* Plaintiffs and *RSJOC* Plaintiffs are entitled to recover their fees

21  pursuant to section 1973*l*.[11]

22          Moreover, even under the County's overly narrow and restrictive interpretation of

23  section 1973*l* — requiring an action to specifically plead a "violation of voting rights within the

24  _____

25          [11]*Campuzano v. Illinois State Board of Education*, 241 F. Supp. 2d 892 (N.D. Ill. 2003), cited
   by the County, does not require a different result.  That case holds that a defendant-intervenor may

26  not recover attorneys' fees under section 1973*l* from the *prevailing named defendants* on the ground
   that those named defendants failed to adequately defend against the lawsuit, thereby forcing

27  defendants-intervenors "to shoulder the costs and legal fees" of the defense.  *Id.* at 894-95.  The court
   in *Campuzano* explained that there is "no persuasive authority to force a prevailing but derelict

28  named defendant to pay the attorneys' fees of a defendant-intervenor under a federal fee-shifting
   statute."  *Id.*  This holding has absolutely no bearing on the present case.

1   meaning of the Voting Rights Act statute" as a prerequisite to a fee award under section 1973*l* —

2   *Melendez* Plaintiffs and *RSJOC* Plaintiffs would still qualify for such a fee award.  The *Melendez*

3   action was consolidated with *Madrigal v. County of Monterey* (Case No. 06-01407), which was

4   explicitly brought "under the Voting Rights Act of 1965, 42 U.S.C. section 1973aa-1a(c), and 42

5   U.S.C. section 1983 and 1988."  Madrigal Complaint, ¶ 1.  Similarly, the *RSJOC* action was

6   consolidated with *Rangel v. County of Monterey* (Case No. 06-02202), which was likewise brought

7   "under the Voting Rights Act of 1965, 42 U.S.C. section 1973aa-1a(c), and 42 U.S.C. section 1983

8   and 1988."  Rangel Complaint, ¶ 1.  Thus, these consolidated actions are without question "action[s]

9   or proceeding[s] to enforce the voting guarantees of the fourteenth or fifteenth amendment," 42

10  U.S.C. § 1973*l*(e), and as "the prevailing party, other than the United States," *ibid.*, both *Melendez*

11  Plaintiffs and *RSJOC* Plaintffs are entitled to recover their reasonable attorneys' fees under the plain

12  terms of that statute.

**CONCLUSION**

13

14          For all the foregoing reasons, *Melendez* Plaintiffs and *RSJOC* Plaintiffs respectfully request

15  that the Court deny the County's Motion to Clarify or Alter Judgment.  The Court quite properly

16  indicated in the March 29, 2007, judgment that, as a direct result of prevailing in these consolidated

17  actions, Plaintiffs were entitled to recover their reasonable costs and attorneys' fees.  As further

18  contemplated in the Court's judgment, if Plaintiffs are unable to reach an agreement with the County

19  regarding the appropriate amount of such costs and fees, they will timely submit a post-judgment

20  motion for an award of reasonable attorneys' fees and costs.  Until then, no further action by this

21  Court is needed or warranted.

22

23  DATE: April 30, 2007                    Respectfully submitted,

24                                          STRUMWASSER & WOOCHER LLP
                                            Fredric D. Woocher
25                                          Michael J. Strumwasser
                                            Bryce A. Gee
26

27                                          By _____/s/_____
                                                   Fredric D. Woocher
28
                                            *Attorneys for Plaintiffs William Melendez, et al. and
                                            Plaintiffs Rancho San Juan Opposition Coalition, et al.*
                                                            16