1  FREDRIC D. WOOCHER (SBN 96689)
   MICHAEL J. STRUMWASSER (SBN 58413)
2  BRYCE A. GEE (SBN 222700)
   STRUMWASSER & WOOCHER LLP
3  100 Wilshire Boulevard, Suite 1900
   Santa Monica, California  90401
4  Telephone:     (310) 576-1233
   Facsimile:     (310) 319-0156
5  E-mail:  fwoocher@strumwooch.com
6
   J. WILLIAM YEATES (SBN 84343)
7  KEITH G.WAGNER (SBN 210042)
   JASON R. FLANDERS (SBN 238007)
8  LAW OFFICE OF J. WILLIAM YEATES
   3400 Cottage Way, Suite K
9  Sacramento, CA 95825
   Telephone:     (916) 609-5000
10 Facsimile:     (916) 609-5001
   E-mail: byeates@enviroqualitylaw.com
11
12 *Attorneys for Plaintiffs William Melendez, et al.*
   *and Plaintiffs Ranch San Juan Opposition Coalition, et al.*
13

14                UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16

17

18  IN RE COUNTY OF MONTEREY INITIATIVE          CASE NOS.   C 06-01730 JW
    MATTER,                                                  C 06-02369 JW
19
20  and                                          CONSOLIDATED REPLY BRIEF IN
                                                 SUPPORT OF PLAINTIFFS
21  IN RE MONTEREY REFERENDUM,                   MELENDEZ ET AL.'S AND
                                                 PLAINTIFFS RSJOC ET AL.'S
22                                               MOTIONS FOR AN AWARD OF
                                                 ATTORNEYS' FEES AND COSTS
23

24                                               Date:   October 22, 2007
                                                 Time:   9:00 a.m.
25                                               Judge:  Hon. James Ware
                                                 Ctrm:   8
26

27

28

1

**CONTENTS**

2  TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

3  INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5
   I.    THE COURT SHOULD REJECT DEFENDANT'S IMPROPER ATTEMPT TO RE-LITIGATE THE
6        COURT'S PREVIOUS RULINGS THAT "AS PREVAILING PARTIES, PLAINTIFFS ARE
         ENTITLED TO REASONABLE FEES AND COSTS"  . . . . . . . . . . . . . . . . . . . . . . . . . . 2
7
8  II.    DEFENDANTS' REQUEST TO REDUCE THE FEE AWARDS ARE WITHOUT MERIT AND
         SHOULD BE REJECTED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
9
          A.    COURTS NEED NOT, AND SHOULD NOT, REDUCE FEE AWARDS
10               SIMPLY BECAUSE COUNSEL "BLOCKED BILLED" THEIR TIME
                 RECORDS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
11
          B.    THE HOURLY RATES REQUESTED BY PLAINTIFFS ARE FULLY
12               JUSTIFIED AND REASONABLE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

13  III.   PLAINTIFFS ARE ENTITLED TO A MULTIPLIER ADJUSTMENT TO THE LODESTAR  . . . . . . 19

14  IV.    PLAINTIFFS' LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE FULLY
15         COMPENSATED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

16  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

17

18

19

20

21

22

23

24

25

26

27

28

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

# TABLE OF AUTHORITIES

## Federal Cases

*Ackerman v. Western Elec. Co.*, 860 F.2d 1514 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Air Transport Ass'n of Canada v. Federal Aviation Admin.*, 156 F.3d 1329
    (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975) . . . . . . . . . . . . . . . . 22

*Bauer v. Sampson*, 261 F.3d 775 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bouman v. Block*, 940 F.2d 1211 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and
    Human Services*, 532 U.S. 598 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cabrales v. County of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 8

*Charfauros v. Board of Elections*, 249 F.3d 941 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 7

*Chinese for Affirmative Action v. Leguennec*, 580 F.2d 1006 (9th Cir.1978) . . . . . . . . . . . . . . 7

*Comite De Jornaleros De Redondo Beach v. City of Redondo Beach*, No.04-9396,
    2006 WL 4081215 (C.D. Cal. Dec. 12, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 23

*Control Data Corp. v. S.C.S.C Corp*, 53 F.3d 930 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 22

*Crommie v. California Public Utilities Commission*, 840 F. Supp. 719
    (N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992) . . . . . . . . . . . . . 9, 14

*Democratic Party of Wash. State v. Reed*, 388 F.3d 1281 (9th Cir. 2004) . . . . . . . . . . . . . . . . 6

*Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 10

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*George v. Bay Area Rapid Transit Dist.*, No. 00-2206, 2007 WL 2778784
    (N.D. Cal. Sept. 21, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hastert v. Illinois State Bd. of Election Comm'rs*, 28 F.3d 1430 (7th Cir. 1993) . . . . . . . . . . . 7

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

ii

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*In re County of Monterey Initiative Matter*, Nos. 06-01730, 06-02369,
   2007 WL 1455869 (N.D. Cal. May 17, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Keith v. Volpe*, 644 F. Supp. 1317 (C.D. Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*King v. Illinois State Board of Education*, 410 F.3d 404 (7th Cir. 2005) . . . . . . . . . . . . . . . . 6

*Lytle v. Carl*, 382 F.3d 978 (9th Cir. 2004)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Maljack Productions, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881
   (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mangold v. California Public Utilities Commission*, 67 F.3d 1470
   (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91
   (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*N.A.A.C.P. v. City of Richmond*, 743 F.2d 1346 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . 8

*National Trust for Historic Preservation v. Corps of Engineers*, 570 F. Supp. 465
   (S.D. Ohio 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968) . . . . . . . . . . . . . . . . . . . . . . . 6

*Oberfelder v. City of Petaluma*, No. 98-1470, 2002 WL 472308
   (N.D. Cal. Jan. 29, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*People of Sioux County v. National Surety Co.*, 276 U.S. 238 (1928)  . . . . . . . . . . . . . . . . . . 22

*Teitelbaum v. Sorenson*, 648 F.2d 1248 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

*Welch v. Metropolitan Life Insurance Co.*, 480 F.3d 942 (9th Cir. 2007) . . . . . . . . . . . . . . . 11

**State Cases**

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Horsford v. Board of Trustees of California State University*, 132 Cal. App. 4th 359
   (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24

**Docketed Cases**

*Melendez v. Board of Supervisors*, Case No. 06-01730 . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    *RSJOC v. Board of Supervisors*, Case No. 06-02369 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

2

3                                          **Federal Statutes**

4    28 U.S.C. § 1443(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

5

6    42 U.S.C. § 1973*l* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

    42 U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7

8                                             **State Statutes**

    Cal. Civ. Proc. Code § 1021.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

**INTRODUCTION**

1

2       Defendant County of Monterey's Opposition to Plaintiffs' Motions for Award of Attorneys'

3   Fees and Costs is premised upon an incorrect factual characterization of the County's position during

4   the extended litigation of these consolidated cases and a fundamental misunderstanding of the

5   rationale underlying the fee-shifting statutes that mandate the award of fees in these cases.

6   According to the County, Plaintiffs should receive "at most a nominal reward" [sic] because the

7   County was "correctly following the law" throughout this litigation, and it should not now be

8   "punished" simply because it "guessed wrong" by not anticipating that the Ninth Circuit would

9   reverse the original panel decision in *Padilla v. Lever*.

10       In addition to impermissibly attempting to re-argue — this time under the guise of claimed

11  "special circumstances" — this Court's previous rulings that have already *twice* awarded Plaintiffs

12  their reasonable costs and attorneys' fees in these actions, the County's revisionist recounting of its

13  position in these cases is simply not supported by the record. This litigation was instituted by

14  Plaintiffs when the Monterey County Board of Supervisors refused to place their qualified initiative

15  on the ballot because the measure allegedly violated *state law* requirements for a local land use

16  initiative; it was only after Plaintiffs sued in state court to compel the submission of the initiative to

17  the voters that the County *removed* the action to this Court, contending that the Voting Rights Act

18  prohibited the initiative petitions from being circulated only in English. During the course of this

19  litigation, the County did not merely "comply" with the *Padilla* panel's original opinion — which

20  explicitly applied only to *recall* petitions — but it affirmatively argued for an *extension* of the

21  panel's decision to cover *initiative* and *referendum* petitions, an unprecedented position that had

22  been rejected by two Circuit Courts of Appeals almost 20 years ago. And even after the Ninth

23  Circuit resoundingly *reversed* the *Padilla* panel's decision in its 14-1 en banc opinion, the County

24  *continued* to assert that the Voting Rights Act should nevertheless be interpreted to prohibit the

25  submission of the initiative and referendum measures in these cases to Monterey County's voters,

26  necessitating entry of an injunction from this Court compelling the County to place the measures on

27  the June 2007 ballot. In short, the County was far from an unwilling defendant in these cases; it did

28  not merely "leave it to this Court" to determine *Padilla*'s applicability to initiative and referendum

1

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    petitions; and it was not the "change in law" from the *Padilla* en banc decision that led the County

2    to finally submit the initiative and referendum to the electorate, but this Court's judgment and order

3    mandating that the County do so.

4         More fundamentally, even if the County's characterization of its position during the course

5    of this litigation were correct, it would provide no basis for finding "special circumstances" or

6    otherwise denying Plaintiffs the full attorney fee award to which they are entitled.  One would hope

7    that in *every case*, the governmental defendant has been attempting in good faith to "comply with

8    the law" as it interprets it, or even as the district court may have interpreted it.  Litigation *by*

9    *definition* involves a dispute between two (or more) parties, each of whom believes in good faith that

10   its interpretation of the law is correct.  But as the Ninth Circuit has reiterated *time and again*, the

11   good faith of the defendant "is not a special circumstance justifying a denial of attorney's fees" (*e.g.,*

12   *Teitelbaum v. Sorenson*, 648 F.2d 1248, 1250 (9th Cir. 1981)), and the purpose of fee-shifting

13   statutes like 42 U.S.C. § 1973*l* and California Code of Civil Procedure § 1021.5 is not to "punish"

14   the defendant for not complying with the law.  Rather, the purpose of these statutes is to encourage

15   and provide the financial means for parties like the Plaintiffs in these cases to enforce their

16   constitutional and voting rights in court by guaranteeing that their attorneys will be *fully*

17   *compensated* for their efforts if they prevail in the litigation.  Because that is exactly what counsel

18   for Plaintiffs achieved in these cases, Plaintiffs' motions for an award of attorneys' fees and costs

19   should be granted in the full amount requested.[1]

20   **I.    THE COURT SHOULD REJECT DEFENDANT'S IMPROPER ATTEMPT TO RE-LITIGATE**
          **THE COURT'S PREVIOUS RULINGS THAT "AS THE PREVAILING PARTIES,**
21        **PLAINTIFFS ARE ENTITLED TO REASONABLE FEES AND COSTS"**

22        In this Court's Summary Judgment, the Court ruled that Plaintiffs in both the Initiative

23   (*Melendez v. Board of Supervisors*, Case No. 06-01730) and the Referendum (*RSJOC v. Board of*

24   *Supervisors*, Case No. 06-02369) cases were the prevailing parties and accordingly "are entitled to

25

26        [1]In lieu of filing two separate 15-page reply briefs in support of their respective motions for
     an award of attorneys' fees and costs, Plaintiffs Melendez et al. and Plaintiffs Rancho San Juan
27   Opposition Coalition et al. are submitting this single consolidated reply brief to Defendant's
     opposition in both cases.

28

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    recover [their] reasonable costs and fees." *See* March 29, 2007, Summary Judgment, at 1-2.

2    Asserting that the Court's ruling on Plaintiffs' entitlement to attorneys' fees was "inappropriate" and

3    "manifestly unjust," Defendant County asked the Court to clarify or alter its judgment to remove the

4    Court's declaration of Plaintiffs' entitlement to fees.  County Memorandum in Support of Motion

5    to Clarify or Alter Judgment, at 4.  After full briefing, the Court reaffirmed its judgment that "as the

6    prevailing parties, Plaintiffs are entitled to reasonable fees and costs." *In re County of Monterey*

7    *Initiative Matter*, Nos. 06-01730, 06-02369, 2007 WL 1455869, at *3 (N.D. Cal. May 17, 2007).

8        Evidently still unsatisfied with the Court's rulings, the County now improperly seeks to

9    relitigate the issue of Plaintiffs' fee entitlement *yet again*.  Amazingly, the County continues to argue

10   that the Melendez Plaintiffs should not be awarded *any fees* in the Initiative case because they

11   supposedly were not the "prevailing parties," even though this Court has already *twice* ruled that they

12   were.  *See* County Opposition to Plaintiffs' Motions for Awards of Attorneys' Fees and Costs

13   ("County Opp."), at 9-10.  If the County still objected to this Court's rulings that Plaintiffs are

14   entitled to recover their costs and fees as the prevailing parties in these actions, it should have timely

15   appealed the Court's Summary Judgment or its subsequent Order Denying Motion to Clarify or Alter

16   Judgment.  For the County instead to raise this same issue again in opposing Plaintiffs' motions to

17   determine the *amount* of attorneys' fees to be awarded is wholly improper and inappropriate.

18       In any event, there is no merit to the County's rehashed argument that the *Melendez* Plaintiffs

19   were not the "prevailing parties" under the law.  The County contends that the *Melendez* Plaintiffs

20   were only "a 'catalyst' for change, e.g., one who reaches the 'sought after destination' or end result

21   of a lawsuit — or even a policy change — *without obtaining any judicial relief.*'"  County Opp., at 9

22   (quoting *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human*

23   *Services*, 532 U.S. 598, 606 (2001)) (emphasis added).[2]  But the County is plainly mistaken in

24   _____

25       [2]The County's repeated assertion that it voluntarily agreed to place the Initiative on the ballot
     "of its own accord" in response to the en banc decision in *Padilla* is another example of its
26   revisionist history of this litigation.  *See, e.g.,* County Opp., at 6; *id.* at 10.  *Well after* the en banc
     ruling in *Padilla* was issued in September 2006, the County *continued to oppose* Plaintiffs' demand
27   that it submit the Initiative to the voters and *continued to assert* its losing claim that the Voting
     Rights Act applied to initiative petitions.  For instance, in opposing Plaintiffs' motion to summarily

28

3

_____

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    arguing that Plaintiffs did not obtain any judicial relief, as there is no question that this Court — over

2    the specific objection of the County, which had asked the Court to dismiss the Initiative case as moot

3    — **granted the Melendez Plaintiffs' requested injunction** requiring the County to submit the

4    Initiative, without alteration, to the voters of the County at the June 5, 2007, county election.  *See*

5    March 29, 2007, Summary Judgment Order, at 16; Summary Judgment, at 1, ¶ 1.  Contrary to the

6    County's contention, this Court's injunction did indeed constitute a "judicially sanctioned change

7    in the legal relationship of the parties" (County Opp., at 9), because it **required** the County to submit

8    the Initiative to a vote at the June election, thereby ensuring that the County would not subsequently

9    remove the measure from the ballot, as it had done previously with the referendum.

10           The County alternatively argues that the Court should award both sets of Plaintiffs "no fees

11   at all" or "nominal" fees on the ground that "special circumstances make an award unjust."  County

12   Opp., at 5-8.  This contention, too, directly conflicts with and seeks to re-litigate the Court's previous

13   rulings, which held that Plaintiffs were entitled to recover their "**reasonable** costs and fees."  *See*

14   March 29, 2007, Summary Judgment (emphasis added); *In re County of Monterey Initiative Matter*,

15   2007 WL 1455869, at *3.  The alleged "special circumstances" that the County now argues justify

16   awarding Plaintiffs no fees or a vastly reduced fee award are *virtually the same* circumstances that

17   the County pointed to in unsuccessfully petitioning this Court to alter its judgment awarding

18   Plaintiffs their costs and fees in the first instance.  Indeed, the County admits as much in its present

19   Opposition, but seeks to avoid the summary rejection of its attempt to re-litigate the issue by

20   characterizing its current arguments as "reasons for the Court to exercise its *discretion* not to give

---

22   remand the Initiative cases following the en banc decision in *Padilla v. Lever*, the County argued that
23   "[w]hile the issue now is a closer question in view of the *en banc* panel's decision overturning the
     original *Padilla* ruling, *the County concludes that on balance the Federal Voting Rights Act tips in*
24   *favor of initiative petitions in California being subject to translation.*"  Appellees/Defendants'
     Opposition to Motion to Remand Following *En Banc* Ruling in *Padilla v. Lever* (filed Nov. 3, 2006),
25   at 4 (emphasis added); *see also id.* at 2 (arguing that the "underlying principles" of the *Padilla* en
     banc ruling "provide a basis for upholding Judge Ware's judgment in this case").  Thus, for months
26   after the en banc ruling in *Padilla*, the County tried to argue that the Ninth Circuit's decision
     supported its refusal to submit the Initiative to the voters.  It was only after the Ninth Circuit *rejected*
27   the County's argument and **granted** Plaintiffs' Motion to Remand that the County in January 2007
     suddenly "saw the light" and finally agreed to place the Initiative on the ballot.  And even then, the
28   County did not unconditionally do so, but tied the submission of the Initiative to the placement of
     its own, competing General Plan measure on the same ballot, refusing to guarantee that the Initiative
     would appear on the ballot without the competing measure.

4

---

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1  an award" to Plaintiffs, as if the Court had not already considered these same factors in rejecting the

2  County's arguments the first time around.

3       Regardless of whether the County's "special circumstances" arguments are characterized as

4  relating to Plaintiffs' entitlement to a fee award in the first instance or to the Court's exercise of

5  discretion in determining the "reasonable" amount of such an award, the County's arguments lack

6  merit and evince a fundamental misunderstanding of the law regarding attorneys' fees.  42 U.S.C.

7  § 1973*l* authorizes the courts to grant a fee award to a "prevailing party" in "any action to enforce

8  the voting guarantees of the fourteenth or fifteenth amendment."  Neither 42 U.S.C. § 1973*l* nor any

9  of the other federal fee-shifting statutes contains a "good faith" exception that precludes a fee award

10  or justifies drastically reducing an award when the losing party claims that it was merely "seeking

11  to follow the law," as the County contends in the present cases.[3]  *See* County Opp., at 7.  To the

12  _____

13     [3]The factual underpinning for the County's "special circumstances" argument — its
contention that "prior to September 26, 2006, it was the County, and not plaintiffs, who was
14  complying with the law and enforcing the Federal Voting Rights Act as interpreted by the Ninth
Circuit" (County Opp., at 6) — is again premised on a mischaracterization of the actual record in
15  these cases.  Throughout its Opposition, the County pretends that the original panel opinion in
*Padilla* conclusively established that *initiative* and *referendum* petitions in California must be
16  circulated in Spanish as well as English under the Voting Rights Act.  *See, e.g.,* County Opp., p. 7
("Until the time of the *en banc* decision, the County was in the position of following clear precedent
17  from the Ninth Circuit"); *ibid.* ("the County followed the existing law for virtually every period of
the litigation").  But the panel opinion in *Padilla* only addressed the applicability of the Voting
18  Rights Act to *recall* petitions, and it relied heavily upon the requirement under California law that
every such petition must be reviewed *and approved* by the appropriate elections official *prior* to its
19  circulation, thereby permitting the panel majority to conclude that the State "provided" the petition
under the language of the Voting Rights Act.

20     Thus, even before the Ninth Circuit, sitting en banc, withdrew and ultimately reversed the
21  panel decision in *Padilla*, there was a substantial question as to whether that decision's rationale
applied to the *initiative* and *referendum* petitions at issue in the present cases.  Plaintiffs argued —
22  based upon the plain language of section 203 of the Voting Rights Act, its legislative history, and
opinions from at least two other Circuit Courts of Appeal — that even if the original opinion in
23  *Padilla* were correctly decided with regard to recall petitions, the Act did not apply to privately
drafted and circulated initiative and referendum petitions.  The County was surely entitled to take
24  a contrary position on that issue during the course of this litigation, but it cannot pretend that in
doing so it was either "following clear precedent from the Ninth Circuit" or merely "choos[ing] to
25  obey the law" (County Opp., at 7) — especially when the Ninth Circuit and this Court ultimately
ruled that the Voting Rights Act did not justify the County's refusal to submit the initiative and
26  referendum petitions to Monterey County's voters, and that the County therefore had not "obeyed
the law."

27     Likewise, the County's attempt to cast itself as an innocent bystander "caught in a classic
28  Catch 22 situation" between "two opposing interest groups fighting over the law" (County Opp.,

5

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1   contrary, the courts are in complete agreement that a party's purported "good faith" is "not enough,

2   on its own, to warrant a finding of 'special circumstances.'" *Bauer v. Sampson*, 261 F.3d 775, 785

3   (9th Cir. 2001); *Teitelbaum v. Sorenson*, 648 F.2d 1248, 1250 (9th Cir. 1981).[4]

4       Indeed, the County's interpretation of the "special circumstances" test would create an

5   exception that would entirely swallow the rule that a prevailing plaintiff in a civil rights or voting

6   rights action "should ordinarily recover an attorney's fee."  *Bauer v. Sampson, supra*, 261 F.3d at

7   785 (quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968).  Litigation almost

8   always involves two sides who, in good faith, disagree about what the law requires.  When one side

9   prevails and is deemed to be entitled to an attorneys' fee award under a fee-shifting statute, the losing

10   party may not simply invoke its alleged good intentions to defeat the fee award.  Attorneys' fees are

11   not awarded under § 1973*l* in order to punish a losing party for pursing bad-faith arguments — that

12   is the purpose of sanctions under Rule 11 of the Federal Rules of Civil Procedure — but are instead

13   designed to "ensure effective access to the judicial process for persons with . . . voting rights

14   grievances" by compensating those "who as private attorneys general take it upon *themselves* to

15   invoke and thereby invigorate federal constitutional and statutory rights."  *King v. Illinois State*

16   *Board of Education*, 410 F.3d 404, 412 (7th Cir. 2005) (emphasis in original; internal quotations

17   omitted).  This Court has previously — and appropriately — determined that as the prevailing parties

18

19   ────────────────────

20   p. 7) is belied by the record.  The County clearly took sides in this litigation, unilaterally removing
     Plaintiffs' Initiative and Referendum measures from the ballot, and vigorously arguing to this Court

21   and to the Court of Appeals that the measures were invalid under the Voting Rights Act.  For
     example, though the County now contends that following the *Padilla* en banc decision, it "left the

22   [Referendum] decision up to the Court" (*ibid.*), in its summary judgment motion pleadings the
     County continued to strenuously argue that the Referendum petitions were subject to Section 203

23   of the Voting Rights Act and could not lawfully be submitted to the voters.  *See, e.g.*, County
     Memorandum in Support of Summary Judgment in Referendum Cases and in Support of Dismissal

24   in the Melendez Initiative Case, at 10 ("the very reasons cited by the Court of Appeals to find recall
     petitions not subject to the FVRA support its application to referendum petitions.").

25       [4]It is noteworthy that the *only case* the County relies upon to support its "special
     circumstances" argument — *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281 (9th Cir. 2004)

26   — is a case in which the Ninth Circuit emphatically **rejected** the State's attempt to apply the
     exception in order to avoid imposition of a fee award in a case in which the plaintiffs had been

27   "denied the political rights they are entitled to under our Constitution." *Id.*, at 1285; *see ibid.* ("there
     can be no question that the State fails [the 'special circumstances' test]").

28

6

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    in an action "to enforce the voting guarantees of the Fourteenth Amendment," Plaintiffs are entitled

2    to recover their attorneys' fees. *In re County of Monterey Initiative Matter*, 2007 WL 1455869, at

3    *3. There are no "special circumstances" that would make that award unjust.[5]

4         Finally, the County argues that the Court should deny all fees in the Initiative case that were

5    incurred before the *Padilla* en banc decision, on the theory that the County was merely "obey[ing]

6    the law" up to that point in time. County Opp., at 7. As mentioned above (see note 3, *supra*), the

7    factual premise underlying this contention is incorrect, for the law regarding the Voting Rights Act's

8    application to initiative and referendum petitions was actually quite uncertain even before the Ninth

9    Circuit's en banc ruling in *Padilla*. But even if the County were correct that it was only attempting

10   to enforce the law as it stood based upon the original panel opinion in *Padilla*, that would provide

11

12

13   [5]The County's argument that fees should be denied because it was the County, not Plaintiffs,
     who allegedly sought to enforce the Voting Rights Act is another attempt to reargue an issue already
14   decided by this Court. As the Court held in its Order Denying Motion to Clarify or Alter Judgment:

15          "If a hypothetical plaintiff brought a successful suit under the language
            provisions of the Voting Rights Act, it could have received attorneys' fees from the
16          County. *See, e.g., Chinese for Affirmative Action v. Leguennec*, 580 F.2d 1006, 1009
            (9th Cir.1978). Similarly, if a hypothetical plaintiff had brought such a suit and the
17          County had prevailed, the County could have recovered attorneys' fees from the
            hypothetical plaintiff. *Id.* The Court finds that this result is not altered simply
18          because the County, rather than Plaintiffs, first invoked the Voting Rights Act. When
            the County invoked the Voting Rights Act, the *Melendez* and *Rancho* actions ***became***
19          ***actions to enforce the voting guarantees of the Fourteenth Amendment.***
            Accordingly, as the prevailing parties, Plaintiffs are entitled to reasonable fees and
20          costs." *In re County of Monterey Initiative Matter*, 2007 WL 1455869, at *3
            (emphasis added).

21         By refusing to submit the Initiative and Referendum measures to a vote of the electorate, the
     County denied Plaintiffs and all Monterey County residents the right to vote on those measures —
22   an abridgment of Plaintiffs' voting rights under the Fourteenth Amendment. *Charfauros v. Board
     of Elections*, 249 F.3d 941, 951 (9th Cir. 2001) (holding that virtually any wrongful denial of the
23   right to vote infringes the voting guarantees of the Fourteenth Amendment.) Plaintiffs' lawsuits, in
     which they obtained two injunctions requiring the County to submit the measures to a vote of the
24   people, therefore clearly enforced the "voting guarantees of the Fourteenth Amendment," as this
     Court held. Indeed, by ensuring that the Voting Rights Act would be implemented in Monterey
25   County *as Congress intended it to be interpreted and applied*, Plaintiffs were "enforcing" the
     purposes and provisions of the Act just as much as the County claims it was attempting to do in this
26   litigation; the purposes of the Act are not furthered by wrongly interpreting and applying it in a
     manner that *prevents* the electorate from exercising its right to vote on a qualified initiative or
27   referendum measure. Were it not for Plaintiffs' efforts, the County would have *mis*-applied and *mis*-
     enforced the Voting Rights Act.

28

                                                  7

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1  no grounds for denying Plaintiffs a fee award for this time period.  Of course, the County can cite

2  no authority supporting its position, and for good reason, because the Ninth Circuit specifically

3  rejected a nearly identical argument in *Cabrales v. County of Los Angeles*, 935 F.2d 1050 (9th Cir.

4  1991), in which the court instead held that as long as "a plaintiff ***ultimately wins*** on a particular

5  claim, she is entitled to ***all attorney's fees reasonably expended*** in pursuing that claim . . . ."  *Id.*

6  at 1053 (emphasis added).[6]  The court in *Cabrales* refused the defendant county's request to deny

7  fees incurred in unsuccessfully opposing a Supreme Court certiorari petition, because the plaintiff

8  ultimately prevailed on that claim: "The County would have us scalpel out attorney's fees for every

9  setback, no matter how temporary, regardless of its relationship to the ultimate disposition of the

10  case.  ***This makes little sense***."  *Cabrales*, 935 F.2d at 1052 (emphasis added).  As the Supreme

11  Court has similarly held, the "result is what matters."  *Hensley v. Eckerhart*, 461 U.S. 424, 435

12  (1983); *see also N.A.A.C.P. v. City of Richmond*, 743 F.2d 1346, 1358-59 (9th Cir. 1984) (awarding

13  plaintiff attorneys' fees for trial court proceedings in which it had lost because plaintiff ultimately

14  prevailed in the litigation); *Air Transport Ass'n of Canada v. Federal Aviation Admin.*, 156 F.3d

15  1329, 1335 (D.C. Cir. 1998) (attorneys' fees awarded for unsuccessful motion for stay pending

16  appeal because the motion later contributed to the ultimate result obtained in the litigation); *National*

17  *Trust for Historic Preservation v. Corps of Engineers*, 570 F. Supp. 465, 470 (S.D. Ohio 1983)

18  (awarding fees for time spent on a never-filed motion for preliminary injunction when the time

19  expended was on an ultimately successful claim).

20       As in the above cases, because there is no question that Plaintiffs here ultimately prevailed

21  on their claims, obtaining injunctions that required the County to submit the Initiative and

22  Referendum measure to a vote, Plaintiffs are entitled to "***all attorney's fees reasonably expended***"

23  in pursuing those claims.  *Cabrales*, 935 F.2d at 1053 (emphasis added); *see also Hensley*, 461 U.S.

24  at 435 (holding that a fee award "should not be reduced simply because the plaintiff failed to prevail

26  _____

      [6]The plaintiff in *Cabrales* was awarded attorneys' fees as a prevailing party under 42 U.S.C.
27  § 1988, which is construed similarly to 42 U.S.C. § 1973*l*(e) because the two provisions contain
   nearly identical language.  *See, e.g., Hastert v. Illinois State Bd. of Election Comm'rs*, 28 F.3d 1430,
28  1439 n.10 (7th Cir. 1993).

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1   on every contention raised in the lawsuit. . . . The result is what matters").

2   **II.    DEFENDANT'S REQUEST TO REDUCE PLAINTIFFS' FEE AWARDS ARE WITHOUT**
3   **MERIT AND SHOULD BE REJECTED**

4           Defendant's objections to the *amount* of fees requested by Plaintiffs are no more meritorious

5   than their objections to Plaintiffs' *entitlement* to fee awards in these cases.  In support of Plaintiffs'

6   fee motions, counsel produced over 50 pages of contemporaneous timekeeping records, setting forth

7   in exquisite detail exactly what tasks and how much time each attorney spent during the course of

8   this litigation.  Upon Plaintiffs having documented the hours expended in the litigation, the burden

9   then shifted to Defendant to submit *evidence* refuting the accuracy or reasonableness of Plaintiffs'

10  time records.  As the Ninth Circuit explained in *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th

11  Cir. 1992): "The party opposing the fee application has a burden of rebuttal that requires submission

12  of evidence to the district court challenging the accuracy and reasonableness of the hours charged

13  or the facts asserted by the prevailing party in its submitted affidavits."

14          In the present cases, Defendant attempts to meet its rebuttal burden by submitting the

15  Declaration of Gary Greenfield, who evidently makes his living scouring attorneys' bills to ensure

16  their accuracy and reasonableness.  As is set forth below and in Plaintiffs' Objections to the

17  Declaration of Gary Greenfield, Mr. Greenfield's analysis of Plaintiffs' counsel's legal bills in the

18  present cases is *virtually useless*, because it is based entirely upon comparing Plaintiffs' counsel's

19  hourly rates and their expenditure of time to a database of time entries and hourly rates collected by

20  Mr. Greenfield from some unidentified attorneys who have not been shown to be "of reasonably

21  comparable skill, experience and reputation" to Plaintiffs' counsel (*see Davis v. City and County of*

22  *San Francisco*, 976 F.2d 1536, 1545-46 (9th Cir. 1992), and who worked on some unidentified cases

23  that bear absolutely no relation to the instant litigation.

24          Indeed, what is most telling about Defendant's objections to the reasonableness of Plaintiffs'

25  requested fees is what Defendant ***does not*** produce or argue in opposition to Plaintiffs' fee motions.

26

27

28

9

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

Despite having been given complete access to counsel's detailed time records and having subjected them to the scrutiny of a professional fee "auditor," Defendant cannot identify *any time* that was improperly billed to these cases or was spent on duplicative or non-productive tasks, cannot point to *any charges* that were excessive in relation to the work actually performed, and cannot demonstrate that *any task* was not necessary to this litigation and is thereby not entitled to be compensated for in the Court's fee award.

Unable to provide any direct evidence that Plaintiffs' counsel's billings are unreasonable for the tasks they performed in these cases, Defendant instead seeks to reduce Plaintiffs' fee award using novel theories that find no support in this Circuit's attorney-fee jurisprudence and that have been *rejected* in the *very cases* relied upon by Defendant.  There is an established methodology for calculating an attorney fee award under federal and state law — the lodestar adjustment methodology — which begins "by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *E.g., Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 149 n.4 (9th Cir. 2001).  In Plaintiffs' moving papers, they established that under this methodology, they are entitled to be fully compensated for the time they expended in this case based upon the prevailing market rates in the community for attorneys of comparable skill, experience, and reputation.  Defendant has provided no evidence — and no valid legal arguments — to rebut Plaintiffs' showing.

### A. COURTS NEED NOT, AND SHOULD NOT, REDUCE FEE AWARDS SIMPLY BECAUSE COUNSEL "BLOCKED BILLED" THEIR TIME RECORDS

The County asks this Court to significantly reduce Plaintiffs' fee award by 30% across-the-board, solely because Plaintiffs' counsel "block billed" their time.  But California courts have expressly held that the "charge of block billing does not undermine the compensability of time reasonably expended where the billing statement meets the basic requirement of listing the hours and identifying the general subject matter of time expenditures." *Oberfelder v. City of Petaluma*, No. 98-1470, 2002 WL 472308, at *3 (N.D. Cal. Jan. 29, 2002).  Both the United States Supreme Court and

10

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1   the Ninth Circuit have confirmed that counsel are "*not* required to record in great detail how each

2   minute of [their] time was expended," but rather need only "identify the general subject matter of

3   [their] time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983) (emphasis added);

4   *see also Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004) (same); *Fischer v. SJB-P.D. Inc.*, 214 F.3d

5   1115, 1121 (9th Cir. 2000) (finding sufficient a fee application that provided only "a summary of

6
    time spent on a broad category of tasks such as pleadings and pretrial motions (16.5 hours),

7
    settlement (4.2 hours), and court appearances (1.5 hours)"); *Maljack Productions, Inc. v. GoodTimes*

8
9   *Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996) (upholding block billing practice in copyright

10  infringement attorneys' fees award). Indeed, even the case Defendant County cites to support its

11  requested "block billing" reduction — *Welch v. Metropolitan Life Insurance Co.*, 480 F.3d 942 (9th

12  Cir. 2007) — *vacated* the district court's 20% across-the-board reduction and ordered the trial court

13  to "explain how or why the reduction fairly balances those hours that were actually billed in block

14  format." *Id.* at 949 (internal quotations and alterations omitted).

15
    Relying on the above authorities, the court in *Comite De Jornaleros De Redondo Beach v.*

16  *City of Redondo Beach*, No.04-9396, 2006 WL 4081215 (C.D. Cal. Dec. 12, 2006), recently rejected

17
    the argument — nearly identical to that advanced by the County here — that plaintiffs' counsel's

18
19  "block billing is unreasonable because it frustrates the determination of whether the work was

20  performed or was even necessary." *Id.* at *8. The court held that under *Lytle v. Carl*, 382 F.3d 978,

21  "Plaintiffs' counsel's use of 'block billing,' in which the subject matter of the work performed is

22  identified, is permissible because it successfully identifies the general subject of the time

23  expenditure." *Id.* at *5; *see also George v. Bay Area Rapid Transit Dist.*, No. 00-2206, 2007 WL

24  2778784, at *6 (N.D. Cal. Sept. 21, 2007) (refusing to reduce compensation simply because time

25  entries were block billed).

26
    In the present cases, Plaintiffs' counsel — who maintained and provided detailed time entries

27  containing full descriptions of each discrete litigation task — surely meet the standard articulated

28

11

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

by the courts of identifying the general subject matter of their time expenditures. *See, e.g.*, Declaration of Michael J. Strumwasser in Support of Plaintiffs Melendez et al.'s Motion for Award of Attorneys' Fees and Costs, Exh. A ("FDW 2/6/2007 Begin drafting introductory section and statement of facts for opening brief, incorporate BG draft of statement of facts into same; discuss legal issues, brief arguments with BG; begin review and editing of BG sections of merits brief"). While block billing can indeed pose problems in situations in which only certain portions of counsel's time is compensable, making it difficult to separate out and identify the amount of time spent on the compensable and non-compensable tasks, that is not the case here: This litigation did not involve discrete and severable claims, only some of which qualify for a fee award, and counsel was careful to separately record — and *did not include in these fee motions* — any time spent on non-litigation tasks or other matters that were not entitled to be compensated in a fee award. It is not surprising, then, that Defendant County cannot point to a single "block billed" entry that interfered with its ability to determine the reasonableness, appropriateness, or necessity of the time spent by Plaintiffs' counsel.[7]

Moreover, the County's argument for a 30% across-the-board reduction is completely unsupportable as a factual matter in these cases. According to the County, this reduction is necessary because "the block billing done here makes it impossible for the Court, and the County, to tell whether the legal fees billed are in fact justified." County Opp., at 15. But the specific tasks that the County actually challenges as being non-compensable consist of only a small handful of entries

---

[7]Notably, block billing is actually more economical for clients. If counsel were required to enter individual entries for each separate task performed, and every time entry was rounded-up to the tenth of an hour as is the universal custom in the legal community (and as is required by most timekeeping software), at the end of the day the client would be charged for more time than was otherwise actually billed by counsel; a series of four or five phone calls, for example, that in total might have amounted to 10-15 minutes of attorney time would be charged as if each had lasted a full 6 or 12 minutes. Indeed, because *all tasks* are rounded up to the tenth of an hour, block-billing *necessarily* results in more time being charged than was actually incurred, and its impact only increases in proportion to the number of discrete tasks performed in any day. In contrast, by using block billing, the client is only charged for the time that was actually spent on the listed tasks. For this reason, virtually all of Plaintiffs' counsel's fee-paying clients actually *prefer* that the firm utilize block-billing for their invoices.

12

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

for time spent on word processing, drafting proofs of service, making and canceling travel arrangements, arranging for the filing and service of pleadings, sending faxes, leaving voice mails, and calendaring.  *See* Declaration of Gary Greenfield in Support of Defendants' Opposition to Plaintiffs' Motion for Awards of Attorneys' Fees and Costs ("Greenfield Decl."), ¶ 20.  Even if the County were correct that counsel should not be compensated for the time spent on these tasks — an incorrect proposition to begin with[8] — the ***total amount of time*** spent on these tasks comes to a ***couple of hours*** at most.  Consequently, the County's request for a 30% reduction, which would effectively cut counsel's time by ***over 300 hours***, is completely unjustified by counsel's actual billings in these cases.

In sum, the County is not entitled to ***any*** reduction in Plaintiffs' fee award, much less a substantial 30% reduction that is completely disproportionate to the amount of time actually challenged by the County.[9]

---

[8]Mr. Greenfield seems to believe that when counsel's time entry says "fax [revised stipulation] to Austin" (*see, e.g.*, FDW entry for 1/26/07) or "arrange for filing of complaint" (*see, e.g.*, FDW entry for 3/1/2006), that this means that counsel is *personally* standing over the fax machine to fax the document or telephoning the messenger to pick up the complaint, and that counsel is therefore inappropriately billing the client (or in this case, the Defendant) for that time.  But Mr. Greenfield is misinterpreting these time entries: Counsel does not personally perform these administrative tasks and does not charge for any of the time required to do them, other than the minimal time spent in directing staff; as can be seen throughout counsel's billing records, these tasks are recorded in the time sheets merely to document that the events occurred on the recorded dates and in the sequences described therein.

[9]The County's challenge to the time incurred by the law firm of J. William Yeates is also without merit.  Even though the only specific challenge the County asserts is to the time expended by Jason Flanders for drafting two "unidentified letters" responding to the County's legal contentions before the lawsuits were filed (amounting to about "14 hours"), the County asks that the *entire* Yeates request be denied.  County Opp., at 21.  Moreover, it is perfectly proper to award fees for related work incurred before a lawsuit is filed, particularly when, as here, that work was aimed at obviating the need to bring the lawsuit in the first place and it was ultimately used in the litigation when the efforts to avoid a lawsuit proved unsuccessful.  As the time entries reflect, Mr. Flanders' letters were sent to the Board of Supervisors, urging it to comply with its mandatory duty under state law to place the qualified Initiative on the ballot and responding to the opinion issued by the County's attorneys here, Nossaman Guthner Knox Elliot LLP, which argued that the Initiative was invalid on a variety of state-law grounds.

13

---

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

**B.    THE HOURLY RATES REQUESTED BY PLAINTIFFS ARE FULLY JUSTIFIED AND REASONABLE**

The County also argues that a reduction in counsel's lodestar is warranted because the hourly rates charged by Strumwasser & Woocher are allegedly "higher than the reasonable rate in this district." County Opp., at 15.  The County proposes that rather than using the standard lodestar method of multiplying the number of hours reasonably spent by each attorney by that attorney's reasonable hourly rate — determined "by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity" (*Davis v. City and County of San Francisco, supra,* 976 F.2d at 1545) — the Court should instead multiply the total number of attorneys' hours expended by a "blended rate" that Mr. Greenfield has selected, supposedly in order to "account for the different billing rates of partners and associates by taking an average of the two." County Opp., at 16 (quoting *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund,* 450 F.3d 91 (2d Cir. 2006)).  But the County can provide absolutely no support for its novel approach to calculating attorneys' fees under § 1973*l*.  Indeed, remarkably, in the single case that the County cites in support of its proposal, the Court of Appeals actually ***reversed*** the district court's use of a blended rate, holding that the "application of a blended hourly rate in calculating the lodestar figure ***has not been endorsed in our decisions***." *McDonald,* 450 F.3d at 98 (emphasis added).

Moreover, the blended rate of $288 proposed by the County is completely baseless. According to the County's expert Mr. Greenfield, he arrived at that figure by compiling and averaging data from the cases he has most recently worked on, which included "patent and other intellectual property cases, antitrust, civil rights, securities, constitutional law, bankruptcy, insurance coverage, environmental and breach of contract cases." *See* Greenfield Decl., ¶ 17 n.6.  Plaintiffs specifically requested from the County the underlying data relied upon by Mr. Greenfield, but the County refused to produce any of the relevant information, instead providing Plaintiffs — on the afternoon of Friday, October 5, 2007, only one business day before Plaintiffs' reply brief was due

14

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

— with only cryptic and unintelligible numbers purporting to be a compilation of the hours billed and fees charged in various different cases, without identifying *in any way* the type of case involved, the nature of the work performed, the seniority of the attorney billing the time, or the experience, skill, background, or reputation of counsel. *See, e.g.*, Reply Declaration of Fredric D. Woocher in Support of Plaintiffs' Motion for an Award of Attorneys' Fees ("Reply Woocher Decl."), Exh. D). Notably, Mr. Greenfield's database does not include any information on the breakdown of the number of hours billed by junior attorneys versus the number of hours billed by more senior attorneys, information about what tasks (lower-level versus higher-level) the hours were billed for, or information regarding the types of firms involved in the cases and the backgrounds and qualifications of the attorneys who worked on these cases. *See generally* Objections to Declaration of Gary Greenfield in Support of Defendants' Opposition to Plaintiffs' Motion for Awards of Attorneys' Fees and Costs ("Objections to Greenfield Decl."). Without this information, it is impossible to substantively analyze Mr. Greenfield's conclusions, and it is likewise impossible to fairly compare the blended rates charged in those cases to the requested rates in the instant actions. *See* Objections to Greenfield Decl., ¶¶ 1-2. Based on this deficiency alone, the Court should refuse to consider Mr. Greenfield's analysis for lack of a meaningful evidentiary foundation.

While Plaintiffs obviously cannot fully address Mr. Greenfield's results without being able to analyze the relevant underlying data, it is clear from the face of his declaration that the types of cases he relied upon in reaching his proposed blended rate of $288 are inapposite to the instant case. The types of cases that appear to be included in Mr. Greenfield's database, particularly patent, intellectual property, antitrust, securities, bankruptcy, insurance, and environmental cases, are usually highly document-intensive, requiring a significant amount of time to be expended for routine discovery matters, such as propounding and responding to discovery requests, reviewing documents for privilege and responsiveness prior to production, and reviewing documents produced by the opposing party. These tasks are indeed appropriately performed by the most junior associates and

15

*Melendez, et al. v. Board of Supervisors, et al.* (*In re County of Monterey Initiative Matter*)
*RSJOC, et al. v. Board of Supervisors, et al.* (*In re Monterey Referendum*)
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

even by paralegals with lower billing rates, logically resulting in a lower blended rate than would ordinarily be the case. Here, by contrast, there was absolutely no discovery in these cases, and most of the time expended by Plaintiffs' counsel was on high-level tasks such as researching the merits of whether the Voting Rights Act applied to the Initiative and Referendum petitions, drafting preliminary injunction motions, summary judgment motions, and appellate briefs, and appearing at court hearings. Unlike the cases analyzed by Mr. Greenfield, in the instant case, there was no large category of work that could be easily assigned to junior associates.[10]

Finally, and most fundamentally, there is simply no legitimate reason to depart from the established methodology of calculating Plaintiffs' lodestar by multiplying the number of hours each attorney spent on this litigation *by that attorney's* reasonable hourly rate. The hourly rates requested by Plaintiffs' counsel in their fee motions are the same rates that counsel *actually charges* their commercial clients for each of these attorneys' respective time, and those rates were fully documented in Plaintiffs' moving papers to be consistent with, if not below, the prevailing market rates *in this district* for attorneys of similar skill, experience, and reputation handling similarly complex civil litigation matters. *See* Declaration of Michael J. Strumwasser in Support of Plaintiffs' Motion for Attorneys' Fees, ¶¶ 5-7; Declaration of Michael Rubin in Support of Plaintiffs' Motion for Attorneys' Fees, ¶ 12. The County has provided *no evidence* refuting the showing in Plaintiffs' moving papers that the rates requested in Plaintiffs' fee motion are not reasonable in light of the experience, expertise, and reputation of Plaintiffs' counsel under the lodestar methodology mandated for determining fee awards in civil rights and voting rights cases.[11] Instead, the County simply wants

---

[10]As noted above, Mr. Greenfield's database contains no information regarding the qualifications, skills, and experience of the attorneys whose billing rates he is using to calculate his "blended rate" of $288 per hour, but it is extremely unlikely that they match the extraordinary qualifications and reputation of Plaintiffs' counsel in these cases.

[11]Contrary to the County's assertions, in establishing the reasonableness of their rates, Plaintiffs have not "simply pick[ed] the highest rates they can find all over California." County Opp., at 16. As the *National Law Journal* study concludes, firms *in the Bay Area* charge as much as $725 per hour for senior partners and $360 per hour for fourth-year associates. *See* Strumwasser

16

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1   the Court to use a different methodology — one that has been rejected by the courts.

2       The explanations that the County proffers for why their alternative "blended rate"

3   methodology should be used are unpersuasive.  First, the County contends that the blended rate

4   should be used because Plaintiffs' counsel supposedly performed and billed for tasks that should

5   have been assigned to more junior attorneys.  But out of the almost 500 hours that Mr. Woocher

6   spent on this litigation, even the County's expert is only able to identify a grand total of *two*

7   particular tasks billed by Mr. Woocher that he contends would have been more appropriate for more

8   junior personnel: drafting the complaint in the Initiative Matter, and researching the local rules

9   regarding removal proceedings.  *See* Greenfield Decl., ¶ 23.  And it is ironic that the County would

10  criticize Mr. Woocher for spending the time to draft an important document like the initial pleading

11  in the case, because no less of an expert than Mr. Greenfield himself has explained that it frequently

12  is *more efficient and economical* to have a senior attorney draft significant pleadings than to have

13  any of that work done by more junior attorneys:

14

15          "In most firms, costs are driven up by tradition and hierarchy.  For example,
            the traditional method of drafting documents of any complexity has a junior person
16          undertaking the initial draft, then one or more senior lawyers reviewing and revising
            it, then the junior lawyer working on it some more, then the senior lawyers taking
17          another crack at it, etc.

18          "The rationale is that it is cheaper to have the bulk of the work done at the

19

20  ──────────────────────────────────

21  Declaration, ¶ 7, Exh. C.  The County does nothing to refute these figures.  Nor have Plaintiffs'
    counsel compared their rates only to those of very large firms.  Mr. Rubin's firm, Altshuler Berzon
22  LLP, is a comparably-sized office of approximately 20 lawyers, and its senior partners charge
    between $650-$700 per hour, with mid-level associates charging $325 per hour, further establishing
23  the reasonableness of Plaintiffs' hourly rates.  *See* Rubin Declaration, ¶ 12.  The County further
    ignores the fact that the hourly rates requested by Plaintiffs' counsel are the actual rates that
24  Strumwasser & Woocher charges its commercial clients (Strumwasser Decl., at ¶ 5), and that these
    rates have routinely been found to be reasonable by the courts, including by the Santa Clara County
25  Superior Court just last year in an election law case that was much less complex than the present
    litigation (Strumwasser Decl., at ¶ 7(e)).  It is also telling that the County's attorneys have failed to
26  provide evidence of their own rates (or hours expended in this litigation) as a basis to compare the
    reasonableness of Plaintiffs' requested fee award.  Although the County's lawyers now attempt to
27  dismiss as "irrelevant" the evidence that *they themselves submitted to a court* several years ago
    regarding the reasonableness of their rates (see Strumwasser Decl., Exh. D), one can justifiably
28  assume that the County's attorneys' standard hourly rates are *substantially higher* than those of
    Plaintiffs' counsel.

                                    17

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

lower billing rate. ***But often, as audits reveal, there is so much senior time billed for reviewing, revising, and discussing the document that it usually would be cheaper to have the senior lawyer simply sit down and draft it.***" Greenfield, *Efficient Litigation: An Ethical Imperative?*, 16 American Lawyer 38 (1994) (emphasis added).

Likewise, the few tasks that Mr. Greenfield complains could have been done by someone with a lower billing rate than Mr. Gee pertain largely to various legal research assignments that he performed. *See* Greenfield Decl., ¶ 22. But given the limited number of such challenged research projects, it was actually far more economical for Mr. Gee to simply perform those tasks himself rather than having both Mr. Gee and a more junior associate incur time for assigning the work and discussing the results of the research; in fact, the County and Mr. Greenfield ignore the fact that had a more junior associate worked on these cases, a significant amount of time would have been incurred by that associate in familiarizing himself or herself with the cases and the relevant issues.[12]

In sum, the County's objections to the allocation of tasks between Mr. Woocher and Mr. Gee are not well-taken. Virtually all of the legal work in these cases was performed by only two attorneys — one senior partner and one junior associate. The case was staffed leanly and economically, without a legion of attorneys being assigned to the matter who would undoubtedly duplicate many of their efforts, as might occur with a large firm. Indeed, because counsel was handling this matter on a contingent basis, with no guarantee of success and no guarantee of ever being paid fully for their legal work, they had every incentive to minimize the amount of time they spent on these cases and to ensure that the work was being performed by the most junior attorney who could realistically handle the assignment. And, ultimately, the proof is in the pudding, for Mr. Gee — the lower billing attorney — spent *substantially* more time on these cases than

---

[12]It is important to point out that Plaintiffs' counsel's use of block billing in no way interfered with Defendant's ability to identify tasks that allegedly could have been performed by more junior attorneys, as the County erroneously implies. *See* County Opp., p. 16. Every task that Mr. Woocher and Mr. Gee spent time on is set forth in their billings in black and white, and if the County had grounds to object to the appropriateness of any of the tasks they performed, it had every opportunity to do so. That even Mr. Greenfield was only able to point to a handful of supposedly inappropriate assignments confirms that Plaintiffs' counsel's time was in fact spent very efficiently.

*Melendez, et al. v. Board of Supervisors, et al.* (*In re County of Monterey Initiative Matter*)
*RSJOC, et al. v. Board of Supervisors, et al.* (*In re Monterey Referendum*)
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

Mr. Woocher did, confirming the reasonableness in the manner in which the various tasks were allocated between them.  For all of these reasons, the Court should award Plaintiffs their attorneys' fees based upon the reasonable rates requested by counsel.

**III.   PLAINTIFFS ARE ENTITLED TO A MULTIPLIER ADJUSTMENT TO THE LODESTAR**

The County asks the Court to deny Plaintiffs any multiplier enhancement under federal law because, according to the County, Plaintiffs' efforts and the results they obtained were not "exceptional."  County Opp., at 20.  But the County cannot dispute that Plaintiffs obtained *all the relief* they ever sought in this lawsuit: two injunctions ordering the County to immediately submit the Initiative and Referendum to a vote of the electorate.  Moreover, the fact that the original panel decision in *Padilla* had found that *recall petitions* were subject to Section 203 of the Voting Rights Act does not in any way diminish Plaintiffs' efforts in this case or the results they ultimately obtained.  In fact, that Plaintiffs had the foresight to properly interpret Section 203 as not applying to *initiative and referendum petitions* demonstrates the extraordinary skill their counsel displayed in vigorously pursuing these claims.[13]

Plaintiffs are alternatively, if not primarily, entitled to a multiplier *under California state law*. As an initial matter, the County suggests that the Court has already held that Plaintiffs are not entitled to any fee award under state law.  County Opp., at 11 ("since plaintiffs were not awarded any fees under California law, this should end the inquiry"); *id.* at 10 (arguing that the Court "made it clear that it was awarding fees under federal law, not California state law").  But the Court made no such ruling.  Rather, the Court merely held that since it "has already found that Plaintiffs are entitled to recover attorneys' fees under the federal Voting Rights Act, the Court *need not address*" whether Plaintiffs are additionally entitled to fees under California's state private attorney general statute. *In re County of Monterey Initiative Matter*, 2007 WL 1455869, at *3 (emphasis added).  Because,

---

[13]The County also cannot argue that a multiplier is not necessary because the quality of Plaintiffs' counsel's representation and the exceptional results obtained are already reflected in Mr. Woocher's hourly rate when the County at the same time asks this Court to reduce that rate by almost half.  County Opp., at 19.  Indeed, the substantial evidence submitted by Plaintiffs demonstrates that Mr. Woocher's and Mr. Gee's requested hourly rates are, if anything, *below* the prevailing market rates in the Bay Area for attorneys of comparable qualifications and experience, further demonstrating the need to apply a multiplier enhancement to the lodestar.

19

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1   as the County itself recognizes, the standards for awarding multiplier enhancements under California

2   law differ substantively from the standards under federal law, the Court now *does need to address*

3   the issue of Plaintiffs' entitlement to a fee award under state law in order to determine an appropriate

4   multiplier to apply to the lodestar in these cases.  Most notably, whereas "contingency-fee multipliers

5   are unavailable under federal fee-shifting statutes[,] . . . California law permits such enhancements

6   under state fee-shifting statutes." *See Mangold v. California Public Utilities Commission*, 67 F.3d

7   1470, 1478 (9th Cir. 1995).  Indeed, as California fee-award cases decided subsequent to *Mangold*

8   make clear, "the contingent and deferred nature of the fee award in a civil rights or other case with

9   statutory attorney fees *requires* that the fee be adjusted in some manner to reflect the fact that the fair

10  market value of legal services provided on that basis is greater than the equivalent noncontingent

11  hourly rate." *Horsford v. Board of Trustees of California State University*, 132 Cal.App.4th 359,

12  394-95 (2005).

13          As discussed in Plaintiffs' Opening Memorandum in Support of Motion for an Award of

14  Attorneys' Fees and Costs, California's private attorney general statue, codified in California Code

15  of Civil Procedure section 1021.5, authorizes an award of attorneys' fees to prevailing parties when

16  (1) the litigation enforces an important right affecting the public interest, (2) a significant benefit was

17  conferred on a large class of persons, and (3) the necessity and financial burden are such that an

18  award of attorneys' fees is appropriate. *See, e.g.*, *Melendez* Plaintiffs' Opening Memorandum, at 3

19  n.2.  The County argues only that Plaintiffs "never succeeded on the merits of their state law claim,"

20  essentially conceding that Plaintiffs satisfy the other statutory criteria for a fee award under

21  section 1021.5.  County Opp., at 11.  According to the County, "the only ***claim*** ever litigated to

22  judgment in this action was the Federal Voting Rights Act ***defense*** promulgated by the County."

23  County Opp., at 11.  The County is plainly mistaken, however, for the Court did not and could not

24  grant the affirmative relief of permanently enjoining the County to submit the Initiative and

25  Referendum to a vote based solely on the County's Voting Rights Act *defense*; rather, the injunctions

26

27

28

20

---

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    issued by the Court were based on Plaintiffs' *state law* causes of action seeking those injunctions.[14]

2         Under these circumstances, in which a party prevails on a state claim that would entitle it to

3    an award of attorneys' fees under section 1021.5 in state court, ***federal courts are required to apply***

4    ***state law*** and to award fees under that statute.  *See, e.g., Bouman v. Block*, 940 F.2d 1211, 1237 (9th

5    Cir. 1991) ("When a plaintiff proceeds under multiple theories and prevails on [state law] claims,

6    [plaintiff] is entitled to attorneys' fees on [those state law] claims.").  In *Keith v. Volpe*, 858 F.2d 467

7    (9th Cir. 1988), for example, the Ninth Circuit found that the plaintiff was entitled to attorneys' fees

8    under section 1021.5 for "successfully litigating his state law claims" of racial discrimination.  *Id.*

9    at 485-86.  As the district court held, "[b]ecause plaintiffs' relief was ***based partially on state law***,

10   the court must . . . consider their entitlement to attorneys' fees under relevant state law."  *Keith v.*

11   *Volpe*, 644 F. Supp. 1317, 1320-21 (C.D. Cal. 1986) (emphasis added).  Indeed, the court ultimately

12   awarded the plaintiff fees under *both* state and federal law, finding that he had also prevailed on his

13   federal law claim.  *See* 858 F.2d at 486-87.

14        Similarly, the Ninth Circuit Court of Appeals in *Mangold v. California Public Utilities*

15   *Commission*, 67 F.3d 1470 (9th Cir. 1995), awarded fees to the plaintiffs under section 1021.5

16   because they had prevailed on their California Fair Employment and Housing Act claims.  The court

17   recognized that "[e]xisting Ninth Circuit precedent has applied state law in determining not only the

18

19   —————————————

20   [14]In the *Melendez* and *RSJOC* Complaints, Plaintiffs alleged that the County had violated its
     mandatory and ministerial duties under the California Constitution and Elections Code by refusing

21   to submit the duly qualified Initiative and Referendum measures to a vote of the electorate, *see, e.g.*,
     *Melendez* Complaint, ¶¶ 16-20 (citing Cal. Const., art. II, § 11 and Cal. Elec. Code, § 9118); *RSJOC*

22   Complaint, ¶¶ 18-20 (citing Cal. Const., art. II, § 11 and Cal. Elec. Code, § 9145).  Based upon these
     state law violations, the Complaints asserted causes of action for injunctive relief requiring the

23   County to place the two measures on the election ballot.  *Melendez* Complaint, ¶¶ 27-28; *RSJOC*
     Complaint, ¶¶ 27-28.

24        While the question of whether the Voting Rights Act applied to the Initiative and

25   Referendum was certainly a significant issue in this litigation — one that was raised as a *defense* by
     the County for its refusal to submit the measures to a vote of the people as required by state law —

26   this does not transform the state law causes of action pled in the *Melendez* and *RSJOC* Complaints
     into purely federal claims, as the County seems to imply.  Moreover, at least in the *Melendez* case,

27   the County initially claimed that its refusal to place the Initiative on the ballot was justified on
     several state-law grounds — a position that the County subsequently abandoned after those issues

28   had been briefed in connection with Plaintiffs' initial motion for injunctive relief in the March 2006
     district court proceedings.

21

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    *right* to fees, but also ***in the method of calculating the fees.*** " *Id.* at 1478 (emphasis added); *see also*

2    *Crommie v. California Public Utilities Commission*, 840 F. Supp. 719, 721 (N.D. Cal. 1994)

3    ("Whether a plaintiff is entitled to an award of attorneys' fees is a question of substantive law and

4    therefore is governed by state law."). Finding that the "method of calculating a fee is an inherent part

5    of the substantive right to the fee itself, and a state right to an attorneys' fee reflects a substantive

6    policy of the state," the Ninth Circuit thus affirmed the district court's application of state law to

7    enhance the fee award by a multiplier of 2.0. *Mangold*, 67 F.3d at 1478-79. That the case is a

8    federal action that may *also* involve federal claims does not limit the court's authority to award fees

9    under section 1021.5 for plaintiffs' successful litigation of their state law causes of action. To the

10   contrary, the district court in *Mangold* explicitly rejected the defendants' "novel argument that

11   plaintiffs only prevailed on their federal claims and thus only availed themselves of federal

12   remedies." *Crommie*, 840 F. Supp. at 722.

13          Indeed, the key Supreme Court decision that the County itself relies upon confirms this

14   Court's obligation to award *Melendez* Plaintiffs and *RSJOC* Plaintiffs their fees under section 1021.5

15   in the circumstances of a case, like the present actions, that has been removed from state to federal

16   court. In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975), the Supreme

17   Court explicitly held that "a state statute requiring an award of attorneys' fees *should be applied* in

18   a case removed from the state courts to the federal courts" because "[i]t is clear that it is the policy

19   of the state to allow plaintiffs to recover an attorney's fee in certain cases, and it has made that policy

20   effective by making the allowance of the fee mandatory on its courts in those cases. *It would be at*

21   *least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal*

22   *of the case to the federal courts.*"[15] *Id.* at 260 n.31 (emphasis added) (quoting *People of Sioux*

23

24          [15]As the Supreme Court indicated in *Alyeska*, it would be patently unfair to allow the County
       to defeat Plaintiffs' right to fees under section 1021.5 — a right that would clearly be available to
25     them in state court — simply by removing these actions to federal court *based upon a defense that*
       *was ultimately determined to lack merit.* Indeed, one of the bases for this Court's decision to issue
26     an injunction in the *Melendez* action instead of remanding it to state court was that the "remedies
       prayed for in the *Melendez* Plaintiffs' state court Complaint do not differ from the remedies the Court
27     will provide . . . ." March 29, 2007, Summary Judgment, at 16. Those remedies, as shown in the
       text, include the right to an award of attorneys' fees based upon the state law's substantive standards
28     that require application of a multiplier to account for the contingent and deferred nature of attorney

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    *County v. National Surety Co.*, 276 U.S. 238 (1928)).[16]

2            Following *Alyeska*, courts therefore have routinely awarded attorneys' fees to prevailing

3    parties under state fee-shifting statutes in cases that have been removed from state to federal court.

4    *See, e.g., Mangold, supra*, 67 F.3d at 1472, 1478-79 (affirming award of $724,380 in attorneys' fees

5    pursuant to section 1021.5 in consolidated cases that were removed from state to federal court);

6    *Ackerman v. Western Elec. Co.*, 860 F.2d 1514, 1520 (9th Cir. 1988) (upholding fee award under

7    California fee-shifting statute in handicapped discrimination case removed from state to federal

8    court).[17]

9            It is therefore clear in the present cases that not only must the Court apply California law in

10   determining the appropriate fee award for Plaintiffs (to the extent that California law and federal law

11   differ), but that under the prevailing state law standards for fee awards in contingency cases,

12   _____

13   fee award.

14        [16]Contrary to the County's assertions, the principle articulated in *Alyseka Pipeline* — that "a
     state statute requiring an award of attorneys' fees should be applied in a case removed from the state

15   courts to the federal courts" — is not limited to cases removed only on diversity grounds. Rather,
     the relevant inquiry is simply whether the party claiming fees prevailed on a state law claim and,

16   hence, whether the policy of the state to award fees in order to encourage the successful prosecution
     of such claims must be honored by the federal courts. As the Supreme Court observed,

17   implementation of the state's policy should not be thwarted and the right to a fee award should not
     be destroyed by removal of the case to the federal courts. *Id.* at 260 n.31.

18
         Similarly, the Eighth Circuit's decision in *Control Data Corp. v. S.C.S.C Corp*, 53 F.3d 930

19   (8th Cir. 1995) — also relied upon by the County — fully supports the granting of a fee award to
     Plaintiffs under section 1021.5 in the instant action. The Court of Appeals in *Control Data Corp.*

20   affirmed the district court's award of "reasonable attorney fees and witness fees" under a state statute
     in a case that had raised both federal and state claims. *Id.* at 938. Even though the federal law at

21   issue there did not authorize a fee award, the court of appeals held that the district court's award of
     attorneys' fees under the state law was justified because the plaintiff had partially prevailed on both

22   its state and federal law claims. *Id.* at 938-39.

23        [17]The County also makes a broad generalization that "the opportunities to use section 1021.5
     in federal court are severely limited" because "[i]n cases within the district courts' federal question

24   jurisdiction, state fee shifting statutes generally are inapplicable." County Opp., at 12 (citing 10
     Moore's Federal Practice § 54.171[5] (3d Ed.) (emphasis in County Opp.). But the *Melendez* and

25   *RSJOC* actions are *not* before this Court based on federal question jurisdiction. Rather, both the
     *Melendez* action (Case No. C 06-01730) and the *RSJOC* action (Case No. C 06-02369) were

26   originally filed in Monterey County Superior Court alleging *violations of state law*, and they were
     each removed to federal court *by the County* based upon 28 U.S.C. § 1443(2), a rarely-used *removal*

27   statute that applies when a state official is "refusing to do any act on the ground that it would be
     inconsistent with" a federal law providing for equal rights.

28

                                                   23

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1   Plaintiffs are entitled to a multiplier of at least 2.0.  As is more fully discussed in Plaintiffs' Opening

2   Memorandum, counsel took these cases on a contingency basis, with no prospect of being fully

3   compensated for their work unless Plaintiffs prevailed in their actions and obtained an award of

4   attorneys' fees under a state or federal fee-shifting statute.  Under California law, an adjustment to

5   the lodestar is *required* to be made in order to compensate for the contingent and deferred nature of

6   the fee award.  *See Horsford v. Board of Trustees of California State University, supra*; *Graham v.*

7   *DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004) ("One of the most common fee enhancers . . . is

8   for contingency risk."); *Mangold*, 67 F.3d at 1478-79 (awarding a 2.0 multiplier because of

9   significant contingency risk assumed by counsel).

10  **III.    PLAINTIFFS' LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE FULLY
          COMPENSATED**

11

12          Section 1973*l* explicitly authorizes the Court to award prevailing parties their "reasonable

13  litigation expenses as part of the costs." 42 U.S.C. § 1973*l*(e).  As the court in *Comite De Jornaleros*

14  *De Redondo Beach*, 2006 WL 4081215, also recognized, out-of-pocket expenses are "recoverable

15  if they are the types of costs normally charged to fee-paying clients," as long as they are "necessary

16  and reasonable." *Id.* at *11.

17          The County does not refute Plaintiffs' entitlement to reimbursement for their reasonable out-

18  of-pocket expenses, but contends that the rates charged by Plaintiffs' counsel for photocopying and

19  facsimiles are too high.  The photocopying and facsimile charges requested in Plaintiffs' fee

20  application, however, are the same rates that Plaintiffs' counsel routinely charges its commercial fee-

21  paying clients for those services. *See* Strumwasser Decl., ¶ 8.  Even though the County complains

22  that these rates and the number of pages copied are unreasonable, the County's attorneys have

23  noticeably failed to provide evidence of the rates charged by its firm for photocopying and facsimile

24  costs, nor have they provided the number of pages their firm copied during the course of this

25  extended litigation.  Moreover, the evidence submitted by the County does not refute the

26  reasonableness of Plaintiffs' charges: Mr. Greenfield's declaration only establishes that the "actual

27  cost to send or receive a fax" is lower than the rate requested by Plaintiffs; and Ms. Froelich's

28  declaration merely demonstrates that one professional copying service has a lower per-page copying

24

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1   rate Plaintiffs' counsel charges its clients.  It stands to reason, however, that the cost of copying

2   documents at a Kinko's would be less expensive than the cost that a law firm could provide for

3   copying services, given the volume of Kinko's business and the economies of scale a professional

4   copying firm can realize from its use of larger and more capital-expensive photocopying machines.

5   But surely Defendant is not suggesting that every time counsel needs to copy a document, one of its

6   staff or its attorneys should be required to hop in their car to travel to the neighborhood Kinko's.

7   The rate Kinko's charges for photocopying simply does not establish the "reasonable" cost for a law

8   firm's copying charges.

9                                    **CONCLUSION**

10          For the reasons set forth above, Plaintiffs respectfully request that the Court award *Melendez*

11   Plaintiffs their reasonable attorneys' fees and costs incurred in this action in the amount of

12   $706,723.64, and award *RSJOC* Plaintiffs their reasonable fees and costs incurred in this action in

13   the amount of $311,950.10.  *See* Reply Declaration of Fredric D. Woocher in Support of Plaintiffs'

14   Motion for Award of Attorneys' Fees and Costs, at ¶¶ 3-4.

15

16   DATE: October 8, 2007                    Respectfully submitted,

17                                            STRUMWASSER & WOOCHER LLP
                                             Fredric D. Woocher
18                                            Michael J. Strumwasser
                                             Bryce A. Gee
19

20                                            By   _____/s/_____
                                                    Fredric D. Woocher
21

22                                            *Attorneys for Plaintiffs William Melendez, et al., and*
                                             *Plaintiffs RSJOC, et al.*

23

24

25

26

27

28

                                         25

*Melendez, et al. v. Board of Supervisors, et al. (In re County of Monterey Initiative Matter)*
*RSJOC, et al. v. Board of Supervisors, et al. (In re Monterey Referendum)*
Case Nos. C 06-01730 JW, C 06-02369 JW
CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES